ORIGINAL

ECF

FILED
SEP 2 2003
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA,

Plaintiff,

v.

UNITED STATES GOVERNMENT, DEPARTMENT OF THE NAVY,

Defendant.

CIVIL ACTION FILE NO. 03-2033C

## COMPLAINT

COMES NOW Commercial Casualty Insurance Company of Georgia (hereinafter "Commercial Casualty" or "Plaintiff"), by and through its undersigned counsel, and files this its Complaint against the United States Government, Department of the Navy (hereinafter "Navy" or "Defendant"), and in support thereof shows this Honorable Court the following:

### PARTIES AND JURISDICTION

1.

Plaintiff is a corporation qualified to do business in the State of Georgia as a commercial surety. Plaintiff is in the business of, among other things, issuing performance and payment contract bonds as surety for the performance of construction contracts.

2.

Defendant is the United States Government.

3.

Defendant is subject to the jurisdiction of this Court under 28 USCA § 1491(a)(1).

COUNT I

4.

F.A.S. Development Company, Inc., (hereinafter "FAS") a construction contractor, entered into a contract ("Contract") with the Navy to perform a construction project known as "Naval Air Station, Atlanta, Marietta, Georgia, Replace 400 HZ Converter", contract number N62467-01-C-3215 ("Project").

5.

Commercial Casualty, as Surety, issued contract payment and performance bonds in connection with the Project, identified by Bond number PPB4618230 (the "Bonds"). A true and accurate copy of the Bonds are attached hereto as Exhibit "A," and are incorporated herein by reference.

6.

All work on the Project has been completed and there is a sum of money being retained by the Navy.

7.

At the time that FAS completed its Contract with the Navy and fully performed its obligations for the Project, the Navy had not paid out the full amount of the contract price on the Project. The remaining contract balance for the Contract is at least $52,625.00.

8.

Plaintiff has paid numerous payment bond claims on behalf of principal FAS, and therefore, is equitably subrogated to the unpaid balance of the contract price remaining on the Project. Additionally Plaintiff is an assignee of FAS's rights to payment pursuant to a provision

of a General Agreement of Indemnity "(Indemnity Agreement") executed by FAS prior to issuance of the Bonds. A copy of the Indemnity Agreement is attached hereto as Exhibit "B."

9.

Accordingly Plaintiff is entitled to recover the remaining contract fund held by the Navy, which is at least $52,625.00. The specific amount will be proven at trial.

10.

By letter dated October 25, 2002, a true and correct copy of which is attached hereto as Exhibit C, and through numerous other communications, Plaintiff demanded payment of the remaining contract funds and provided Defendant a hold harmless agreement ("Hold Harmless Agreement," attached hereto as Exhibit D) as dictated by Federal Acquisition Regulation 28.106-7. This regulation states, in pertinent part,

> (b) If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties. Id.

11.

Beyond the Indemnity Agreement referenced supra, FAS has also agreed to have the final payment from this contract made to Plaintiff ("Assignment"). (See Assignment, attached hereto as Exhibit E and incorporated herein by reference.)

12.

Despite Plaintiff's providing the Hold Harmless Agreement and FAS's Assignment, Defendant has refused to make the final Contract payment to Plaintiff, in violation of F.A.R. 28.106-7.

COUNT II

13.

The allegations contained in Paragraphs 1 through 12 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

14.

The Navy's position in refusing to pay Commercial Casualty the remaining contract balances under the Contract for the Project is not substantially justified, nor are there special circumstances which would make an award of attorney's fees to Commercial Casualty unjust under the Equal Access to Justice Act, 28 U.S.C. § 2412(b).

15.

Commercial Casualty has incurred and continues to incur legal fees in pursuing its claims against the Navy arising out of the remaining contract balances for the Project. The Navy is responsible for paying these legal fees to Commercial Casualty.

WHEREFORE, Plaintiff Commercial Casualty respectfully prays that judgment be entered against the Defendant, as follows:

1. for recovery of the principal amount of at least $52,625.00, with the specific amount to be proven at trial;
2. for recovery of pre-judgment interest at the legal rate of interest until date of judgment;
3. for recovery of post-judgment interest at the maximum rate allowed by law;

4. for recovery of all costs associated with this action, including reasonable attorney's fees under 28 U.S.C. § 2412(b).;

5. and for an award of any and all further relief this Court deems just and proper.

This 26th day of August, 2003.

Respectfully submitted,

Thompson & Slagle, P.C.

3295 River Exchange Drive
Suite 300
Norcross, Georgia 30092
(770) 662-5999, (770) 447-6063 FAX

DeWitte Thompson
Georgia Bar No. 707688

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) July 17, 2001 | FORM AP... 9000 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing ... searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send ... regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR ... (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork ... Project (9000-0045), Washington, D.C. 20503.

SURETY B

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | | |
|---|---|---|---|---|
| FAS Development Company, Inc<br>2193 A Cascade Road<br>Atlanta, GA 30311 | ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☒ CORPORATION<br>STATE OF INCORPORATION: Georgia | | | |
| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| Commercial Casualty Insurance Company of Georgia<br>350 Research Court, Suite 200<br>Norcross, GA 30092 | | 108 | 768 | 00 |
| | CONTRACT DATE: 6/25/2001 | CONTRACT NO.: N62467-01-C-3215 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Vanessa Sutton President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | Commercial Casualty Insurance Company of GA 350 Research Ct S-200 Norcross, GA 30092 | STATE OF INC. GA | LIABILITY LIMIT $ 108,768.00 | |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. Edward P. Mooney Attorney In Fact | 2. | | |

EXHIBIT A

NSN 7540-01-152-8060 Previous edition not usable — EXPIRATION DATE 12-31-92 — 25-107 — STANDARD FORM 25 (REV. 1-90) Prescribed by GSA - FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) (Continued)

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM | RATE PER THOUSAND | TOTAL |
|---|---|---|
| ▶ | $ 24.19 | $ 2,632.00 |

INSTRUCTIONS

. This form is authorized for use in connection with Government ontracts. Any deviation from this form will require the written pproval of the Administrator of General Services.

. Insert the full legal name and business address of the Principal the space designated "Principal" on the face of the form. An uthorized person shall sign the bond. Any person signing in a epresentative capacity (e.g., an attorney-in-fact) must furnish vidence of authority if that representative is not a member of e firm, partnership, or joint venture, or an officer of the orporation involved.

(a) Corporations executing the bond as sureties must appear on e Department of the Treasury's list of the approved sureties and ust act within the limitation listed therein. Where more than one orporate surety is involved their names and addresses shall pear in the spaces (Surety A, Surety B, etc.) headed ORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form insert only the latter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# PAYMENT BOND
*(See instructions on reverse)*

DATE BOND EXECUTED *(Must ... or later than date of contract)*: July 17, 2001

OMB No.:9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*

FAS Development Company, Inc.
2193 A Cascade Road
Atlanta, GA 30311

TYPE OF ORGANIZATION ("X" one)

- [ ] INDIVIDUAL
- [ ] PARTNERSHIP
- [ ] JOINT VENTURE
- [X] CORPORATION

STATE OF INCORPORATION: Georgia

SURETY(IES) *(Name(s) and business address(es))*

Commercial Casualty Insurance Company of Georgia
350 Research Court, Suite 200
Norcross, GA 30092

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| | 108 | 768 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 6/25/2001 | N62467-01-C-3215 |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

### PRINCIPAL

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Vanessa Sutton, President | 2. | 3. | |

### INDIVIDUAL SURETY(IES)

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

### CORPORATE SURETY(IES)

| | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | Commercial Casualty Insurance Company of GA 350 Research Ct S-200 Norcross, Ga | STATE OF INC. GA | LIABILITY LIMIT $ 108,768.00 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. Edward P. Mooney, Attorney In Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

. This form, for the protection of persons supplying labor and material, is sed when a payment bond is required under the Act of August 24, 1935, 9 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will equire the written approval of the Administrator of General Services.

. Insert the full legal name and business address of the Principal in the pace designated "Principal" on the face of the form. An authorized erson shall sign the bond. Any person signing in a representative apacity (e.g., an attorney-in-fact) must furnish evidence of authority if hat representative is not a member of the firm, partnership, or joint enture, or an officer of the corporation involved.

. (a) Corporations executing the bond as sureties must appear on the epartment of the Treasury's list of approved sureties and must act ithin the limitation listed therein. Where more than one corporate surety involved, their names and addresses shall appear in the spaces (Surety , Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

CCI

# COMMERCIAL CASUALTY

INSURANCE COMPANY OF GEORGIA

## GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT of indemnity, made and entered into this 16th day of OCTOBER, 19 2000, is executed by the Undersigned for the purpose of indemnifying COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA (formerly known as Commercial Casualty Insurance Company), herein referred to as "Surety," in connection with any Bonds written on behalf of F.A.S. Development Company, Inc. 2193 A Cascade Road, Atlanta GA 30311 herein referred to as "Principal," and Vanessa Sutton ________________ herein referred to as "Indemnitors." The Principal and Indemnitors are sometimes referred to hereafter collectively as "Undersigned."

1. **DEFINITIONS** - The following definitions apply in this Agreement:

**BOND** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal or extension of said obligation.
**PRINCIPAL** - The person(s) or entity(ies) set forth above or any of them or any combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.
**SURETY** - COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, its reinsurers, and any other person(s) or entity(ies) which the Surety may procure to act as a Surety or as a Co-Surety of any Bond, or any other person or entity who executes a Bond at the request of the Surety.
**CONTRACT** - Any agreement of the Principal, including that which is bonded by the Surety.
**OBLIGATION** - Any executed Agreement, undertaking, statutory, or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond.

2. **INDEMNIFICATION** - In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of the Principal, the Undersigned agree to pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of the Principal and shall indemnify and hold harmless Surety from and against all liability, loss, claims, demand, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest therein at a maximum rate allowed by law, which Surety may sustain or incur by reason or in consequence of the execution and delivery by Surety of any bond on behalf of the Principal, whether or not the Surety shall have paid any amount on account thereof, including, without limitation, the following:

A. Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to the Principal's nonperformance of an obligation or any other matter covered by a Bond.
B. Liability incurred or expenses paid in connection with claims, suits or judgments relating to an obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.
C. Liability incurred or expenses paid in procuring, or attempting to procure, a release of liability under or exoneration of a Bond.
D. Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an obligation or a Bond.
E. Liability incurred or demands, claims, damages, costs or expenses caused by the failure of the Principal or Indemnitor(s) to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and expenses of Surety in connection with the enforcement of any of the Principal's or Indemnitors' covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereinunder.

The liability of the Undersigned shall extend to and include all amounts paid by Surety in good faith under the belief that:

1. The Principal was in default as described in this Agreement.
2. Surety was or might be liable thereunder.
3. Such payments were necessary or advisable to protect any of the Surety's rights as to avoid or lessen Surety's liability or alleged liability.

In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of urety, shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees, including in-house attorneys' ses, costs and expenses hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this greement, Surety may recover its further expenses and attorneys' fees, including in-house attorneys' fees, costs and expenses curred in suit.

3. **RESERVE-DEPOSIT** - If for any reason Surety shall deem it necessary to set-up or to increase a reserve to cover any possible ability or loss for which the Undersigned will be obligated to indemnify Surety under the terms of this Agreement, the Undersigned vill deposit with Surety, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral ecurity to Surety for such liability or loss. Surety shall have the right to use the deposit, or any part thereof, in payment or

ndemnitors' Initials and Date VZA 10-16-2000

EXHIBIT B

settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify Surety under the terms of this Agreement. Surety shall have no obligation to invest, or to provide a return on, the deposit. The Undersigned shall be entitled to the return of any unused portion of the deposit upon termination of the liability of Surety on the Bonds and the performance by the Undersigned of all obligations to Surety under the terms of this Agreement. Surety's demand shall be sufficient if sent by registered or certified mail to the Undersigned at the addresses stated herein or at the addresses of the Undersigned last known to Surety, regardless of whether demand is actually received by the Undersigned.

Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other remedy at law or in equity that Surety may have. Surety shall have the right to retain such collateral until Surety has received satisfactory evidence of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred or from claims, demands, damages, costs, loss, expense and attorneys' fees.

**4. LOANS** - Surety may from time to time make or guarantee advances or loans to or for the account of Principal to be used in the performance of obligations of Principal under the contract covered by a Bond without the necessity of seeing to the application of the proceeds thereof; and the Undersigned shall be obligated to indemnify Surety in accordance with the terms of this Agreement for the amount of all such advances and loans, notwithstanding that the proceeds or any part thereof have not been so used by Principal.

**5. TRUST FUNDS** - The Principal hereby agrees and expressly declares that all funds due or to become due under any contract covered by a Bond are Trust Funds, whether in the possession of Principal or another, for the benefit and payment of any person to whom the Principal incurs obligations in the performance of such contract, for which Surety would be liable under the bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the Trust Funds. Principal shall, upon demand of Surety and in implementation of the Trust or Trusts hereby created, open an account or accounts with a bank which account or accounts shall be designated as a Trust account or accounts for the deposit of such Trust Funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such accounts shall be by check or similar instrument signed by the Principal and countersigned by a representative of Surety. Said Trust or Trusts shall terminate on the payment by Principal of all the contractual obligations for the payment of which the Trust or Trusts are hereby created or upon the expiration of twenty years from the date hereof, whichever shall first occur.

**6. ASSIGNMENT** - As security for the performance of all the provisions of this Agreement, the Undersigned hereby assign, transfer, pledge and convey to Surety, but subject to the Trust herein created, all rights in connection with any contract, including but not limited to:

A. All subcontracts let in connection therewith in such subcontractors' Surety Bonds.
B. All machinery, plant equipment, or tools which shall be upon the site or sites of the work or elsewhere for the purpose of any contract, including all material ordered for any contract.
C. Any and all sums due for or which thereafter become due under any contract and all other sum or sums due or to become due on all other contracts, bonded or unbonded, in which any of the Undersigned have an interest.
D. Any and all rights arising out of insurance policies, notes and accounts receivable, and choses in action.
E. Any and all undisbursed loan funds, deposits or interest reserve accounts to which Principal or Indemnitor(s) may be entitled, and any and all collateral for and undertakings given by the Undersigned in connection with any obligation.

**7. DEFAULT** - The Principal and Indemnitor shall be in default hereunder upon the occurrence of any of the following:

A. The breach of this Agreement by Principal or any Indemnitor.
B. Any default in the performance of an obligation.
C. Any obligee declares Principal to be in default.
D. The Principal fails to pay for any labor or materials when such payment is due.
E. The Principal diverts any contract funds from one contract to another, prior to the complete discharge of Surety.
F. The Principal, or any of the Undersigned, breaches any provision of this Agreement.
G. Insolvency, assignment for the benefit of creditors, or voluntary or involuntary filing of any insolvency or bankruptcy proceedings by or against Principal or any Indemnitor.
H. The Principal (if an individual) dies, is adjudged mentally incompetent, is convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with the usual methods.
I. The failure of Principal or Indemnitor to promptly furnish accurate, complete and up-to-date financial statements upon request of Surety, or the furnishing of a financial statement by Principal or Indemnitor which contains any material misstatement or misrepresentation.
J. Any material adverse change in the financial condition of the Principal or any Indemnitor.
K. The filing of any suit or commencement of any action or proceeding by a creditor or obligee of an obligation against Principal or any Indemnitor.
L. Any suspension, revocation or other material adverse change in the status of any license of Principal with any applicable licensing board or agency to perform or discharge the obligation.

**8. REMEDIES UPON DEFAULT** - In the event of any default as described in section 7 above, Surety in its sole and absolute discretion is hereby authorized by Indemnitor:

A. To consent to any change in or alteration of the obligation or in any and all plans and specifications relating thereto.
B. To take over any contract and arrange for its completion.
C. To take possession of Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any contract.
D. To take possession of Principal's office equipment, books and records as are necessary for completion of any contract.
E. To loan such funds or guarantee a loan for such funds either prior to or after default, as Surety shall deem necessary for the completion of any contract and for the discharge of Surety in connection with any contract. The repayment of such loan shall be the responsibility of the Undersigned.
F. To file an immediate suit to enforce the provisions of this Agreement.
G. To take possession of the work to be performed pursuant to all or any part of the obligation, and at the expense

Indemnitors' Initials and Date UDJ 10-16-2001

of Principal and Indemnitor, to complete the performance required by the obligation or to cause the same to be completed or to consent to the completion thereof, and to take any other action which Surety may deem appropriate in connection therewith.

9. **POWER OF ATTORNEY** - The Undersigned hereby irrevocably nominate, constitute, appoint and designate Surety or its designee as their attorney-in-fact with the power, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, document or papers, including but not limited to, those related to the commencement of proceedings referred to in section 8, the endorsement of checks or other instruments payable to any of the Undersigned deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the within assignment for the full protection intended to be given to Surety under all other provisions of this Agreement. The Undersigned hereby ratify and affirm all acts and actions taken and done by Surety or its designee as attorney-in-fact.

10. **WAIVER OF NOTICE** - Principal and Indemnitor hereby waive and agree that Surety need not give to Principal or to any Indemnitor notice of any act, fact or information coming to the notice or knowledge of Surety concerning or affecting the rights or liabilities under any bond or any rights and liabilities thereunder. However, if the Undersigned become aware of any demand notice or proceeding which may result in liability to the Surety under any bond, the Undersigned shall notify the surety immediately of the same in writing.

11. **WAIVERS** - The Principal and Indemnitor hereby waive and agree not to assert:

A. Any defense that this Agreement was executed subsequent to the date of any Bond, it being expressly understood and agreed that the Undersigned hereby admits and covenants that the Bond was executed by Surety pursuant to the request of the Indemnitor and in reliance on the promise on the Indemnitor to execute and perform this Agreement.

B. Any right to claim that any property, including homesteads, is exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession in any action brought by Surety under this Agreement.

C. Any right to require Surety to proceed against Principal or Indemnitor or any other person, firm or entity or to proceed against or exhaust any security held by Surety at any time or to pursue any other remedy in Surety's power.

D. The defense of the statue of limitations in any action hereunder for the collection of any claim or the performance of any obligation indemnified hereby.

E. Any defense based upon an election of remedies by Surety, which election may destroy or otherwise impair subrogation rights of Principal or any Indemnitor or the right of Indemnitor to proceed against the Principal or to realize upon any security.

12. **PROTECTION OF OTHER SURETIES** - If Surety procures the execution of any Bond by other sureties or executes the Bond with co-sureties, then all the terms and conditions shall inure to the benefit of such other sureties and co-sureties who shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder.

This Agreement applies to all bonds executed or procured by Surety for Principal in its own name, or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms.

13. **CONSENT TO CHANGES** - Surety is authorized, without notice to or knowledge of the Undersigned, to assent to any change whatsoever in any Bond and any contract covered by a Bond, including, but not limited to, any change in the time for completion of the contract and for payment or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or larger or smaller penalties, and the Undersigned shall remain bound under the terms of this Agreement even though any such assent by Surety does or may substantially increase the liability of the Undersigned.

14. **SUBORDINATION OF INDEMNITORS** - The Indemnitor(s) shall have no rights of indemnity against Principal or his property until Principal's obligations to the Surety under this Agreement have been fully satisfied.

15. **NATURE OF RIGHTS** - All rights and remedies of Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of Surety to pursue any remedy against any one or more of the Undersigned shall not release or waive any right against any other of the Undersigned. The Surety is not required to exhaust its remedies or rights against Principal or to await receipt of any dividends from the legal representatives of Principal before asserting its rights under this Agreement against the Indemnitors. The rights, powers and remedies given to Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all rights, powers and remedies which Surety may have or require against the Undersigned or others whether by the terms of any other Agreement, by operation of law or otherwise.

The Undersigned shall continue to remain bound under this Agreement even though Surety may, from time to time and with or without notice to or knowledge of the Undersigned, have heretofore accepted or released, or shall hereafter accept or release, other Agreements of Indemnity or collateral in connection with the execution of the Bonds from the Undersigned or from others. If any of the persons named herein as Principal and Indemnitors fail to execute this Agreement or if the execution hereof by any of the Undersigned shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other of the Undersigned. Failure of Principal to sign any Bonds shall not relieve the Undersigned of liability under this Agreement. Separate suits may be brought on this Agreement against any or all of the Undersigned and the bringing of a suit or the recovery of judgment by any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

16. **TERMINATION** - This Agreement is a continuing obligation of the Undersigned unless terminated by written notice to Surety as hereinafter provided, and such termination by a particular Undersigned shall in no way affect the obligation of any other Undersigned who has not given such notice. The liability of the Undersigned hereunder as to the future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known about Principal, even though such facts materially increase the risk beyond that which the Undersigned might intend to assume. Whether Surety may have reason to believe such facts are

Indemnitors' Initials and Date VJ 10-16-2001

unknown to the Undersigned, or whether Surety may have reasonable opportunity to communicate such facts to the Undersigned, the Undersigned hereby waives notice of such facts. In order to terminate liabilities to future Bonds of Principal, an Undersigned must:

A. Give to Surety written notice of such termination by certified mail, return receipt requested, addressed to Surety at Surety's address; and

B. State in such notice the effective date of termination, which date shall not be less than 30 days following receipt of such notice by Surety, of the termination of such Undersigned's liability for future Bond.

After the effective date of such termination by giving notice, the Undersigned shall nonetheless be liable hereunder for:

A. Bonds executed or authorized prior to such effective date of termination, and any renewals, substitutions and extensions thereof; and

B. Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such effective date of termination, and any renewals, substitutions and extensions thereof; and

C. Any maintenance or guarantee Bond executed incidental to any other Bond executed prior to such date of termination, and any renewals, substitutions and extensions thereof.

**17. GENERAL PROVISIONS -**

A. The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against Principal.

B. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof.

C. The Undersigned warrant that each of them is specifically and beneficially interested in obtaining each Bond and agree to pay the initial, renewal, and additional premiums thereon, including premiums based on overrun and contract price according to the company's current rate manual recognizing that the initial premium is fully earned upon execution of said Bond.

D. Surety shall have the right, at its option and its sole discretion, to issue or cancel or decline the execution of any Bond, or renewal thereof, including a final Bond when it has furnished a bid bond.

E. Surety may consent to any changes or alterations in a contract or Bond, without affecting the liability hereunder of the Undersigned, including but not limited to riders extending the time of completion, or increases or decreases in the penal sum of the Bond, and the Undersigned hereby agree to pay any additional premium resulting from said changes or alterations, without giving notice thereof to the Indemnitors.

F. Surety shall have every right, defense, or remedy which a personal surety without compensation would have, including the right of exoneration.

G. The Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

H The Surety may, at its option, file or record this Agreement or any other document executed by any or all of the Undersigned in connection with the application, issuance or execution of any Bond or Bonds, or renewal thereof, coming within the scope of this instrument as: a security agreement or as part of a financing statement or, as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction of agency. The filing or recording of such document shall be solely at the option of the Surety. The failure to so file shall not release or discharge any of the obligations of the Undersigned under this Agreement.

I The Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

J. This Agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed to in writing.

K. In the event that any of the Undersigned shall fail to execute this instrument or become insolvent, or in the event any of the Undersigned who execute this Agreement shall be bound for any reason, the other Undersigned shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

L. Surety may maintain repeated actions on this instrument as breaches of it occur, without any former action operating as a bar to any subsequent action.

M. Wherever used in this Agreement the plural shall include the singular, the singular shall include the plural, and the neuter shall include both genders as the circumstances require.

N. The liability of the Undersigned hereunder shall not be affected by:
(a) The failure of Principal to sign any Bond.
(b) Any claim that other indemnity or security was to have been obtained.
(c) The release of any indemnity.
(d) The return or exchange of any collateral that may have been obtained.

O. The Undersigned and their successors, executors and administrators agree to hold all money and all proceeds of a contract, however received, as a trust for the benefit of Surety and use such money or other proceeds for the purpose of performing the Contract and discharging the obligations of the Bond, and for no other purpose until the Bond is completely exonerated.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date although nothing herein shall limit the right of Surety to claim under any prior assignment. With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond. The assignment with respect to each Bond shall take effect as of the date indicated, but only in the event of Default referred to in section 7.

Indemnitor's Initials and Date DJS 10-16-2000

IN WITNESS WHEREOF, Principals and each Indemnitor, intending to be legally bound hereby, have executed this Agreement effective as of the execution date first above-written.

F.A.S. Development Company, Inc. (affix corporate seal)
Principal(s) Name

By [signature] Title President
Vanessa Sutton

By________ Title________

By________ Title________

By________ Title________

## INDEMNITOR(S)

[signature]
Signature

Vanessa Sutton
Name Typed

116 Ashby Street Atlanta GA 30314
Residence Address

Res. Phone # SS# 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

Signature
Name Typed
Residence Address
Res. Phone # SS#

Signature
Name Typed
Residence Address
Res. Phone # SS#

Signature
Name Typed
Residence Address
Res. Phone # SS#

Signature
Name Typed
Residence Address
Res. Phone # SS#

Signature
Name Typed
Residence Address
Res. Phone # SS#

## INDIVIDUAL ACKNOWLEDGMENTS

STATE OF Georgia
COUNTY OF Fulton

On this 16th day of October 2000, before me personally appeared Vanessa Sutton personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to in this instrument, and acknowledged to me that she executed the same.

Sworn to and subscribed before me this Notary Public, Fulton County, Georgia, 19____.
[signature] My Commission Expires March 30, 2003
Notary Public My Commission Expires:

STATE OF ________
COUNTY OF ________

On this _____ day of ________, 19____, before me personally appeared ________ personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to in this instrument, and acknowledged to me that ___he___ executed the same.

Sworn to and subscribed before me this _____ day of ________, 19____.

Notary Public My Commission Expires:

Indemnitors' Initials and Date VJS 10-16-2000

## PARTNERSHIP ACKNOWLEDGEMENT

STATE OF ______________________
COUNTY OF ______________________

On this ______ day of ______________________, 19____, before me personally comes ______________________ ______________________ a member of the co-partnership of ______________________ to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said co-partnership.

______________________
(Signature and title of official taking acknowledgement)
(Notary)

## CORPORATE ACKNOWLEDGEMENT

STATE OF Georgia
COUNTY OF Fulton

On this 16th day of Oct 2000, before me personally comes Vanessa Sutton

to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Atlanta and that he/she is the President of the E.A.S. Development Company, Inc. the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that is was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

Notary Public, Fulton County, Georgia
My Commission Expires March 30, 2003

[signature]
(Signature and title of official taking acknowledgement)
(Notary)

## CORPORATE RESOLUTION AND CERTIFICATION

**WHEREAS**, the ______________________ and ______________________ of this Corporation have executed a certain Indemnity Agreement in favor of COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, dated ______________, 19____, protecting it in connection with its assuming suretyship as more fully described therein, said Indemnity Agreement having been read at this meeting and fully considered and approved by the directors present; and

**WHEREAS**, the said Indemnity Agreement has been accepted by COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, upon the warranty of said officers that this Corporation has such an interest in said suretyship as to empower it to make said Indemnity Agreement.

**NOW THEREFORE, BE IT RESOLVED** that the acts of the said officers in executing the said Indemnity Agreement on behalf of this Corporation be, and they are hereby, unanimously ratified and confirmed as the acts of this Corporation.

**BE IT FURTHER RESOLVED** by the aforesaid warranty that this Corporation has such an interest in said suretyship as to empower it to make said Indemnity Agreement, and it is hereby, ratified and confirmed as a warranty of this Corporation.

**BE IT FURTHER RESOLVED** that said officers are empowered on behalf of the corporation to do such acts and execute such other documents as may be necessary to protect COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, and induce it to assume said suretyship, including but not limited to the execution of a Collateral Agreement and the assignment of such collateral to COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, as COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA may require, and such acts are hereby unanimously ratified and confirmed as the acts of this Corporation.

I hereby certify that I am ______________________ of ______________________ ______________________ and that the above resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the ______ day of ______________________, 19____, in the office of said Corporation, at which meeting a quorum of the Directors were present.

**IN WITNESS WHEREOF**, I have hereunto set my hand and the corporate seal of the Corporation, this ______ day of ______________________, 19____.

(AFFIX CORPORATE SEAL) Frank H. Andrews
Secretary

Indemnitors' Initials and Date F.A. 10-16-2000

THOMPSON & SLAGLE, P.C.
ATTORNEYS AT LAW
3295 RIVER EXCHANGE DRIVE
SUITE 300
NORCROSS, GEORGIA 30092

DEWITTE THOMPSON (GA AND FL)
JEFF B. SLAGLE
ALFRED A. MALENA, JR.
W. WRIGHT DEMPSEY, JR.
STEVEN SALCEDO
JOHN D. ALEXANDER

OF COUNSEL:
BYRON M.G. SANFORD
GRIER G. NEWLIN

TELEPHONE
(770) 662-5999
FACSIMILE
(770) 447-6063

ALFRED A. MALENA, JR.
AMALENA@THOMPSONANDSLAGLE.COM

October 25, 2002

**VIA OVERNIGHT MAIL**

Cathy Horan
Naval Facilities Engineering Command
Office of Counsel
2155 Eagle Drive
Charleston, SC 29419

| | | |
|---|---|---|
| Re: | Principal: | F.A.S. Development Company, Inc. |
| | Surety: | Commercial Casualty Insurance Company of Georgia |
| | Project: | Naval Air Station Atlanta, Marietta, GA<br>Replace 400HZ Converter<br>Navy Contract #N62467-01-C-3215 |
| | Bond No.: | PPB4618230 |

Dear Cathy:

Pursuant to our recent conversations, please find enclosed an executed Indemnification and Hold Harmless Agreement from Commercial Casualty to the Navy in the above-referenced matter. I believe the form and content of the agreement will be to your satisfaction. If you have any questions or need any changes with regard to the agreement, please let me know.

With the tender of the Hold Harmless Agreement, it appears that Commercial Casualty has fulfilled all of the requirements for the release of the contract funds on the project. Commercial Casualty is eager to have the contract funds released as soon as possible, as certain claimants await payment from those funds. Please call me upon your receipt of this letter to let me know if the Navy requires anything further, or when the funds may be released. I will be glad to discuss with you exact amounts of joint checks, if necessary.

EXHIBIT
tabbles
C

Thank you for your continued cooperation and assistance in this matter. Should you have any questions, please do not hesitate to contact me.

Sincerely,

THOMPSON & SLAGLE, P.C.

Alfred A. Malena, Jr.

AAM/nb
Enclosure: Indemnification and Hold Harmless Agreement

# INDEMNIFICATION AND HOLD HARMLESS AGREEMENT

**WHEREAS**, Commercial Casualty Insurance Company of Georgia has issued surety bonds on the project described in Contract #N62467-01-C-3215, for the Naval Air Station Atlanta, Marietta, GA, Replace 400HZ Converter Navy project (the Contract), covering the obligations of its principal, F.A.S. Development Company, Inc. and the obligee, the United States Navy;

**WHEREAS**, in consideration of the delivery to Commercial Casualty Insurance Company of Georgia (Indemnitor) of amounts otherwise payable to F.A.S. Development Company, Inc. under the Contract, and other good and valuable consideration, receipt of which is hereby acknowledged;

1.

Indemnitor hereby agrees to indemnify the United States Navy (Indemnitee) from and against all liability Indemnitee may sustain as a result of claims or demands against Indemnitee arising from the payment by Indemnitee to Indemnitor of any amounts that would otherwise be payable to F.A.S. Development Company, Inc. under the Contract.

2.

The total extent and amount of this indemnification shall be limited to the aggregate amount actually paid by the United States Navy to Indemnitor under the Contract.

3.

If Indemnitee has actual or constructive notice of a claim or possible claim on the funds paid to Indemnitor under this Agreement, Indemnitee shall provide immediate written notice to Indemnitor at Indemnitor's counsel's office: DeWitte Thompson, Thompson & Slagle, P.C., 3295 River Exchange Drive, Suite 300, Norcross, Georgia,

EXHIBIT
D

30092, (770) 662-5999, (770) 447-6063 (FAX). Indemnitor shall then have the right to investigate, and either settle or defend such claims, or may refund to Indemnitee the amount of any payments made by Indemnitee to Indemnitor pursuant to this Agreement thereby terminating this Agreement. Indemnitee shall provide any and all cooperation and assistance Indemnitor may demand for such an investigation or defense.

4.

This Agreement constitutes the entire agreement concerning indemnification between the parties.

Executed on this 25th day of October, 2002.

Commercial Casualty Insurance Company of Georgia

By: [signature]

Title: Surety Manager

Sworn to and subscribed before me this 25 day of October, 2002
[signature]
Notary Public

My commission expires:
Notary Public, Gwinnett County, GA
My Commission Expires March 19, 2006

[NOTARIAL SEAL]

United States Navy

By: ______________________

Title: ______________________

# ASSIGNMENT

Date: 6-17-2002

KNOW ALL MEN BY THESE PRESENTS: That F. A. S. Development Company, Inc., for value received and in accordance with the Assignment of Claims Act of 1940, as amended 31 U.S.C. 3727, 41 U.S.C. 15, does hereby assign, set over and transfer unto Commercial Casualty Insurance Company of Georgia, 350 Research Ct., Suite 200, Norcross, Georgia 30092, all right, title and interest to all moneys due or to become due from the United States of America, or from any agency or department thereof, accruing under Contract Number N62467-01-C-3215, dated 25 June 2001 and amended 20 March 2002. Amount of Contract: $52,625.00. Balance of Payments under the Contract $52,625.00.

The Assignee shall not be held responsible for the performance of any work or for manufacture or delivery of and of the items mentioned in the said contract of contracts.

F.A.S. Development Company, Inc.
(Name of Contractor)

ATTEST:

By: President [signature]
Title:

[signature]
(Secretary of Corporation)

(Corporate Seal)

******************************************

## ACCEPTANCE

Assignment accepted at (City or County) Norcross,
State of Georgia this 20th day of June, 2002.

Commercial Casualty Insurance Company of Georgia
(Name of Assignee)

(SEAL)

By: [signature]
Title: Attorney-in-Fact

Sworn to and subscribed before me this 20th day of June, 2002 at (City or County) Gwinnett, State of GA.

(SEAL)

[signature]
(Notary Public)
My Commission Expires: Notary Public Gwinnett County Georgia My Commission Expires May 26, 2006

EXHIBIT
E

# FEDERAL NOTICE OF ASSIGNMENT

To: NFEC Southern Division, ROICC Atlanta
Naval Air Station Atlanta Building 70
1000 Halsey Avenue
Marietta, Georgia 30060-5099
Attn: Contracting Officer

This has reference to Contract Number N62467-01-C-3215 dated 25 June 2001 entered into between F.A.S.. Development Company, Inc., 118 Ashby Street, NW, Atlanta, Georgia 30311 and NFEC Southern Division, ROICC Atlanta, Naval Air Station Atlanta, 1000 Halsey Avenue, Marietta, Georgia 30060-5099, for Replace 400 Hz Frequency Converter, Hangar 1, Naval Air Station Atlanta, Marietta, Georgia.

Monies due or to become due under the contract described above have been assigned to the undersigned, under the provisions of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41, U.S.C. 15.

A true copy of the Instrument of Assignment executed by the Contractor on June 17, 2002 is attached to the original notice.

Payments due or to become due under such contract should be made to the undersigned assignee.

Please return to the undersigned the three enclosed copies of this notice with appropriate notations showing the date and hour of receipt, and signed by the person acknowledging receipt on behalf of the addressee.

Very truly yours,
Commercial Casualty Insurance Company of Georgia

By: [signature]
Donald H. Gibbs

Title: Attorney in Fact

350 Research Court, Suite 200

Norcross, Georgia 30092
(Address of Assignee)

******************************************************************

## ACKNOWLEDGMENT

Receipt is acknowledged by (signature) ____________ on behalf of (name and address of this notice) ____________ of the above and of a copy of the instrument of assignment. They were received at ________ (am or pm), on ____________, 2002.

**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING COMMAND
SOUTHERN DIVISION
FIELD OFFICE ATLANTA AREA
1000 HALSEY AVENUE BLDG 70
MARIETTA, GA 30060-5099

80C
14 January 2002

F. A. S Development Company, Inc.
Attn: Vanessa Sutton
116 Ashby Street NW
Atlanta, Georgia 30311

Subj: CONTRACT N62467-01-C-3215, REPLACE 400HZ FREQUENCY CONVERTER, HANGAR 1, NAVAL AIR STATION ATLANTA, MARIETTA, GEORGIA; INSTRUCTIONS FOR ASSIGNMENT OF CLAIMS

Gentlemen:

Receipt of a letter dated 10 January 2002 from Commercial Casualty Insurance Company of Georgia for an Assignment of Claim is acknowledged.

Enclosures (1) and (2) are to be completed prior to processing of any invoice. There are two (2) forms: (1) Assignment and (2) Notice of Assignment as per Southern Division Legal Counsel requirement. Your firm and the Assignee (Commercial Casualty) are to complete four (4) originally executed copies (ALL ORIGINAL SIGNATURES) of Enclosure (1). The Assignee (Reliance Services Inc.) will complete four (4) originally executed copies of the Notice of Assignment (ALL ORIGINAL SIGNATURES). This is to be done as promptly as possible. Once completed, mail all originals to the Contracting Officer at the following address:

NFEC Southern Division, ROICC Atlanta
Naval Air Station Atlanta Building 70
1000 Halsey Avenue
Marietta, Georgia 30060-5099
Attn: Marsha Tyson, Contracting Officer

The Contracting Officer will then complete the paperwork and modify the contract. A duplicate will be mailed to the contractor, assignee, and disbursing office.

If there are any questions or concerns, please phone the undersigned at 770-919-6686, fax 770-919-6800 or email tysonmr@efdsouth.navfac.navy.mil.

Sincerely,

Marsha Tyson

MARSHA TYSON
Contracting Officer

Encl: (1) Assignment Form (4 copies)
(2) Notice of Assignment (4 copies)