No. 03-2033C
(Judge Firestone)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COMMERCIAL CASUALTY INSURANCE CO. OF GEORGIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of counsel:
PAMELA J. NESTELL
Trial Attorney
Engineering Field Activity
Chesapeake
Litigation Headquarters
1314 Harwood St., S.E.
Washington, D.C. 20374
Tele: (202) 685-2136

May 27, 2005

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S MOTION TO DISMISS OR , IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ........ 1

DEFENDANT'S BRIEF ........ 2

QUESTIONS PRESENTED ........ 2

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 4

I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amount It Paid Pursuant To That Bond ........ 4

II. Commercial Casualty, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation Because It Failed To Honor Its Payment Bond And Fully Pay The Subcontractors Upon This Contract ........ 13

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) .... 7

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) .... 5, 7

American Pacific Roofing Co. v. United States,
21 Cl. Ct. 265 (1990) .... 5

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .... 13, 14

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) .... 7, 11, 16

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) .... 7, 8

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) .... 8, 17

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 (1984) .... 4

Eastport Steamship Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) .... 6

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) .... 5

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990) .... 7

Fireman's Fund Insurance Company v. England,
313 F.3d 1344 (Fed. Cir. 2002) .... passim

Golden Pacific Bancorp. v. United States,
15 F.3d 1066 (Fed. Cir. 1994) .......... 13

Heagy v. United States,
12 Cl. Ct. 694 (1987) .......... 4

Henningsen v. United States Fid. & Guar. Co.,
208 U.S. 404 (1908) .......... 8

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) .......... passim

Keene Corp. v. United States,
508 U.S. 200 (1993) .......... 5

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 5

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) .......... 7, 13

Newark Insurance Co. v. United States,
144 Ct. Cl. 655, 169 F. Supp. 955 (1959) .......... 7

Newman-Green, Inc. v. Alfonzo-Larrain,
490 U.S. 826 (1989) .......... 5

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) .......... 8

Prairie State Bank v. United States,
164 U.S. 227 (1896) .......... 8, 9

Ransom v. United States,
17 Cl. Ct. 263 (1989), aff'd, 900 F.2d 242 (Fed. Cir. 1990) .......... 11

Royal Indem. Co. v. United States,
208 Ct. Cl. 809, 529 F.2d 1312 (1976) .......... 7

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) .......... 13,14

Sweats Fashion, Inc. v. Panhill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) .......... 13

Thomas Creek Lumber & Log Co. v. United States,
36 Fed. Cl. 220 (1996) .......... 13

United States Fidelity & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) .......... 7, 14, 15

United States Fidelity & Guar. Co. v. United States,
230 Ct. Cl. 355, 676 F.2d 622 (1982) .......... 7

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) .......... 6

United States v. King,
395 U.S. 1 (1969) .......... 5

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) .......... 10, 16, 17

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) .......... 5

United States v. Sherwood,
312 U.S. 584 (1941) .......... 5

United States v. Testan,
424 U.S. 392 (1976) .......... 5, 6

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) .......... 4, 12

Westech Corp. v. United States,
20 Cl. Ct. 745 (1990) .......... 10

## STATUTES

28 U.S.C. § 1491 .......... 4, 5

31 U.S.C. §3727(a)(1), (b) .......... 11

41 U.S.C. §15(a) .......... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2033C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56(b) of the United States Court of Federal Claims, defendant respectfully requests that the Court dismiss the complaint because it fails to state a claim upon which relief can be granted, given the fact that plaintiff is neither in privity with the Government, nor equitably subrogated to the rights of a contractor who does have privity. In the alternative, defendant respectfully requests that the Court enter summary judgment in the Government's favor upon the grounds that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon the pleadings, Defendant's Proposed Findings of Uncontroverted Fact, and the following brief and appendix.[1]

---

[1] "Compl. ¶ ___" refers to a paragraph of the complaint filed on September 2, 2003. "Def. App. ___" refers to a page within the appendix accompanying this brief. "DPFUF ¶ __" refers to a specific paragraph in Defendant's Proposed Findings of Uncontroverted Fact.

DEFENDANT'S BRIEF

QUESTIONS PRESENTED

1. Whether the complaint fails to state a claim upon which relief can be granted, because payment by the surety was made only pursuant to the surety's payment bond?

2. Whether plaintiff, as a matter of law, cannot recover under the doctrine of equitable subrogation?

STATEMENT OF FACTS

On June 25, 2001, the United States Department of the Navy ("Navy") awarded Contract No. N62467-01-C-3215 ("the contract") to F.A.S. Development Company, Inc. ("FAS"), to replace a 400Hz frequency converter at Naval Air Station Atlanta in Marietta, Georgia. Def. App. 1-3; Compl. ¶ 4. On July 17, 2001, plaintiff, Commercial Casualty Insurance Company of Georgia ("Commercial Casualty" or "surety"), executed a performance bond in the amount of $108,768.00 and a payment bond in the amount of $108,768.00 in connection with and as required by the contract. Def. App. 5-8; Compl. ¶4.

On January 10, 2002, Commercial Casualty notified the Navy of outstanding claims by "subcontractors and vendors on projects bonded by the surety" upon behalf of FAS, and that no payments should be made to FAS. Def. App. 9. On March 27, 2002, FAS and the Navy executed a bilateral modification, Modification No. P00001, to amend the contract specifications, decrease the contract price from $108,768.00, to $52,625.00, and extend the contract completion date from October 9, 2001, to June 14, 2002. Def. App. 10-11. Subsequently, FAS and the Navy executed Modification No. P00002 to extend the contract completion date from June 14, 2002, to June 24, 2002. Def. App. 12. FAS completed its work upon the contract on or about July 24,

2002. Def. App. 20; Compl. ¶ 7.

On July 31, 2002, the Navy informed FAS that its request for an assignment of the contract balance to Commercial Casualty was denied pursuant to the Assignment of Claims Act, because "voluntary assignments of claims against the Government [are barred] unless the assignment is to a bank, trust, or financial institution." Def. App. 13. On August 2, 2002, Commercial Casualty requested by letter that the Navy not release the contract funds to FAS but, instead, pay Commercial Casualty as the surety. Def. App. 16-18. In its letter, Commercial Casualty stated that it "is equitably subrogated to the contract funds through its payment of claims on this and other projects." Def. App. 17 (emphasis added). At that time, however, Commercial Casualty had paid no claims upon this contract. Def. App. 34-35.

On August 19, 2002, the Navy unilaterally issued Modification No. P00003 to the contract, assessing liquidated damages at $140.00 per day for 30 days in the amount of $4,200.00, and decreasing the contract price to $48,425.00. Def. App. 19-20. On September 10, 2002, FAS submitted a final invoice, release, and request for payment of the remaining contract balance of $48,425.00. Def. App. 21-23. The Navy has not paid FAS and continues to retain the contract funds. Compl. ¶ 6.

By letter dated September 16, 2002, Commercial Casualty notified the Navy that it had received claims for payment from FAS's subcontractors upon the contract, FCX Systems, Inc. and Rogers Electrical Contractors, Inc. ("Rogers Electric"), and demanded that the Navy make payment to Commercial Casualty. Def. App. 24-25. Commercial Casualty received claims from FAS's subcontractors totaling $37,209.00. Def. App. 26-32.

On July 31, 2003, Commercial Casualty sent a payment to Hatmaker and Associates, a

debt collection agency hired by FCX Systems, in the amount of $25,644.00 for the labor and materials that FCX Systems provided upon the contract. Def. App. 33-34. Hatmaker and Associates kept 20 percent of the payment owed to FCX Systems as its fee for debt collection. Def. App. 40. Accordingly, FCX Systems only received $20,515.20 of the amount owed to it upon the contract. Id. Although FAS forwarded invoices from Rogers Electric to Commercial Casualty for payment on or about August 6, 2002, Rogers Electric has not received any payment from Commercial Casualty. Def. App. 26, 38-39. The payment made by Commercial Casualty to FAS's subcontractor, FCX Systems, was made pursuant to the payment bond issued by Commercial Casualty. Compl. ¶ 8. Commercial Casualty did not perform pursuant to its performance bond, and does not claim equitable subrogation upon that basis. Compl. ¶¶ 7, 8.

## ARGUMENT

### I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amount It Paid Pursuant To That Bond

Like its predecessors, this is a Court of limited jurisdiction. Heagy v. United States, 12 Cl. Ct. 694, 697 (1987); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428 (1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief.[2] United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312

[2] In United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003), the Supreme Court opined that because the Tucker Act waives sovereign immunity for suits of the type generally encompassed by a claim, jurisdiction exists (at least for purposes of surviving a motion to dismiss for lack of jurisdiction). Based upon this guidance, the United States maintains that the instant claim fails to state a claim upon which relief can be granted. This conclusion follows from the fact that the surety's complaint, upon its face, states a type of claim over which this Court has jurisdiction, which appears to meet the criterion established by White Mountain. Having said that, the Government maintains that jurisdiction is lacking over this particular claim, because the Tucker Act, 28 U.S.C. §1491, does not waive claims by entities such as the surety

U.S. 584, 586 (1941); Insurance Company of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. at 1; Insurance Company of the West, 243 F.3d at 1372. When confronted with a jurisdictional issue, the Court's "task is to discern the 'unequivocally expressed' intent of Congress, construing ambiguities in favor of immunity." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."[3] 28 U.S.C. § 1491. There is

---

under the facts presented here. Therefore, the issue of jurisdiction is inextricably linked to the failure to state a claim, for which reason, it is discussed at the outset of this motion.

[3] The existence of jurisdiction is determined at the time the complaint is filed. Keene Corp. v. United States, 508 U.S. 200 (1993); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("[t]he existence of federal jurisdiction ordinarily depends upon the facts as they exist when the complaint is filed"). Plaintiff bears the burden of proving the soundness of his allegations of jurisdiction. See, e.g., American Pacific Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990) ("where the court's jurisdiction is put in question, plaintiff 'bears the burden of

no question, but that the Tucker Act contains a waiver of the Government's sovereign immunity to be sued by its contractors or by those who "stand in the shoes" of its contractors. Insurance Company of the West, 243 F.3d at 1375. The question is the extent to which that waiver extends.

Further, it is axiomatic that the Tucker Act does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within the jurisdiction of this Court. Connolly, 716 F.2d at 885. Thus, jurisdiction to entertain plaintiff's complaint exists in this Court only if plaintiff can establish that its cause of action lies within the well-established limitations of this Court's jurisdiction.

Clearly there is no privity of contract between the Government and the non-takeover surety who did not complete the project under the terms of its performance bond. As the Court of Appeals for the Federal Circuit recently observed,"[w]e have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted

---

establishing subject matter jurisdiction by a preponderance of the evidence'") (quoting Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988)).

contract." Insurance Company of the West, 243 F.3d at 1370. This succession, or assignment of rights by operation of law, appears to be the basis upon which the "non-contractual doctrine of equitable subrogation" is founded.[4] Fireman's Fund Insurance Company v. England, 313 F.3d 1344, 1351 (Fed. Cir. 2002). From this it necessarily follows that, absent take over of the contract or financing completion of the contract via its performance bond, the surety is not equitably subrogated to the rights of the prime contractor and is, instead, left only with the rights that a subcontractor may have against the prime contractor.

The gist of the surety's complaint here is that the Navy, as a stakeholder retaining the contract balance upon a contract completed by FAS, should pay Commercial Casualty instead of FAS.[5] The surety's substantive claim and assertion of jurisdiction are premised upon the opinions in cases such as Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985); United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622 (1982); Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312 (1976); United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973); and Argonaut Ins. Co. v. United

---

[4] Clearly, the surety is not a third party beneficiary of the Government contracts upon which it posts bonds. National Surety Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts"); Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 500 (Fed. Cir. 1990) (a surety "is neither the intended third-party, nor the direct, beneficiary" of the bonded contract). Further, the surety is not in privity with the Government merely because the surety posted a bond upon a Government contract. Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998); Aetna Cas. & Surety v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988).

[5] As a stakeholder, the Navy is "caught in the middle between two competing claimants [and] cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them." Newark Insurance Co. v. United States, 144 Ct. Cl. 655, 169 F. Supp. 955, 957 (1959). In such circumstances, one remedy includes the initiation of an interpleader proceeding in district court by the stakeholder. Id.

States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), in which the Court held that the Government may be liable to a surety for unreasonably making progress payments to a contractor after the surety has given notice that the contractor is in default.

Despite the line of cases identifying the substantive rights of a surety, it was not until the decision in Balboa that the Federal Circuit addressed the Claims Court's jurisdiction over such claims. In Balboa, the Court relied upon three Supreme Court cases – Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908); and Prairie State Bank v. United States, 164 U.S. 227 (1896) – to support its conclusion that the Court possessed jurisdiction over a claim of equitable subrogation.

More recently, in Insurance Company of the West, the United States Court of Appeals for the Federal Circuit concluded that, after the decision in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999), the Court could no longer rely upon those three cases to find a waiver of sovereign immunity for subrogation claims. Insurance Company of the West, 243 F.3d at 1371-72. This conclusion followed from the Supreme Court's opinion that

> None of these cases [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the Government. Instead, these cases dealt with disputes between private parties over priority to funds which had been transferred out of the Treasury and as to which the Government had disclaimed any ownership.

Blue Fox, 525 U.S. at 265. In view of the private nature of the litigants, the question of waivers of sovereign immunity for such claims was never addressed.[6]

---

[6] Based upon the opinion in Insurance Company of the West, there may be some question as to whether the funds at stake in Prairie State Bank had in fact been "transferred out of the Treasury." Insurance Company of the West, 243 F.3d at 1372 n.2. This possible factual

In Insurance Company of the West, the Court of Appeals defined the waiver of sovereign immunity found in the Tucker Act insofar as it relates to a surety. The scope of that waiver was based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375 (emphasis added). The Court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). Given the requirement that the surety "step into the shoes of a government contractor," Id. at 1375, there is little room to argue that the Tucker Act's waiver extends beyond a takeover surety or one who effectively completes the project by financing its completion under its performance bond. In the instant case, the surety did neither, for which reason it is not equitably subrogated to the rights of FAS. See Fireman's Fund, 313 F.3d at 1352 (even where a surety takes over performance, the surety is not subrogated to the rights of the taken over contractor for pre-takeover claims).

In this case, even if the surety paid FAS's subcontractors pursuant to the payment bond issued upon behalf of FAS, this singular act did not convert the surety's actions into anything other than payment pursuant to its payment bond obligations. As such, the surety's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government.

Insurance Company of the West, 243 F.3d at 1371 (emphasis added). This conclusion is

---

issue, however, did not affect the Federal Circuit's conclusion that "the Supreme Court did not directly address the sovereign immunity issue in Prairie State Bank." Id.

consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 234 (1947), upon which the Court of Appeals relied, and in which the Supreme Court concluded:

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

Munsey Trust, 332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. In other words, "[the surety] cannot acquire by subrogation what [the subcontractor,] whose rights he claims [,] did not have." Munsey Trust, 332 U.S. at 242.

The apparent rationale for distinguishing between performance bond or takeover sureties, and sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a surety agreement is "simply to ensure completion of the government's project." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990). Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. Moreover, where the work is complete, but the suppliers and subcontractors are unpaid, "the government suffers no damage." Munsey Trust, 332 U.S. at 244.

Permitting recourse by the surety against the Government, where the surety neither takes over nor finances completion of contract performance, converts the Government into an insurer for the surety against losses precipitated by the contractor with whom the surety entered into a contract. Instead, the question of loss under the payment bond should be a matter to be resolved between the surety and the contractor that it bonded and that caused the loss. Based upon the

superior knowledge and position of the surety, shifting the obligation to the surety to resolve such matters is neither unfair nor unreasonable.[7] Indeed, the surety agreed, for a price, to accept the risk inherent in insuring the performance and payment by a contractor and occupied a better position than the Government in deciding to whom it would issue bonds. Cf., Ransom v. United States, 17 Cl. Ct. 263, 269 (1989) (information related solely to an individual contractor's ability to perform is better known by surety than Government), aff'd, 900 F.2d 242 (Fed. Cir. 1990).

In its complaint, Commercial Casualty also claims that it is entitled to the contractual rights of the prime contractor because FAS "voluntarily" assigned its rights to the surety through a General Agreement of Indemnity and a purported assignment agreement. Compl. ¶¶ 8, 11. The assignment of claims under Government contracts is generally prohibited by what is commonly called the Anti-Assignment Act. That Act is composed of two provisions, 41 U.S.C. §15(a) and 31 U.S.C. §3727(a)(1), (b). See Fireman's Fund, 313 F.3d at 1349-50. Under that Act, as applicable here, generally the voluntary assignment of any claim, except to a financing institution, is prohibited. See Fireman's Fund, 313 F.3d at 1350 ("Fireman's Fund is not a 'financing institution,'" under the Anti-Assignment Act, but instead "an insurance company writing insurance policies that protect against risks"). As the Federal Circuit explained, "[t]he assignment by [the contractor] of 'all of their rights under the contracts' violated the prohibition in 41 U.S.C. § 15(a) against the transfer of 'any interest' in any contract involving the United

---

[7] In Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), the Court of Claims reiterated the "well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Id., 434 F.2d at 1367 (citing National Surety Corp. v. United States, 132 Ct. Cl. 724, 133 F. Supp. 381 (1955)).

States." Fireman's Fund, 313 F.3d at 1349.

To the extent that Commercial Casualty alleges in its complaint that any rights voluntarily assigned to it by the contractor permit it to bring an action against the Government to enforce that assignment, clearly it is wrong. Thus, the only claims that Commercial Casualty can bring against the United States are those claims the contractor had against the Government and which pass by operation of law, under equitable subrogation. This subrogation does not extend to any claim based upon rights "voluntarily" assigned by the contractor to Commercial Casualty in the General Agreement of Indemnity or an assignment agreement. From this it necessarily follows that if jurisdiction does not exist over Commercial Casualty's equitable subrogation claim against the United States, because the surety failed to take over the contract or finance its completion, then any rights that may have been assigned are empty rights against the United States.

Commercial Casualty neither completed the contract performance of its bonded contractor, nor effectively completed the contract performance by paying for completion of contract performance under a performance bond. As such, the surety is not in privity with the Government and further fails to meet the criteria established to bring an equitable subrogation claim against the Government. Given this fact and the fact that the surety was never a "contractor" for the Government, the inescapable conclusion is that there is no basis for this Court to exercise jurisdiction over the claim. This failure equates with a failure to state a claim upon which this Court can grant relief, for which reason the claim should be dismissed. See, e.g., White Mountain, 537 U.S. at 472-73.

## II. Commercial Casualty, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation Because It Failed To Honor Its Payment Bond And Fully Pay The Subcontractors Upon This Contract

In the event this Court concludes that the surety's complaint states a claim upon which relief can be granted, as a matter of law, the Government is entitled to summary judgment. This conclusion follows from the nature of subrogation and the rights of the surety, which are derived from those it paid.

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Golden Pacific Bancorp. v. United States, 15 F.3d 1066, 1070 (Fed. Cir. 1994); Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 234 (1996); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 n.1 (1989). A dispute over a "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Furthermore, "there is no genuine dispute where the evidence 'is so one-sided that one party must prevail as a matter of law.'" National Surety Corp. v. United States, 31 Fed. Cl. 565, 570 (1994) (quoting Anderson, 477 U.S. at 252).

Where a motion for summary judgment is made, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . . [Rather,] 'the burden on the moving party may be discharged by "showing" - - that is, pointing out to the [Court of Federal Claims] - - that there is an absence of evidence to support the non-moving party's case'." Sweats Fashion, Inc. v. Panhill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Where materials beyond the pleadings are considered, a motion to dismiss will be considered a motion

for summary judgment. RCFC 12(c).

Finally, summary judgment is not regarded as a disfavored procedural short cut, "but rather an integral part of the court rules as a whole." Celotex Corp. v. Catrett, 477 U.S. at 327. Indeed, summary judgment is wholly consistent with the rules of this Court, which are "designed to secure a just, speedy, and inexpensive determination of each and every action." Spirit Leveling Contractors, 19 Cl. Ct. at 89.

Much of the law applicable to this argument is set forth above in support of our demonstration that plaintiff failed to state a claim upon which relief can be granted. Consideration of that law, in the context of summary judgment, further indicates that even if the Court should find that the complaint states a claim, the Government is nevertheless entitled to summary judgment in its favor as a matter of law.

Commercial Casualty may not claim a right to equitable subrogation where it failed to pay fully the subcontractors upon the contract. United States Fidelity & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377, 1381, 1385 (1973) (surety had no claim to progress payments or retained funds where surety had not paid subcontractors in full); See also Restatement (Third) of Suretyship & Guaranty § 28 cmt. c (the surety "is not entitled to subrogation unless the underlying obligation is totally satisfied"); Restatement (First) of Security § 141 cmt. e ("[t]he surety in such cases is subrogated only after every duty protected by the security has been fully satisfied").

This principle was applied in United States Fidelity & Guar. Co. v. United States, in which the surety sued to recover a progress payment paid by the Government to the prime contractor after the Government received notice from the surety that laborers and suppliers had

not been paid. The surety also claimed entitlement to the contract retainage. The Court of Claims denied recovery of either amount because the surety did not pay all of the outstanding claims of the laborers and suppliers. United States Fidelity & Guar. Co., 475 F.2d at 1381 ("[u]ntil the surety undertakes to pay all of the outstanding claims owed by [the prime contractor], it will not be permitted to share in retainages still held by the Government"). With respect to the progress payment, the court said:

> even if the court would allow evidence to be received which clearly proved that the contracting officer abused his discretion in making the progress payment after being given notice by the surety of the contractor's default in paying the subcontractors, we would be powerless under the authorities cited, supra, to require that the Government make a payment of $29,000 to the surety when it is clear that the surety has not paid these subcontractors in full.

United States Fidelity & Guar. Co., 475 F.2d at 1385.

The undisputed facts demonstrate that Commercial Casualty failed to pay the full amount owed to the two subcontractors upon this contract. Rogers Electric has never been paid. On August 6, 2002, FAS informed Rogers Electric that it had received the subcontractor's invoices in the amount of $11,565.00, and had forwarded the invoices to Commercial Casualty for payment. Def. App. 26. Indeed, on September 16, 2002, Commercial Casualty, through its counsel, informed the Navy that Rogers Electric was owed payment and provided a copy of Rogers Electric's demand for payment to the Navy. Def. App. 24. On October 16, 2003, after repeated efforts to persuade Commercial Casualty to honor its debt, Rogers Electric submitted another letter requesting payment. Def. App. 35. Despite being aware of its obligation to Rogers Electric for over a year, Commercial Casualty refused to pay the amount owed to the subcontractor because the one year statute of limitations for filing a cause of action in Federal

court against the surety to recover the debt had passed. Def. App. 38-39.

Commercial Casualty only made payment to FCX Systems after the subcontractor hired a debt collection agency. On July 31, 2003, Commercial Casualty sent a payment to Hatmaker and Associates, a debt collection agency hired by FCX Systems, in the amount of $25,644.00 for the labor and materials it provided upon the contract. Def. App. 33-34. However, Hatmaker and Associates kept 20 percent of the payment owed to FCX Systems as its fee for debt collection. Def. App. 40. Accordingly, FCX Systems only received $20,515.20 of the amount owed to it upon the contract. Id. Thus, FCX Systems has not been fully paid by the surety for the labor and supplies it provided upon the contract. Because neither subcontractor has been fully paid, the surety cannot claim equitable subrogation here.

Jurisdiction over a surety's claim of equitable subrogation is exercised only upon an equitable basis. See Argonaut, 434 F.2d at 1367 ("the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others"). Where the surety avoids its liability to the subcontractors, as Commercial Casualty did here, its inequitable conduct necessarily defeats its claim of equitable subrogation. A surety may only claim subrogation to the extent it has paid the party whose rights it claims. Munsey Trust, 332 U.S. at 242 ("[o]ne who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made"). Otherwise, the result would be a windfall to the surety.

Even if Commercial Casualty fully paid Rogers Electric and FCX Systems, the surety would only stand in the shoes of the subcontractors, who have no rights to enforce against the

Government. "Sovereign immunity bars subcontractors and other creditors from enforcing liens on Government property or funds to recoup their losses." Blue Fox, 525 U.S. at 265; Munsey Trust, 332 U.S. at 241 ("nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation"). The surety does not possess the rights or claims of FAS's subcontractors that have not been paid or that are otherwise barred by law. Instead, the surety bore the risk that it was paid to bear when it was paid the premiums for issuing the bonds.

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to RCFC 12(b) or, in the alternative, grant the Government's motion for Summary Judgment pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ JAMES M. KINSELLA
JAMES M. KINSELLA
Deputy Director

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Engineering Field Activity
Chesapeake
Litigation Headquarters
1314 Harwood St., S.E.
Washington, D.C. 20374
Tele: (202) 685-2136

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

May 27, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 27, 2005, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK

# APPENDIX

# INDEX TO APPENDIX


| Document | Page |
|---|---|
| Contract No. N62467-01-C-3215 | 1 |
| Commercial Casualty Power of Attorney | 4 |
| Payment Bond | 5 |
| Performance Bond | 7 |
| Letter to Marsha Tyson from Donald H. Gibbs, dated January 10, 2002 | 9 |
| February 27, 2002 Contract Modification No. 1 | 10 |
| June 14, 2002 Contract Modification No. 2 | 12 |
| Letter to Vanessa Sutton from Marsha Tyson, dated July 31, 2002 | 13 |
| Letter to Marsha Tyson from Alfred A. Malena, Jr., dated August 2, 2002 | 16 |
| August 19, 2002 Contract Modification No. 3 | 19 |
| FAS Final Invoice, Request for Payment, and Release, dated September 10, 2002 | 21 |
| Letter to Cathy Horan from Alfred A. Malena, Jr., dated September 16, 2002 | 24 |
| Letter to Rogers Electric from FAS, dated August 6, 2002 | 26 |
| Invoices from Rogers Electric | 27 |
| Invoices from FCX Systems, Inc | 31 |
| Facsimile from Hatmaker and Associates | 33 |
| Letter to Commercial Casualty from Ken F. Webb, dated October 16, 2003 | 35 |
| Letter to John D. Alexander from Robin M. Barwick, dated November 19, 2003 | 36 |
| Letter to Ken F. Webb from John D. Alexander, dated December 8, 2003 | 38 |
| Cancelled Check from Hatmaker and Associates to FCX Systems, Inc | 40 |