No. 03-2033C
(Judge Firestone)

---

IN THE UNITED STATE COURT OF FEDERAL CLAIMS

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

DeWitte Thompson
Attorney for Plaintiff

THOMPSON, SLAGLE & HANNAN, LLC
12000 Findley Road
Suite 250
Duluth, Georgia 30097
Telephone (770) 662-5999
Facsimile (770) 447-6063

June 24, 2005

---

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………........ii

Plaintiff's Response to Defendant's Motion to Dismiss, or,

In the Alternative, for Summary Judgment……………………………………………1

I. Questions Presented……………………………………………………………....1

II. Statement of Facts……………………………………………………………......2

III. Argument and Citation to Authorities……………………………………………...…4

A. As This Court Has Jurisdiction Over this Matter, The Navy's Motion to Dismiss Must Fail…………………...……………………..…..4

B. The Navy's Circular Arguments Regarding Jurisdiction Have Been Previously Rejected By The Courts……………………..……5

C. The Navy's Motion for Summary Judgment Must Likewise Fail, as the Navy has Not Put Most of the Evidence It Relies Upon In The Record……………………………………………..6

D. The Navy Cannot Meet The High Standards Necessary For Summary Judgment……………………………………………………7

E. The Navy's Description Of The Relationship Of The Government, Surety And Contractor Is In Error…………………………8

F. The Navy Is A Mere Stakeholder Without Any Valid Interest In The Funds It Holds…………………………………………………..9

G. As The Navy Is A Mere Stakeholder, Precedent Holds That It Should Interplead The Funds For A Resolution Of Any Competing Claims……………………………………………13

H. As The Navy Has No Ownership Interest In The Contract Funds, There Is No Issue Of Sovereign Immunity In This Case………...13

I. Commercial Casualty Acted Properly With Regard To Claimants On The Payment Bond……………………………………..14

J. The Navy's General Arguments Regarding The Supposed Weakening Of The Doctrine Of Subrogation Are Misplaced…………...16

## TABLE OF AUTHORITIES

I. CASES

Balboa v. United States,
775 F.2d at 1160……………..…………………………………………….. 5, 8, 9, 10

Carchia v. United States,
485 F.2d 622, 202 Ct.Cl. 723 (1973)…………………………………………...8

Celotex Corp. v. Catrett,
477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986)…………………………………6

H.F. Allen Orchards v. United States,
749 F.2d 1571, 1574 (Fed.Cir. 1984), cert. denied, 474 U.S. 818, 106
S.Ct. 64, 88 L.Ed. 2d 52 (1985)………………...……………………………....7

Henningsen v. United States Fidelity & Guaranty Co.,
208 U.S. 404, 28 S.Ct. 389 (1908)……………………………………………13

Henke v. United States,
60 F.3d 795, 797 (Fed. Cir. 1995)……………………………………………4

Imperial Van Lines Intl. Inc. v. United States,
821 F.2d 634, 637 (Fed. Cir. 1987)…………………………………………..7

Insurance Co. of the West v. Unites Sates,
243 F.3d 1367, 1370…………………………………………………..8, 17

J&E Salvage Company v. The United States,
37 Fed. Cl. 256, 260 (1997)…………………………………………………4

Janowsky v. U.S.,
31 Fed.Cl. 520, 521 (1994)………………………………………………..4

Jay v. Sec'y DHHS,
998 F.2d 979, 982 (Fed. Cir. 1993)…………………………………………..7

Litchfield-Massaro, Inc. v. United States,
17 Cl.Ct. 67, 70 (1989)………………………………………………………7

Litton Indus. Prods. Inc. v. Solid State Sys. Corp.,
755 F.2d 158, 163 (Fed.Cir. 1985)…………………………………………...7

Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co.,
341 U.S. 246, 259, 71 S.Ct. 692, 699, 95 L.Ed. 912 (1951)……………………….5

Newark Insurance Co. v. United States,
169 F. Supp. 955, 957 (1959)…………………………………………….10, 13

Pearlman v. Reliance Ins. Co.,
371 U.S. 132, 83 S.Ct. 232 (1962)…………………………………...13, 16

Prarie State Bank v. United States,
164 U.S. 227, 17 S.Ct. 142 (1896)……………………………………….…13

Thomas Creek Lumber and Log Co. v. United States,
36 Fed.Cl. 220, 234 (1996)…………………………………………….…7

Thomas Creek Lumber and Log Co. v. United States,
36 Fed.Cl. 220, 234, note 13 (1996)……………………………………………7

Transamerica Premier Ins. Co. v. U.S.,
32 Fed.Cl. 308, (1994)……………………………………………………...17

Uniq Computer Corp. v. United States,
20 Cl.Ct. 222, 228-29 (1990)…………………………………………………...7

United States Fid. & Guar. Co. v. United States,
475 F.2d 1377,1383 (1973)…………………………………………..…13, 16

United States v. Blue Fox, Inc.,
525 U.S. 255, 119 S.Ct. 687 (1999)……………………………………….13, 14

W.R. Cooper General Contractor, Inc. v. United States,
F. 2d 1362, 1364 (Fed. Cir. 1988)……………………………………………4

II. STATUTES AND REGULATIONS

Miller Act, 40 U.S.C.A. 270…………………………………………………8

Rule 56 of the Court of Federal Claims…………………………………...7

Rule 56 of the Federal Rules of Civil Procedure…………………………….7

RCFC 12(b)(1)……………………………………………………………….4

**IN THE UNITED STATES COURT
OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION<br>FILE NO. 03-2033C<br>(Judge Firestone) |
| UNITED STATES GOVERNMENT, DEPARTMENT OF THE NAVY, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

COMES NOW, Commercial Casualty Insurance Company of Georgia ("Commercial Casualty") and files this, its Response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, and states as follows:

I.

QUESTIONS PRESENTED

Commercial Casualty disagrees with Defendant's assertion of portions of the "Questions Presented" section contained in its brief. Commercial Casualty would add an additional issue as follows:

3. Whether the Department of the Navy has any direct interest in the contract funds it holds, given that the project was completed and the Navy simply has refused to pay the funds to any party?

II.

STATEMENT OF FACTS

F.A.S. Development Company, Inc., (hereinafter "FAS") a construction contractor, entered into a contract ("Contract") with the United States Department of the Navy ("Navy" or "Defendant") to perform a construction project known as "Naval Air Station, Atlanta, Marietta, Georgia, Replace 400 HZ Converter", contract number N62467-01-C-3215 ("Project"). See Def. App. 1-3. Commercial Casualty Complaint ¶ 4. Commercial Casualty, as Surety, issued contract payment and performance bonds in connection with the Project, identified by Bond number PPB4618230 (the "Bonds"). A true and accurate copy of the Bonds are attached to Commercial Casualty's Complaint as Exhibit "A," and are incorporated herein by reference.

All work on the Project has been completed by F.A.S. Development Company, Inc. ("FAS") under its Contract with the Navy. See Paragraph 4 of Defendant's Proposed Findings of Uncontroverted Fact. On January 10, 2002, Commercial Casualty notified the Navy of outstanding claims by "subcontractors and vendors on projects bonded by surety, making it imperative that the funds on the captioned job [Project] be properly directed and/or used in the process by the surety in obtaining equitable subrogation." See Def. App. 9.

The remaining Contract funds being held by the Navy on the Contract are $52,625.00. See Def. App. 10-11. At the time that FAS completed its Contract with the Navy and fully performed its obligations under the Contract for the Project, the Navy had not paid out the full amount of the contract price on the Project. See Paragraph 7 of Defendant's Proposed Findings of Uncontroverted Fact.

Commercial Casualty has notified the Navy that it had received claims for payment from FAS's subcontractors on the Project. See Def. App. 24-25. In fact, Commercial Casualty has paid payment bond claims on behalf of its principal FAS on the above-referenced Bond. See Def. App. 33-34. FAS executed and delivered to Plaintiff a General Agreement of Indemnity ("Indemnity Agreement") prior to issuing the Bond to FAS. Indemnity Agreement attached to Commercial Casualty's Complaint as Exhibit "B" and incorporated herein by reference.

Commercial Casualty has made demand on Navy for the remaining Contract balance. See Def. App. 16-18. Commercial Casualty is an assignee of FAS's rights to payment pursuant to a provision of an Indemnity Agreement executed by FAS prior to issuance of the Bonds. A copy of the Indemnity Agreement is attached to Commercial Casualty's Complaint as Exhibit "B."

By letter dated October 25, 2002, a true and correct copy of which is attached to the Complaint as Exhibit C, and through numerous other communications, Commercial Casualty demanded payment of the remaining Contract funds and provided Navy a hold harmless agreement ("Hold Harmless Agreement," attached to Complaint as Exhibit "D").

Beyond the Indemnity Agreement referenced supra, FAS has also agreed to have the final payment from this Contract made to Commercial Casualty ("Assignment"). (See Assignment, attached to Complaint as Exhibit "E" and incorporated herein by reference.). Despite Commercial Casualty's providing the Hold Harmless Agreement and FAS's Assignment, the Navy has refused to make the final Contract payment to

Commercial Casualty. See Paragraph 7 of Defendant's Proposed Findings of Uncontroverted Fact.

On March 5, 2004, FAS was administratively dissolved by and through the United States Bankruptcy Court for the Northern District of Georgia, under Chapter 7 of the United States Bankruptcy Code, case no. 03-95373-jb.

## III.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. As This Court Has Jurisdiction Over this Matter, The Navy's Motion to Dismiss Must Fail.

This case is before the Court on the Navy's Motion to Dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) (as well as a motion for summary judgment). When evaluating a Motion to Dismiss pursuant to RCFC 12(b)(1), the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in Plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995), J&E Salvage Company v. The United States, 37 Fed. Cl. 256, 260 (1997). If the facts demonstrate any means by which the non-moving party might prevail, the Court must deny the motion. W.R. Cooper General Contractor, Inc. v. United States, F. 2d 1362, 1364 (Fed. Cir. 1988). Further, "where Defendant disputes merits-type issues in Motion to Dismiss for lack of jurisdiction, [the] Court of Federal Claims should assume jurisdiction and proceed on the merits." Janowsky v. U.S., 31 Fed.Cl. 520, 521 (1994).

B. The Navy's Circular Arguments Regarding Jurisdiction Have Been Previously Rejected By The Courts.

In its motion, the Navy argues that this Court lacks jurisdiction over this matter due to the contention that it will be impossible for Commercial Casualty to prove its substantive claims on the merits. This type of circular reasoning is absurd on its face, and has been rejected by the courts in the past. As the Court of Appeals for the Federal Circuit stated in Balboa v. United States, 775 F.2d 1158, 1163, Note 3:

> "[i]t is apparent with its jurisdiction arguments the Government is attempting to bootstrap its position by asserting that the "correct" result on the merits (in this case, denial of recovery to Balboa [the claiming surety]) precludes this court's jurisdiction. From there it is an easy step for the Government to claim that because this court lacks jurisdiction, it should not even address the merits of Balboa's claims. **To adopt such circular reasoning would be tantamount to holding that *whenever* a surety could not recover on a claim against the Government, the court that so held lacked jurisdiction to make such a determination.** It is possible that the Government is confusing failure to state a cause of action with lack of jurisdiction, *see* Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 259, 71 S.Ct. 692, 699, 95 L.Ed. 912 (1951), but if it does intend to assert that defense, we disagree with that contention as well." [Emphasis added].

Acceptance of the Navy's contention that jurisdiction would vanish upon inquiry into the facts means that this Court could never have jurisdiction over cases involving claims by sureties. In order to determine whether a surety's asserted claim involved payments to

payment bond claimants only, as opposed to performance bond payments, which is alleged by the Navy to be the key distinction in this case, this Court must have jurisdiction before making such inquiry. Such circular logic is dizzying, and must be rejected by this Court. There is no question that this Court has jurisdiction over this action by a Miller Act surety against the Navy for earned but unpaid contract funds held by the Navy.

C. The Navy's Motion For Summary Judgment Must Likewise Be Denied, As The Navy Has Failed To Enter Most Of The Evidence It Relies Upon In The Record.

When moving for summary judgment, the moving party, "in order to prevail, will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists". Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). In other words, the moving party must point to evidence in the record that supports its contentions. Here, the Navy has submitted an appendix of documents that are unsupported by any affidavit, deposition or other sworn testimony that would make the evidence of record. As a result, the vast majority of the evidence cited by the Navy cannot be relied upon by the Court in assessing whether this case is appropriate for summary judgment. For this reason alone, the Navy's motion should be denied.

D. The Navy Cannot Meet The High Standards Necessary For Summary Judgment.

The standards for summary judgment in this Court are patterned after those of Rule 56 of the Federal Rules of Civil Procedure.[1] Rule 56(c) of the Rules of Court of Federal Claims ("RCFC") requires that "in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact ant that the moving party is entitled to judgment as a matter of law". Thomas Creek Lumber and Log Co. v. United States, 36 Fed.Cl. 220, 234 (1996), *citations omitted*. "Summary judgment, however, will not be granted if 'the dispute about a material fact is genuine, that is, if the evidence us such that a reasonable jury [trier of fact] could return a verdict for the non-moving party". Id., *see also* Uniq Computer Corp. v. United States, 20 Cl.Ct. 222, 228-29 (1990). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. Id., *citing* Litton Indus. Prods. Inc. v. Solid State Sys. Corp., 755 F.2d 158, 163 (Fed.Cir. 1985); H.F. Allen Orchards v. United States, 749 F.2d 1571, 1574 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed. 2d 52 (1985).

[1] "In general, the rules of this court [the Court of Federal Claims] are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this Court, including Rule 56. Thomas Creek Lumber and Log Co. v. United States, 36 Fed.Cl. 220, 234, note 13 (1996); *citing* Jay v. Sec'y DHHS, 998 F.2d 979, 982 (Fed. Cir. 1993); Imperial Van Lines Intl. Inc. v. United States, 821 F.2d 634, 637 (Fed. Cir. 1987); Litchfield-Massaro, Inc. v. United States, 17 Cl.Ct. 67, 70 (1989).

E. The Navy's Description Of The Relationship Of The Government, Surety And Contractor Is In Error.

Through the Miller Act, 40 U.S.C.A. 270, Congress has created a tripartite relationship wherein every construction contract involving the Federal Government (exceeding a small minimum dollar value) requires the issuance of performance and payment bonds by a surety. The Navy, in its brief, tangentially argues that no privity of contract exists between the Government and a surety. Despite the Navy's allusions to the contrary, this court stated in Balboa that: "[d]ecisions of our predecessor court and the Supreme Court make clear that a surety is *not* in the same position as that of a contractor or materialman … a suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee". See Balboa, 775 F.2d at 1160. "Both the obligor-principal (the prime contractor) and the surety are liable to the obligee (here, the Government), and no suretyship *exists* in the absence of any of the three parties. In contrast to a subcontractor, which has no obligations running directly to or from the Government … (and therefore possesses no enforceable rights against the United States), a surety, as bondholder, is as much a party to the Government contract as the contractor. If the surety fails to perform, the Government can sue it on the bonds. Id., *E.g.* Carchia v. United States, 485 F.2d 622, 202 Ct.Cl. 723 (1973). See also Insurance Company of the West v. United States, 243 F.3d 1367, 1370. To claim, as the Navy does, that no independent rights whatsoever flow from the tripartite relationship that would allow the surety to pursue payment from

the bond obligee, here the Navy, when the work has been performed but has not been paid for, strains credulity.

F. The Navy Is A Mere Stakeholder Without Any Valid Interest In The Funds It Holds.

The Navy, through confusion or misdirection, bases its arguments upon the contention that it has a direct interest in the contract funds it holds. Those funds were fully earned by contractor FAS, as the Navy **admits that the contract was fully performed**. In "Defendant's Proposed Findings of Uncontroverted Fact" filed contemporaneously with its Motion, the Navy states: "FAS completed its work upon the contract on or about July 24, 2002. Defendant's Appendix 20; Complaint ¶ 7". Commercial Casualty fully agrees that the contract work was completed. As a result, the case at bar can be specifically distinguished from the key cases relied upon by the Navy, where the funds in question were those that had been subject to a stop payment notice by the surety, and were paid out by the Government despite that stop payment notice. Under such a scenario, the Government would be faced with the possibility of paying twice, once to the contractor (presumably in error) and again to the surety. **In the instant case, the Navy has never paid the contract funds at all.** Instead, it has reaped the benefit of the work performed by FAS, but it has not paid for that work. As a result, the Navy is merely a stakeholder, in possession of funds that by any measure of equity it must pay to some other party.

There can be no question that the Navy is considered a mere stakeholder under the applicable case law. While Balboa partially involved funds in controversy that the

Government paid the contractor instead of the surety, it also involved funds that were held by the Government after the surety's stop payment demand. The Balboa court stated: "[w]e agree with the conclusion of the Court of Claims that, upon notification of the surety of the unsatisfied claims of the materialmen, the Government became a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of the default." Balboa, 775 F.2d at 1162. That is exactly the situation faced by the Navy here: Commercial Casualty demanded the payments be held, and the Navy holds those contract funds to this day. Balboa goes on to state: "Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution to the question[2], the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle." Balboa, 775 F.2d at 1162, quoting Newark Insurance Co. v. United States, 169 F. Supp. 955, 957 (1959). The Balboa court concludes "…[w]e are satisfied that the United States becomes a stakeholder with a duty of acting with reasoned discretion when a Miller Act Surety alleges that the contractor has breached the contract by defaulting under the bonds." Id. In the instant case, the Navy at least had the good sense not to pay FAS. It chooses to exercise its "reasoned

[2] Commercial Casualty did attempt to resolve its rights concerning FAS through an indemnity lawsuit, which was stayed by a bankruptcy filing, and ultimately the discharge and dissolution of FAS in bankruptcy.

discretion", however, by attempting to keep funds which should only fairly be paid to others.

The Navy argues that, based on a variety of irrelevant factors, that party that should be paid is not the surety, Commercial Casualty. However, nowhere in its brief, or anywhere in this case, does the Navy suggest what it will do with the funds it holds but no longer "owns". The Navy cannot pay FAS, as it is a corporate entity that has been dissolved in bankruptcy. The Navy does not state that it will voluntarily pay FCX or Rogers Electric, the two subcontractor claimants that it states were not fully paid. (Given the Government's insulation from subcontractors under the appropriate statutes and case law, such payment is highly unlikely.) The Government will not pay Commercial Casualty for the amount it admits Commercial Casualty paid FCX.[3] Instead, without acknowledging the inevitable result of its arguments, the Navy would continue to hold the funds indefinitely, or have them revert back to it at some point. If that were to occur, the Navy would effectively have received the benefit of the contract work without ever having paid for it. Such a result is the least equitable outcome possible in this situation. The Navy should, instead, follow the course designated in each of the cases that concern the current situation: interplead the funds. (Discussed below.) Interpleading the funds

---

[3] The Navy's statement of facts reads: "On July 31, 2003, Commercial Casualty sent a payment to Hatmaker and Associates, a debt collection agency hired by FCX Systems, in the amount of $25,644.00 for the labor and materials that FCX Systems provided upon the contract. Defendants Appendix 33-34. … The payment made by Commercial Casualty to FCX Systems was made pursuant to the payment bond issued by Commercial Casualty. Complaint ¶ 8.

would allow each of the parties that might have some claim upon them to make their case, whether it be Commercial Casualty, FAS, FCX, Rogers Electric or any other. In that event, the only party that is currently contesting Commercial Casualty's right to the funds, the Navy, which has absolutely no proper current interest in the funds whatsoever, would be relieved of the burden of holding the funds and the opportunity to keep them inequitably.

The Navy makes a wholly unsupported, and in fact incredible argument, on page 10 of its Brief. The Navy argues that "[p]ermitting recourse by the surety against the Government, where the surety neither takes over nor finances completion of contract performance, converts the government into an insurer for the surety against losses precipitated by the contractor with whom the surety entered into a contract." This argument, as shown above, ignores the fact that the Navy is holding funds that have been earned by the contractor and do not belong to the Navy. Perhaps this argument would make some sense if the Navy was in the position of having to pay twice (as in "wrongful payment" scenarios), but that is not the circumstance in this case. The Navy cannot be an insurer when the funds that are at issue in fact belong to a third party, and not the Navy. The Navy goes on to argue "[b]ased upon the superior knowledge and position of the surety, shifting the obligation to the surety to resolve such matters is neither unfair nor unreasonable". Given that the facts of this case show that the funds at issue were earned through full contract performance, do not belong to the Navy, and would revert to the Navy for an unearned windfall, such a shifting of obligation in this case would be both unfair and unreasonable.

G. As The Navy Is A Mere Stakeholder, Precedent Holds That It Should Interplead The Funds For A Resolution Of Any Competing Claims.

As shown above, the Navy has no direct right to keep the funds it holds. The contract work was fully performed, by the Navy's own admission, and the Navy puts forth tenuous potential claims from third parties that may conflict with Commercial Casualty's claims on the contract funds. "This court has recommended before that when the government is a stakeholder it should resort to the interpleader procedure". United States Fid. & Guar. Co. v. United States, 475 F.2d 1377, 1383 (1973), *citing* Newark Ins. Co. v. United States, 169 F.Supp. 955, 957, 144 Ct.Cl. 655, 658 (1959). Commercial Casualty asserts that the Navy should be relieved of the burden of holding the contract funds, and requests that the Court direct that the funds should be interplead for resolution of any competing claims.

H. As The Navy Has No Ownership Interest In The Contract Funds, There Is No Issue Of Sovereign Immunity In This Case.

Further, the Navy relies on United States v. Blue Fox, Inc., 525 U.S. 255, 119 S.Ct. 687 (1999), in arguing that a surety cannot maintain a claim against the Government due to sovereign immunity. However, the Supreme Court specifically distinguishes those cases that develop a surety's right of equitable subrogation, (specifically Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142 (1896); Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389 (1908); and Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232 (1962)), by stating that "… these cases dealt with disputes between private parties over priority to funds which had

been transferred out of the Treasury and as to which the Government had disclaimed any ownership". Blue Fox, 525 U.S. at 265. Here, the Navy has made no claim of ownership to the funds it holds. Instead, it attempts to advance the arguments of other potential claimants to the funds, such as FAS, FCX and Rogers Electric. Under the clear language of Blue Fox, there is no sovereign immunity issue where the Navy has no ownership interest remaining in the contract funds. As a result, there is no issue of sovereign immunity in this case.

## I. Commercial Casualty Acted Properly With Regard To Claimants On The Payment Bond.

Within its brief, the Navy attempts to disguise the facts of this case. The Navy attempts to argue that Commercial Casualty has not fully paid out each claim made on the Bond. The Navy has misstated the facts in an effort to falsely show that Commercial Casualty has not fully paid certain claims made on the Payment Bond.

Regarding the claim of Rogers Electric, the Navy completely misstates the contents of a letter dated September 16, 2002 from counsel of Commercial Casualty to the Navy. See Def. App. 24-25. The Navy, within its brief, states that Commercial Casualty informed the Navy that Rogers Electric was "owed payment". This is completely incorrect and an obvious attempt by the Navy to twist the facts in its favor. Within the letter dated September 16, 2002 Commercial Casualty informed the Navy of the claims made on FAS by various subcontractors of FAS. See Def. App. 24-25. This letter in no way stated or can it be implied that this letter stated that Rogers Electric should be paid. The Navy also attempts to show that repeated efforts were made by

Rogers Electric to pursue Commercial Casualty to pay the claim of Rogers Electric. Based upon applicable law Commercial Casualty denied the claim of Rogers Electric. See Def. App. 38-39. The Navy is in no position to state the efforts made by Rogers Electric to prove its entitlement to payment under the Bond. In fact, The Navy has no right to dispute the action(s) taken by Commercial Casualty to deny the claim of Rogers Electric and therefore this is not the proper forum for such a dispute to be raised. Commercial Casualty cannot be required to pay a claim that is legally deficient and certainly its decision to do so cannot be used against it.

Regarding the claim of FCX Systems ("FCX"), Commercial Casualty fully paid this claim. The Navy again attempts to mold the facts in an effort to present them in a more favorable light for itself. It has already been established that FCX made a claim against the Bond in the amount of $25,644.00. Commercial Casualty paid FCX the full amount of its claim, $25,644.00. See Def. App. 33-34. Commercial Casualty cannot be held accountable for FCX's decision to use Hatmaker and Associates to make its claim on the Bond. Commercial Casualty does not have control over a payment bond claimant's rights and methods used to submit a claim under an issued bond. However, it should be noted that many bond claimants obtain counsel to present their claims against a surety. In fact, Hatmaker and Associates stated that the check it received from Commercial Casualty was "**payment of the debt**" owed FCX Systems for product supplied to FAS. See Def. App. 33. This clearly shows that FCX was paid in full. The facts clearly show that Commercial Casualty paid all valid claims on the payment bond.

J. The Navy's General Arguments Regarding The Supposed Weakening Of The Doctrine Of Subrogation Are Misplaced.

The Navy attempts to show that Commercial Casualty may not claim a right to equitable subrogation. As the Supreme Court of the United States has held, "[t]he right of subrogation is not founded on contract; it is a creature of equity, is enforced solely for purpose of accomplishing ends of substantial justice, and is independent of any contractual relations between parties." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). Pearlman went on to state that a "[s]urety paying debt of another is, by doctrine generally known as "subrogation," entitled to all rights of person paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962).

In fact, a "surety, by asserting the right of subrogation, could protect itself by resort to the same securities and same remedies which had been available to the United States for its protection against the contractor." United States Fidelity & Guar. Co., 201 Ct. Cl. 1, 475 F.2d 1377 (1973). Pearlman, when deciding on payment of certain retained contract funds, went on to state that "the Government has a right to use the retained fund to pay laborers and materialmen. Laborers and materialmen on a government project have a right to be paid out of the fund. A contractor, had he completed his job and paid his laborers and materialmen, would become entitled to the fund. A surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). Thus, by subrogation the surety obtained superior rights to the retained funds.

This very court has held that a "surety to government contract can establish right of subrogation in either of two ways: by completing contract pursuant to its obligation under performance bond, or by paying off materialmen's claims brought under payment bond." Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). In the case at bar, it has clearly been established that Commercial Casualty has paid materialmen's claims brought under the Bond. Transamerica went on to state that a "Surety to government contract that has paid out materialmen's claims can come directly against government as holder of retained contract funds." Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). As Commercial Casualty has paid out materialmen's claims, it can come directly against the Navy as a holder of the retained funds.

Ultimately, the Navy vastly misreads and oversimplifies the reasoning of Insurance Company of the West v. United States, 243 F.3d 1367 (2001). Once again, the Navy is a mere stakeholder in this case, and has no direct claim upon the funds. Insurance Company of the West involved a factual scenario where the government had wrongfully paid funds to the contractor after a stop payment notice from the surety. As a result, that case can be easily distinguished from this case, where the Navy is simply holding earned but not paid contract funds. In fact, the only real application of equitable subrogation in this case would be in weighing whether the surety or other claimants had superior rights to the funds. This case simply does not directly involve the issues of sovereign immunity discussed in detail in Insurance Company of the West.

IV.

CONCLUSION

Upon close examination, the Navy's contentions simply do not apply to the facts of this case. The Navy's argument that this Court cannot have jurisdiction over claims by a surety simply fails. Further, the Navy's arguments regarding subrogation and sovereign immunity are undercut by the simple fact that the Navy has no claim of its own to the money it is holding. This one genuine issue of material fact precludes summary judgment for the Navy. Commercial Casualty respectfully requests that this Court deny the Navy's motion, and direct the Navy to deposit the contract funds it is holding in an interpleader proceeding.

This 24th day of June, 2005.

Respectfully submitted,

THOMPSON & SLAGLE, P.C.

s/DeWitte Thompson
DeWitte Thompson
Georgia Bar No. 707688

12000 Findley Road
Suite 250
Duluth, Georgia 30097

(770) 662-5999
(770) 447-6063 Facsimile
dthompson@thompsonandslagle.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that I have this day filed the within and foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT electronically and by U.S. Mail with adequate postage affixed to ensure delivery, to the following:

Kelly B. Blank
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classified Unit, 8th Floor
1100 L St., NW
Washington, DC 20530

This 24th day of June, 2005.

THOMPSON, SLAGLE & HANNAN, LLC

s/DeWitte Thompson
DeWitte Thompson
Georgia Bar No. 707688

12000 Findley Road
Suite 250
Duluth, Georgia 30097

(770) 662-5999
(770) 447-6063 Facsimile
dthompson@thompsonandslagle.com

Attorney for Plaintiff

Dated: June 24, 2004