No. 03-2033C
(Judge Firestone)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COMMERCIAL CASUALTY INSURANCE CO. OF GEORGIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of counsel:
PAMELA J. NESTELL
Trial Attorney
Engineering Field Activity
Chesapeake
Litigation Headquarters
1314 Harwood St., S.E.
Washington, D.C. 20374
Tele: (202) 685-2136

July 15, 2005

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT .......... 1

ARGUMENT .......... 2

I. Plaintiff, Who Neither Paid To Complete Contract Performance, Nor Took Over Contract Performance Is Not Equitably Subrogated To The Rights Of The Contractor, For Which Reason Its Complaint Fails To State A Claim Upon Which Relief Can Be Granted .......... 2

II. Commercial Casualty, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation Because It Failed To Honor Its Payment Bond And Fully Pay The Subcontractors Upon This Contract .......... 10

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Admiralty Construction, Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) .......... 4, 6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 10

Argonaut Insurance Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) .......... 12

Balboa Insurance Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) .......... 3, 4, 5

Casa de Cambio Comdiv S.A., de C.V. v. United States,
291 F.3d 1356 (Fed. Cir. 2002) .......... 3

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 10

Department of the Army v. Blue Fox,
525 U.S. 255 (1999) .......... 5, 7, 8

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) .......... 5, 6

Henningsen v. United States Fidelity & Guar. Co.,
208 U.S. 404 (1908) .......... 5, 8

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) .......... 3

Munsey Trust Co. v. United States,
332 U.S. 234 (1947) .......... 5, 6, 7

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) .......... 5, 7, 8

Prairie State Bank v. United States,
164 U.S. 227 (1896) .......... 5, 7, 8

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) ........................................ 4

Sweats Fashion, Inc. v. Panhill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) ........................................ 10

Transamerica Insurance Co. v. United States,
989 F.2d 1188 (Fed. Cir. 1993) ........................................ 6, 7

Transamerica Premier Insurance Co. v. United States,
32 Fed. Cl. 308 (1994) ........................................ 3, 4

United States Fidelity & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) ........................................ 11

United States v. Testan,
424 U.S. 392 (1976) ........................................ 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2033C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In our May 27, 2005 motion to dismiss or, in the alternative, motion for summary judgment, we established that plaintiff failed to state a claim upon which relief could be granted because a surety is not equitably subrogated to the rights of a contractor where its claim is based solely upon its payment bond, or, in other words, the rights of subcontractors and suppliers. In the alternative, we established that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law because the surety failed to fully pay the subcontractors upon the contract at issue.

In response to our motion, plaintiff, Commercial Casualty Insurance Company of Georgia ("Commercial Casualty" or "surety"), argues that its complaint should not be dismissed because, among other reasons, the Government is a mere stakeholder, lacking any direct interest in the contract funds at issue and, therefore, may not assert its sovereign immunity in this action. Pl. Br. at 9, 13-14.[1]

---

[1] "Pl. Br. at __" refers by page number to plaintiff's response to our motion to dismiss or, in the alternative, for summary judgment, filed on June 24, 2005. "Def. App. ___" refers to a page within the appendix accompanying our moving brief. "Compl. ¶ ___" refers to a paragraph

As set forth below, the Court should reject Commercial Casualty's arguments and dismiss its complaint because none of its arguments establish that it is equitably subrogated to the rights of a contractor in privity with the Government.

## ARGUMENT

### I. Plaintiff, Who Neither Paid To Complete Contract Performance, Nor Took Over Contract Performance Is Not Equitably Subrogated To The Rights Of The Contractor, For Which Reason Its Complaint Fails to State A Claim Upon Which Relief Can Be Granted

Commercial Casualty contends that it is equitably subrogated to the rights of the contractor it bonded. Had the contractor, F.A.S. Development, Inc. ("FAS"), defaulted upon its performance under its contract with the Government, and had Commercial Casualty taken over performance or funded completion of the contract, Commercial Casualty would be correct. In the absence of either of these, however, Commercial Casualty has no legal relationship with the United States sufficient to have a monetary claim against the Government. Thus, under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff's claim should be dismissed for failure to state a claim upon which relief can be granted.[2]

In our motion to dismiss and opening brief, the Government set forth the necessary

---

of the complaint filed on September 2, 2003. "PPFUF ¶ __" refers to a specific paragraph of plaintiff's Proposed Findings of Uncontroverted Fact.

[2] Commercial Casualty confuses the basis upon which we filed our RCFC 12(b)(6) motion to dismiss, stating that "the Navy's contention that jurisdiction would vanish upon inquiry into the facts means that this Court could never have jurisdiction over cases involving claims by sureties." Pl. Br. at 5. This is an inaccurate characterization of our argument. Rather, the Government's position is that, assuming all of the facts alleged in its complaint are true, Commercial Casualty has failed to state a claim upon which relief can be granted because it cannot be equitably subrogated to the rights of a contractor in privity with the Government solely upon a payment bond, as it alleges in its complaint. Compl. ¶ 8.

criteria to establish a surety's right to proceed against the United States under a theory of equitable subrogation. Those criteria were most recently reiterated by the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Insurance Company of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("ICW"). In that decision, the Federal Circuit "specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract." ICW, 243 F.3d at 1370.

In the present case, the contractor completed the contract and, thus, there was no defaulted contract to take over. Further, the surety never paid to complete the work. Therefore, Commercial Casualty cannot acquire the rights of the contractor and pursue its claims against the Government in this Court.

In support of its claim, Commercial Casualty points to, among others, the decision of this Court in Transamerica Premier Insurance Co. v. United States, 32 Fed. Cl. 308 (1994). While that decision was rendered without the benefit of the insight provided by the Federal Circuit's decision in ICW, it is not, in any event, controlling upon this Court, which has the intervening benefit of the guidance provided by ICW. See Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) ("prior decisions of the Court of Federal Claims are not binding . . . on . . . the Court of Federal Claims").

Moreover, in Transamerica Premier, the court based its decision as to the existence of jurisdiction over equitable subrogation claims by a surety upon Balboa Insurance Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985). In concluding that jurisdiction existed in this Court for a payment bond surety, the court, citing Balboa, concluded that "[a] surety's traditional means for

gaining access to this court is through the equitable doctrine of subrogation." Transamerica Premier, 32 Fed. Cl. at 311. The misplaced reliance upon Balboa as a basis for finding jurisdiction was not clear until the Federal Circuit decided Admiralty Construction, Inc. v. Dalton, 156 F.3d 1217 (Fed. Cir. 1998). In that case, the Federal Circuit explained that Balboa merely held that the Government becomes a stakeholder upon notification by the surety of default by the contractor. Admiralty, 156 F.3d at 1221. Thus, any reliance upon Balboa beyond that limited holding appears unfounded. Admittedly, Admiralty does not establish what acts serve to create jurisdiction over a surety's claims based upon equitable subrogation.[3] It does, however, clarify what the Court meant in Balboa, which has often been misapplied. Id. at 1221-22; See Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir. 1990) (explaining the context and restrictions in Balboa). Moreover, in Admiralty, the Federal Circuit stated that "[a] surety is subrogated to the rights of the Government only upon payment or takeover under a performance bond." Admiralty, 156 F.3d at 1222 (emphasis added) (quotation omitted). Thus, despite the apparent support for Commercial Casualty's position afforded by Transamerica Premier, a closer examination of the intervening precedent renders that support hollow.

Indeed, relying upon Balboa, Commercial Casualty alleges that a contractual relationship exists between the surety and the Government. Pl. Br. at 8. Commercial Casualty is incorrect when it characterizes Balboa as holding that privity of contract exists between a surety and the

---

[3] Admiralty considered the question of whether a surety could bring an action before a board of contract appeals. In that case, the surety claimed that because it succeeded to the rights of a contractor based upon equitable subrogation, it was entitled to bring the action before the board. Admiralty, 156 F.3d at 1221-22. In support of that claim, the surety cited Balboa, which contained language that had been improperly read to create a contractual relationship between the surety and the Government. Id.; See Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir. 1990). The Federal Circuit, again, clarified the limited nature of the holding in Balboa. Id.

Government. Rather, in Balboa, the Federal Circuit distinguished privity of contract from the doctrine of equitable subrogation, which may permit a surety in certain circumstances to bring a claim against the Government despite the absence of privity. Balboa, 775 F.2d at 1160-61. The Federal Circuit plainly stated in ICW that, "[a]lthough in Balboa we reserved the question whether there was a contract or privity of contract between the government and a surety . . . we have since held that there is no such relationship." ICW, 243 F.3d at 1370.

Rather, a waiver of sovereign immunity is construed through the equitable doctrine of subrogation. As the Court of Appeals explained in ICW, much of the analysis finding jurisdiction over a surety's equitable subrogation claims was based upon the trilogy of Prairie State Bank v. United States, 164 U.S. 227 (1896); Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404 (1908); and Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962). The Court continued that "after [Dept. of the Army v.] Blue Fox[, 525 U.S. 255 (1999)] we can no longer rely on those three cases to find a waiver of sovereign immunity," in equitable subrogation cases. ICW, 243 F.3d at 1372.

For a surety to state a claim of equitable subrogation in this Court, there must be some legal basis upon which the surety has been subrogated to the rights of the contractor. This is because only the general contractor is in privity with the Government. Munsey Trust Co. v. United States, 332 U.S. 234, 241 (1947). Thus, the surety must undertake some act by which the general contractor's privity is passed through to it by operation of law. See Fireman's Fund Insurance Co. v. England, 313 F.3d 1344, 1352 (Fed. Cir. 2002) (acknowledging that equitable subrogation constitutes an assignment by operation of law). It is only through such conduct that privity exists in some fashion between the Government and the surety. In other words, the surety

is assigned by operation of law the rights and position of the contractor, such that, in effect, the surety stands in the place of the contractor.

For example, in Munsey Trust, the Supreme Court concluded that, where the surety paid subcontractors and suppliers solely under its payment bond, the surety had no cause of action against the United States. Munsey Trust, 332 U.S. at 237. This conclusion follows from the fact that "[o]ne who rests on subrogation stands in the place of one whose claim he has paid." Id. at 242. Therefore, because the surety paid the claims of the subcontractors and suppliers, it was subrogated to those rights, which cannot be enforced against the United States. Id. at 241. Thus, where the claim paid is that of a subcontractor or supplier, subrogation will not vest the surety with rights against the Government which are enforceable in this Court.

This conclusion is consistent with Federal Circuit decisions in such cases. For example, in Fireman's Fund, the court appears to have had no difficulty concluding that jurisdiction existed over a claim by a surety who was a "take over surety." Id. at 1351. The flaw in the surety's claim in Fireman's Fund was not that it failed in its claim of equitable subrogation, but rather that it chose a forum which lacked jurisdiction over such non-Contract Disputes Act claims. Id.; See Admiralty, 156 F.3d at 1221 (distinguishing between board and this Court's jurisdiction over proper equitable subrogation claims).

Further, in Transamerica Insurance Co. v. United States, 989 F.2d 1188, 1194 (Fed. Cir. 1993), the Federal Circuit, as did this Court, found that jurisdiction existed over the equitable subrogation claims of a surety which had paid under its performance bond to complete a project following the default of its bonded contractor. While the Federal Circuit reversed this Court as to the scope of the substantive right, it set forth the "general rule . . . that 'a surety who pays the

debt of another is entitled to all of the rights of the person he paid to enforce his right to be reimbursed.'" Transamerica Ins., 989 F.2d at 1194 (citation omitted). If this is in fact "the general rule," as the Government maintains that it is, then jurisdiction based upon equitable subrogation exists only where the surety has provided a benefit to the Government upon behalf of the bonded contractor, as discussed in both Munsey Trust, and ICW.

Nevertheless, Commercial Casualty alleges that the Government cannot assert sovereign immunity in this case because the Government has no "direct interest in the contract funds it holds," as a stakeholder.[4] Pl. Br. at 9, 13-14. However, waiver of the Government's sovereign immunity concerns only whether the Government has consented to be sued in this Court upon this claim. For the purposes of establishing a waiver of the Government's sovereign immunity, it is irrelevant that the United States is a stakeholder in this matter. Whether the Tucker Act contains a waiver of the Government's sovereign immunity depends solely upon whether the Government is sued by its contractor, or by one who "stand in the shoes" of its contractor. ICW, 243 F.3d at 1375. The question in this case is whether that waiver extends to claims where the surety stands only in the shoes of a subcontractor.

Commercial Casualty contends that Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999), does not aid the Government's argument because the equitable subrogation cases that the Court cited in that opinion – Prairie State Bank, Henningsen, and Pearlman – address situations where the Government transferred the funds in controversy out of the United States

---

[4] Commercial Casualty also implies that FAS can no longer be paid because it has completed a Chapter 7 corporate bankruptcy. PPFUF ¶ 15. However, FAS's debts do still exist, and the bankruptcy estate may be reopened for the benefit of FAS's priority creditors, if funds due to the contractor are available.

Treasury and "disclaimed any ownership" of those funds. Pl. Br. at 13-14. However, it is incorrect to assume that the Government has no "ownership interest" in the contract balance here. Id. Although the Government is a stakeholder in this matter, the funds sought by Commercial Casualty are, in fact, held in the Treasury, and have not been paid over to a private party or deposited in a court. Commercial Casualty here seeks money from the public fisc to compensate it for payments allegedly made to subcontractors and suppliers in satisfaction of the contractor's obligation, which Commercial Casualty assumed upon its payment bond. As such, Commercial Casualty's assertion that the Government possesses no sovereign immunity in this matter is incorrect, and, accordingly, the Government's waiver of its sovereign immunity must be "expressed unequivocally." See United States v. Testan, 424 U.S. 392, 399 (1976).

As we demonstrated in our moving brief, Blue Fox altered the analysis underlying determinations as to waivers of sovereign immunity. In Blue Fox, the Court was confronted not with claims by a surety, but instead those created by an equitable lien. While the two claims are different, the question underlying both is the same: whether the United States has waived sovereign immunity as to such claims. As set forth above, issues of jurisdiction over claims by sureties under a theory of equitable subrogation have been analyzed employing Prairie State Bank, Henningsen, and Pearlman. The Supreme Court's decision in Blue Fox called into question reliance upon these cases for the proposition that jurisdiction exists in this Court for equitable subrogation claims by sureties by plainly stating that, "[n]one of these cases . . . [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity." Blue Fox, 52 U.S. at 265. Thus, jurisdiction can no longer be based solely upon Pearlman, as Commercial Casualty suggests in its brief. Pl. Br. at 16.

As recognized by the Federal Circuit in ICW, these three cases and their progeny no longer provide the basis for finding a waiver of sovereign immunity, which is necessary to bring action in this Court. See ICW, 243 F.3d at 1372. Instead, analysis must once again focus upon the requirement that, as relevant here, the claimant must either be a contractor or one who stands in the shoes of such a contractor. Accordingly, a surety "who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." ICW, 243 F.3d at 1371. If the surety takes over the contract or completes performance of the contract pursuant to its performance bond, so that it assumes the duties of the contractor, then the surety has stated a claim that may be reviewed in this Court. ICW, 243 F.3d at 1370. Absent such a benefit flowing from the surety to the Government, which invests the contractor, and through it the surety, with a right against the Government, the surety has failed to state a claim of equitable subrogation.

As the Federal Circuit recognized in ICW, a waiver of sovereign immunity contained in the Tucker Act extends to a subrogee after stepping into the shoes of a contractor. ICW, 243 F.3d at 1375. The analysis now requires that the subrogee must be assigned by operation of law some right of a party in privity with the Government for jurisdiction to be extant. Such rights can only be obtained by either taking over performance of a contract or effecting such performance by financing completion of the contract. For this reason, the complaint fails to state a claim upon which relief can be granted, which mandates dismissal pursuant to RCFC 12(b)(6).

II. Commercial Casualty, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation Because It Failed To Honor Its Payment Bond And Fully Pay The Subcontractors Upon This Contract

In the event this Court concludes that the surety's complaint states a claim upon which relief can be granted, as a matter of law, the Government is entitled to summary judgment. This conclusion follows from the nature of subrogation and the rights of the surety, which are derived from those it paid.

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where a motion for summary judgment is made, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . . [Rather,] 'the burden on the moving party may be discharged by "showing" - - that is, pointing out to the [Court of Federal Claims] - - that there is an absence of evidence to support the non-moving party's case'." Sweats Fashion, Inc. v. Panhill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Commercial Casualty contends that our motion for summary judgment must be denied because it is "unsupported by any affidavit, deposition or other sworn testimony." Pl. Br. at 6. Commercial's Casualty's contention is incorrect. Pursuant to RCFC 56(b), a defendant "may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor." RCFC 56(b) (emphasis added). Moreover, this Court's rules provide that a summary judgment motion shall be supported by citations to the "opposing party's pleadings or to documentary evidence, such as affidavits or exhibits,

filed with the motion or otherwise part of the record in the case." RCFC 56(h)(1). Indeed, most of the documentary evidence included in the appendix supporting our motion for summary judgment was provided by plaintiff itself in its mandatory initial disclosures, made pursuant to RCFC 26(a)(1). Where the documents themselves support the facts relied upon by both parties, providing an affidavit is neither necessary, nor required by the rules.

As discussed in our moving brief, Commercial Casualty may not claim a right to equitable subrogation where it failed to pay fully the subcontractors upon the contract. United States Fidelity & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377, 1381, 1385 (1973) (surety had no claim to progress payments or retained funds where surety had not paid subcontractors in full). In United States Fidelity & Guar. Co., the Court of Claims denied recovery because the surety did not pay all of the outstanding claims of the laborers and suppliers. United States Fidelity & Guar. Co., 475 F.2d at 1381 ("[u]ntil the surety undertakes to pay all of the outstanding claims owed by [the prime contractor], it will not be permitted to share in retainages still held by the Government").

In this case, Commercial Casualty failed to pay the full amount owed to the two subcontractors upon this contract. In response to undisputed evidence that Rogers Electric has never been paid, Commercial Casualty avers that it has no legal obligation to pay the subcontractor because Rogers Electric allegedly failed to present a timely claim to the surety. Pl. Br. at 15. The facts demonstrate that Commercial Casualty was in possession of Rogers Electric's demand for payment in September 2002. In its September 16, 2002 letter to the Navy, Commercial Casualty stated,

> Commercial Casualty is fully entitled to the release of the contract funds, and they will be used to pay claims by subcontractors and/or suppliers . . . there have been several claims on the NAS project by FAS subcontractors. They include claims by FCX Systems . . . and Rogers Electric of Roswell, Georgia, in the amount of $10,406.50. Copies of demands from each subcontractor are attached hereto.

Def. App. 24. However, Commercial Casualty waited until December 2003 to refuse to pay the amount owed, after the one-year statute of limitations for bringing a cause of action against the surety had expired. Pl. Br. at 14-15; PPFUF ¶ 10; Def. App. 24-25, 38-39.

Commercial Casualty suggests that these facts are irrelevant because the Government may not litigate the subcontractor's claim before this Court. Pl. Br. at 15. However, we present the facts and circumstances of the subcontractor's claim here not to put forth a legal argument, but an equitable one. Commercial Casualty's demand for the contract balance is based upon the equitable doctrine of subrogation, and it requests an equitable remedy in this Court upon its payment bond. Accordingly, an inquiry into the equity of Commercial Casualty's conduct in honoring the payment bond upon which it claims subrogation is entirely fair and proper. See Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362, 1367 (1970) ("the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others").

Likewise, an inquiry into the facts and circumstances surrounding Commercial Casualty's payment to FCX Systems, Inc., is entirely appropriate. Although Commercial

Casualty asserts that it "cannot be held accountable for FCX's decision to use Hatmaker and Associates to make its claim on the Bond," the manner in which the subcontractor was forced to obtain payment from the surety upon its payment bond is relevant where the surety itself seeks an equitable remedy upon that bond. Pl. Br. at 15. It is undisputed that Commercial Casualty only made payment to FCX Systems after the subcontractor hired a debt collection agency. Id. Moreover, Hatmaker and Associates kept 20 percent of the payment owed to FCX Systems as its fee for debt collection. Def. App. 40. Accordingly, FCX Systems only received $20,515.20 of the amount owed to it upon the contract. Id. Thus, FCX Systems has not been fully paid by the surety for the labor and supplies it provided upon the contract. Because neither subcontractor has been fully paid, the surety cannot claim equitable subrogation here.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, defendant respectfully requests that this Court dismiss plaintiff's complaint pursuant to RCFC 12(b) or, in the alternative, grant the Government's motion for summary judgment pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ JAMES M. KINSELLA
JAMES M. KINSELLA
Deputy Director

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Engineering Field Activity
Chesapeake
Litigation Headquarters
1314 Harwood St., S.E.
Washington, D.C. 20374
Tele: (202) 685-2136

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

July 15, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on July 15, 2005, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK