IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | No. 03-2033C |
| v. | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO THE BRIEF OF AMICUS CURIAE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In our May 27, 2005 motion to dismiss or, in the alternative, motion for summary judgment, we established that plaintiff, Commercial Casualty Insurance Company of Georgia ("Commercial Casualty" or "surety"), failed to state a claim upon which relief could be granted because a surety is not equitably subrogated to the rights of a contractor where its claim is based solely upon its payment bond. In the alternative, we established that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law because the surety failed to fully pay the subcontractors upon the contract at issue.

On November 10, 2005, the Surety Association of America ("SAA"), filed an amicus brief in this case. Defendant files the following response and respectfully renews its request that the Court dismiss the complaint, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to state a claim.

ARGUMENT

I. Plaintiff, Who Neither Paid To Complete Contract Performance, Nor Took Over Contract Performance, Is Not Equitably Subrogated To The Rights Of The Contractor, For Which Reason Its Complaint Fails to State A Claim Upon Which Relief Can Be Granted

In our moving and reply briefs, we fully discussed the necessary criteria to establish a surety's right to proceed against the United States under a theory of equitable subrogation. In Insurance Company of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("ICW"), the Federal Circuit "specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract." ICW, 243 F.3d at 1370.

In the present case, the contractor, F.A.S. Development, Inc. ("FAS"), completed the contract, and the surety did not finance completion of the work. However, a surety like Commercial Casualty, "who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment." ICW, 243 F.3d at 1371. This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 322 U.S. 234 (1947), upon which the Federal Circuit relied, and in which the Supreme Court concluded:

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

Munsey Trust, 332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is against the prime contractor, not the Government, because it is only

entitled to assert the rights of the subcontractors and suppliers to whom it is subrogated. See Munsey Trust, 332 U.S. at 242.

SAA contends that the Federal Circuit improperly relied upon Munsey Trust in ICW because the holding of that case is limited solely to defining the Government's right of setoff. SAA Br. at 8-9. SAA is incorrect. In Munsey Trust, the Supreme Court concluded that the Government's right of setoff was enforceable "despite the claims of a surety who has paid laborers and materialmen." Munsey Trust, 332 U.S. at 236. The surety presented a competing demand for payment of the contract funds based solely upon its payment bond. Id. at 239-40. The Court held that the surety had no cause of action against the United States, explaining that "[o]ne who rests on subrogation stands in the place of one whose claim he has paid." Id. at 242. Therefore, because the surety paid the claims of the subcontractors and suppliers, it was subrogated to those rights, which cannot be enforced against the United States. Id. at 241.

Addressing ICW, SAA dismisses the Federal Circuit's statements as dicta, "inconsistent with the actual holding in the case" and precedent, and "contrary to the holding of Pearlman [v. Reliance Insurance Company, 371 U.S. 132 (1962)]." SAA Br. at 8-10. To the extent that SAA suggests that ICW is contrary to Pearlman, its contention is undermined by the fact that the Court in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999), called into question reliance upon Pearlman, an earlier case which did not involve a question of sovereign immunity. Blue Fox, 52 U.S. at 265.[1] The issue in Pearlman was whether the surety could assert rights to

[1] As we fully discussed in our moving and reply briefs, Blue Fox altered the analysis underlying determinations as to waivers of sovereign immunity. In Blue Fox, the Court was confronted not with claims by a surety, but the analogous claim of an unpaid subcontractor pursuing an equitable lien. Although SAA suggests that Blue Fox does not affect the rights of a surety who discharges the claims of subcontractors, SAA Br. at 4-5, the question underlying both

Government-retained contract funds after payment to the subcontractors and completion of contract performance. The Supreme Court stated the general proposition that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman, 371 U.S. at 136-37.

In an en banc decision in United States Fidelity & Guaranty Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973) ("USF&G"), the Court of Claims concluded that there appeared to be tension between the Supreme Court's decisions in Munsey Trust and Pearlman. The Court perceived conflict because Munsey Trust provided that the subcontractors and suppliers had no enforceable rights against the Government. USF&G, 475 F.2d at 1381. At the same time, the Court read Pearlman as holding that the surety was entitled to the benefit of all the rights of the laborers and materialmen whose claim it paid as well as those of the contractor whose debt it paid. Id. at 1382. In attempting to reconcile these decisions, the Court of Claims concluded that the surety, which pays subcontractors, obtains its substantive claim from the subcontractors it paid and its jurisdictional right to sue from the bonded contractor, which was in privity with the Government. Id.

The precedents upon which SAA relies are premised on the continued viability of Pearlman as a waiver of sovereign immunity for the payment bond claims of sureties. If this premise fails, then the decisions employing it as the cornerstone of their analysis fail with it. To the extent that the Claims Court and the Court of Federal Claims decisions employing this

---

claims is the same: whether the United States has waived sovereign immunity as to such claims.

Pearlman analysis have any precedential value, they are of limited value. Thus, the analysis employed to base jurisdiction in surety cases has changed. Jurisdiction can no longer be found based solely upon Pearlman. Blue Fox, 525 U.S. at 265; ICW, 243 F.3d at 1371-72. Instead, jurisdictional determinations must focus upon the bonded contractor and the rights of that contractor to which the surety is subrogated. This conclusion is the complement to the Federal Circuit's conclusion that "a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." ICW, 243 F.3d at 1371; see also Admiralty Constr. Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998) ("to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond").

Nevertheless, SAA further contends that, because the trial court did not apply the Federal Circuit's reasoning in ICW to the case upon remand, the Federal Circuit's line of reasoning should not apply here. SAA Br. at 10. The Court of Federal Claims' opinion in Insurance Company of the West v. United States, 55 Fed. Cl. 529 (2003) ("West III") does not assist SAA. First, the decisions of the Court of Claims and this Court are not binding upon the Court. See Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) ("prior decisions of the Court of Federal Claims are not binding . . . on . . . the Court of Federal Claims"). Second, even if the Court's decision in West III were controlling as to the applicable law, it is clearly distinguishable from this case upon its facts.

Unlike this case, where Commercial Casualty alleges equitable subrogation solely pursuant to its payment bond, in West III the surety financed completion of the contract. West

III, 55 Fed. Cl. at 540. Further, the claim pursued by the surety in West III was for losses it sustained under its performance bond. Id. at 532 n.5. Thus, unlike in this case, the surety in West III was subrogated to the claims of its bonded contractor because it had either taken over contract performance or had financed completion of the defaulted contract. ICW, 243 F.3d at 1370.

Therefore, to the extent West III is persuasive, it appears that, considering the facts of that case, the result supports the Government's position, rather than SAA's. Nevertheless, while the result in West III may support the Government's position in this matter, we respectfully disagree with the analysis employed by the Court and believe that SAA's reliance upon the West III analysis is misplaced.

SAA further suggests that subcontractors possess equities that are superior to any claim by a defaulting contractor and, thus, when a surety pays subcontractors it may enforce the subcontractors' superior equities. SAA Br. at 10-13. SAA's suggestion fails because, since Munsey Trust, subcontractors, and those who stand in the shoes of subcontractors, are not in privity with the United States. To the extent the Government owes the subcontractors an equitable obligation, the Government is released from the obligation when the payment bond surety fully pays the subcontractors. USF&G, 475 F.2d at 1381. Ultimately, the subcontractors have equities in relation to the prime contractor. However, these are not equities that can be enforced against the Government absent an explicit waiver of sovereign immunity. The surety is, of course, always permitted to enforce the subcontractor's equities against the party for whom it paid: the contractor. 40 U.S.C. § 3133(b).

In addition, SAA speculates that Commercial Casualty may possess an alternative basis

for jurisdiction in this case pursuant to 48 C.F.R. § 28.106-7. SAA Br. at 14-15. SAA is incorrect upon the facts and the law. This provision of the Federal Acquisition Regulations ("FAR") provides that, if the Government

> receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties.

48 C.F.R. § 28.106-7(b). SAA asserts incorrectly that Commercial Casualty complied with the requirements of this provision and, thus, is entitled to final payment. SAA Br. at 15. However, Commercial Casualty has no cause of action pursuant to 48 C.F.R. § 28.106-7.

The Government may not authorize release of withheld contract funds, pursuant to FAR 28.106-7, where Commercial Casualty has not agreed to hold defendant harmless from liability resulting from withholding final payment from the contractor, and where there is neither a valid agreement between the contractor and Commercial Casualty, nor a judicial determination of the rights of the parties. The Government did not execute the proposed hold harmless agreement provided by the surety because the agreement did not satisfy the requirements of FAR 28.106-7. Commercial Casualty's proposed hold harmless agreement stated that the purported consideration for the agreement was delivery of the final payment to the surety. Compl., at Exhibit D. However, FAR 28,106-7(b) provides that the consideration upon Commercial Casualty's part is its agreement to hold the Government harmless from liability resulting from withholding final payment from the contractor. 48 C.F.R. § 28.106-7(b).

Moreover, the regulation plainly states that final payment will not be authorized until

there is an "agreement between the contractor and surety or . . . a judicial determination of the rights of the parties." 48 C.F.R. § 28.106-7(b). Commercial Casualty has not obtained a judicial determination respecting the rights of the parties. Rather, Commercial Casualty alleges that FAS "voluntarily" assigned its rights to the surety through a General Agreement of Indemnity and a purported assignment agreement. Compl. ¶¶ 8, 11. However, the contractor's purported assignment of claims to Commercial Casualty is invalid under the Assignment of Claims Act, 41 U.S.C. § 15, because the surety is not a financing institution. Under that Act, as applicable here, generally the voluntary assignment of any claim, except to a financing institution, is prohibited. See Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1350 (Fed. Cir. 2002) ("Fireman's Fund is not a 'financing institution,'" under the Anti-Assignment Act, but instead "an insurance company writing insurance policies that protect against risks"). As the Federal Circuit explained, "[t]he assignment by [the contractor] of 'all of their rights under the contracts' violated the prohibition in 41 U.S.C. § 15(a) against the transfer of 'any interest' in any contract involving the United States." Id. at 1349. Accordingly, Commercial Casualty is not entitled to payment pursuant to 48 C.F.R. § 28.106-7(b).

Finally, SAA contends that the Government's position creates an inequitable situation wherein the Department of the Navy may retain the contract funds, and pay neither the surety, nor the prime contractor, nor the subcontractors. SAA Br. at 15-16. This is not the Government's position in this matter. As a stakeholder, the Government is "caught in the middle between two competing claimants [and] cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them." Newark Insurance Co. v. United States, 144 Ct. Cl. 655, 169 F. Supp. 955, 957 (1959). In such circumstances, one remedy

includes the initiation of an interpleader proceeding in district court by the stakeholder. Id.; see also USF&G, 475 F.2d at 1383.

However, the surety may not resolve the issue by filing a claim against the Government upon its payment bond in this Court. A surety's right to equitable subrogation can only be obtained by either taking over performance of a contract or financing completion of the contract. Because Commercial Casualty's claim is based solely upon its payment bond, the complaint fails to state a claim upon which relief can be granted, which mandates dismissal pursuant to RCFC 12(b)(6).

## II. Commercial Casualty, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation Because It Failed To Honor Its Payment Bond And Fully Pay The Subcontractors Upon This Contract

As discussed in our moving and reply briefs, Commercial Casualty may not claim a right to equitable subrogation where it failed to pay fully the subcontractors upon the contract. USF&G, 475 F.2d at 1381, 1385 (surety had no claim to progress payments or retained funds where surety had not paid subcontractors in full).

In response, SAA alleges that the existence of unpaid contractors is not relevant to the issue of the Court's Tucker Act jurisdiction. SAA Br. at 14. SAA mischaracterizes our argument. We did not suggest that the Court lacks jurisdiction because Commercial Casualty failed to fully pay the subcontractors upon this contract. Rather, we argued that the Government is entitled to summary judgment upon the merits because Commercial Casualty failed to honor its obligations under the payment bond.

In this case, only one subcontractor received a partial payment from the surety. FCX Systems only received $20,515.20 of the amount owed to it upon the contract because the debt

collection agency it retained to obtain a payment from the surety kept 20 percent of the payment owed to FCX Systems as its fee for debt collection. Def. App. 40. Rogers Electric has not received any payment from Commercial Casualty. Def. App. 26, 38-39. Even assuming arguendo that jurisdiction exists to entertain Commercial Casualty's claim upon its payment bond, the existence of unpaid subcontractors defeats the surety's right to recover as a subrogee.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving and reply briefs, defendant respectfully requests that this Court dismiss plaintiff's complaint pursuant to RCFC 12(b) or, in the alternative, grant the Government's motion for summary judgment pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ JAMES M. KINSELLA
JAMES M. KINSELLA
Deputy Director

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Engineering Field Activity
Chesapeake
Litigation Headquarters
1314 Harwood St., S.E.
Washington, D.C. 20374
Tele: (202) 685-2136

December 2, 2005

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 2, 2005, a copy of the foregoing "DEFENDANT'S RESPONSE TO THE BRIEF OF AMICUS CURIAE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK