**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**Case No. 03-2033C**
**(Judge Firestone)**

---

**COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA,**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

**Reply of Amicus Curiae The Surety Association of America to Defendant's Response to the Brief of Amicus Curiae In Opposition to Defendant's Motion to Dismiss or for Summary Judgment**

---

Edward G. Gallagher
Wickwire Gavin, P.C.
8100 Boone Boulevard, 7th Floor
Vienna, VA 22182
Tel: (703) 790-8750
Fax: (703) 448-1801

Attorney of Record for
The Surety Association of America

Pursuant to the Court's Order of October 27, 2005, *amicus curiae* The Surety Association of America ("SAA") files this Reply to the Government's Response to SAA's Brief in Opposition to Defendant's Motion to Dismiss or For Summary Judgment. The Government's Response is based on two misunderstandings. First, that the payment bond surety is not subrogated to the rights of the contractor, and, second, that *Dept. of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed. 2d 718 (1999) overruled decades of precedent allowing sureties to sue the United States under the Tucker Act.

At page two of its Response, the Government argues that subrogation to the rights of the bonded contractor is available to a surety only if the surety either takes over contract performance or finances completion of the work. That is, such subrogation is available to only a performance bond surety. The basis for this argument is the following quotation from *Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) ("*ICW*"):

> We have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract.

(243 F.3d at 1370)

*ICW*, however, involved only a performance bond surety. In the context of that case, performance of the contract, or financing of that performance, was the surety's only obligation. Earlier in the same Section II of its opinion, the *ICW* Court also said:

> The Miller Act requires prime contractors to post performance bonds on all federal construction contracts. *See* 40 U.S.C. § 270a.

(243 F.3d at 1370).

Obviously, the Miller Act requires a payment bond as well as a performance bond. The Court only mentioned the performance bond, but that does not mean that it intended to say that the Act does not also require a payment bond. SAA suggests that the Federal Circuit did not

mention the payment bond requirement of the Miller Act, now codified at 40 U.S.C. § 3131(b)(2), for the same reason it did not mention the subrogation rights a Miller Act payment bond surety acquires upon performance of its obligation. There was no payment bond involved in *ICW*, and the court necessarily was concerned with the obligations and rights of the performance bond surety.

The Government's Response also quotes from *United States v. Munsey Trust Co.*, 322 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), to the effect that subcontractors do not have "enforceable" rights against the United States. In *Munsey Trust*, however, there was no question of sovereign immunity or subrogation to the rights of the contractor. Munsey Trust Company was the receiver for the contractor and could sue in the contractor's name. The issue in *Munsey Trust* was set-off, and in that context subrogation to the rights of the contractor is irrelevant. The Government's right of set-off was superior to the contractor's claim. The issue was whether the surety's subrogation to the rights of the subcontractors changed that result. The Court held that the United States' right to satisfy its claims from the contract funds in its hands was superior to the unenforceable rights of the subcontractors.

In the instant case, however, there is no set-off. The Government does not assert a right to apply the contract funds to pay an unrelated debt F.A.S. Development, Inc. ("FAS") owes the United States. The contract work is completed and the Government owes at least $48,425 to someone.

At page 3-4 of its Response, the Government seeks to dismiss SAA's reliance on *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed. 2d 190 (1962), by noting that *Pearlman* did not involve sovereign immunity. At page four the Government states:

> The precedents upon which SAA relies are premised on the continued validity of *Pearlman* as a waiver of sovereign immunity for payment bond claim sureties.

Prior to the *ICW* decision, the United States argued that *Blue Fox* meant that sovereign immunity barred suits by all sureties unless there was a takeover agreement between the surety and the Government. *ICW* rejected that argument. The first paragraph of the *ICW* opinion states:

> This case requires us to decide whether a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the United States. We hold that the Supreme Court's decision in *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999), did not upset the longstanding rule that such a suit is not barred by the doctrine of sovereign immunity, and that this case is governed by the Supreme Court's earlier decision in *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949).

(243 F.3d at 1369).

The Government presumably concedes that this Court is obligated to follow the holding in *ICW*. The issue, therefore, is not whether the Tucker Act waives sovereign immunity for a subrogee but whether a payment bond surety is subrogated to the rights of the contractor.

SAA cites *Pearlman* as the definitive authority on the scope of the payment bond surety's subrogation rights. *Pearlman* did not involve sovereign immunity, but it squarely held that the payment bond surety was subrogated to the contractor's rights in the contract funds. The Court stated:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

(371 U.S. 141).

In *ICW,* the Court stated, "*Pearlman* stands for the proposition that the subrogee steps into the shoes both of the contractor against the government and the government against the contractor." (243 F.3d 1375 at footnote 3). *Blue Fox* said that *Pearlman* did not involve sovereign immunity or a claim to funds in the Treasury. It did not question *Pearlman*'s statement of the subrogation rights of the payment bond surety.

The Government, therefore, misunderstands SAA's reliance on *Pearlman*. SAA's argument is: (1) *Pearlman* establishes that the payment bond surety is subrogated to the rights of the contractor; (2) *ICW* (and *United States v. Aetna Cas. & Sur. Co.*) establish that the Tucker Act waives sovereign immunity for claims by the contractor's subrogees; and, therefore, (3) the Tucker Act waives sovereign immunity for claims by a payment bond surety.

The Government states that *United States Fidelity and Guaranty Co. v. United States*, 201 Ct.Cl. 1, 475 F.2d 1377 (1973) ("*USF&G*"), "concluded that the surety, which pays subcontractors, obtains its substantive claim from the subcontractors it paid and its jurisdictional right to sue from the bonded contractor, which was in privity with the Government." (Response, at page 4). SAA certainly agrees with that characterization of the Court's holding in *USF&G*.

The Government also states that a Court of Claims decision is not binding on this Court.[1] SAA assumes that this was an inadvertent error. *South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982) ("the holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts before the close of business September 30, 1982, shall be binding as precedent in this court."); *Doe v.*

[1] Response, page 5 in the context, however, of an attempt to distinguish *Insurance Company of the West v. United States*, 55 Fed. Cl. 529 (2003) rather than a Court of Claims decision.

*United States*, 372 F.3d 1347 (Fed. Cir. 2004) ("Court of Claims decisions are, of course, binding upon us unless undermined by intervening Supreme Court or *en banc* authority.").

The Government's argument certainly is that *Blue Fox* and *ICW* undermined the established precedents. SAA addresses that argument in its Brief. For purposes of the primary issue before this Court, the surety's subrogation to the rights of the contractor, it is hard to see how *Pearlman* or *Balboa* could have been undermined when the Federal Circuit in *ICW* explicitly adopted them as controlling authority, "We believe that *Balboa* correctly states the law of equitable subrogation. *Pearlman* stands for the proposition that the subrogee steps into the shoes both of the contractor against the government and the government against the contractor." (243 F.3d at 1375, footnote 3).

*Balboa* was a Federal Circuit opinion, and it in turn explicitly relied upon the Court of Claims decision in *USF&G*. The *Balboa* court quoted from *USF&G* as follows:

> [T]he surety was entitled to the benefit of all the rights of the laborers and materialmen whose claims it paid and those of the contractor whose debts it paid. The surety then is subrogated to the rights of the contractor who could sue the Government since it was in privity of contract with the United States. The surety is likewise subrogated to the rights of the laborers and materialmen who might have superior equitable rights to the retainage but no right to sue the [United States].

(775 F.2d at 1161, quoting from 475 F.2d at 1382).

*Pearlman*, *USF&G*, and *Balboa* are all payment bond cases. The surety's subrogation to the rights of the contractor was explicitly recognized in each case based on the surety's payment bond losses. Neither *Blue Fox* nor *ICW* undermine these precedents, which are controlling in this case.

At pages 7-8 of its Response, the Government argues that FAR §28.106-7 is not an alternative basis for relief in this action because the surety did not agree to hold the Government

harmless or because there was no agreement between the surety and the contractor as to payment of the withheld contract funds.

The surety did, however, provide an executed hold harmless agreement. The Government does not like it because, (1) the Government did not sign it; and (2) the agreement held the Government harmless from releasing final payment to the surety rather than from withholding final payment from the contractor. SAA submits that there is nothing to require the Government to sign the hold harmless agreement and that the agreement would have fully protected the Government. The fact that the surety may have gone farther than the regulation requires does not mean that the agreement was insufficient. If the Government had released payment to the surety, it would have been protected from any claim by F.A.S., and that is surely the point of the requirement of a hold harmless agreement.

The regulation does not specify how the contractor and the surety are to agree on disposition of final payment. In this case the surety provided a written document in which F.A.S. agreed the payment should be made to the surety. The fact that it took the form of an assignment does not violate the regulation. The surety does not seek to enforce it as an assignment. Rather, the surety asks only that the Government abide by its own regulation and release the final payment to the surety.

At pages 8-9 of its Response, the Government suggests that it is caught between two rival claimants. In fact there is only one claimant. No one other than the surety has sought payment of the contract funds. If the Government were actually concerned about a rival claimant, of course, it could bring the supposed rival into the case via a third party complaint or could file an interpleader and deposit the fund in an appropriate court.

At pages 9-10 of its Response, the Government agrees that the fact that Lin R. Rogers Electrical Contractors, Inc. ("Rogers") was not paid is not a jurisdictional issue. It also states that the surety "failed to honor its obligations under the payment bond." (Response at page 9). Congress mandated the scope of the Miller Act payment bond, and Congress required the claimant to file suit within one year of the last date it furnished labor or material. It is not the surety's fault that Rogers failed to comply with the Act. The surety has met its obligations.

On the other hand, SAA agrees that the contract funds should be used to pay Rogers, and since the Government holds the contract funds and is free to pay Rogers, the obvious solution is for it to issue an appropriate check. In the alternative, it could consent to a judgment in this Court conditioned on the surety paying Rogers, or it could file an interpleader and name Rogers as a defendant.

Finally, the Government repeats its argument that the other subcontractor, FCX Systems, somehow was not paid in full because it chose to employ a collection agency to assert its claim. The surety paid FCX the full amount it was owed, and what FCX did with the money was its business. The collection agency fee is analogous to an attorney's fee, and in *F.D. Rich Co., Inc. v. U.S. ex rel. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) the Court held that the American Rule applied to Miller Act suits. The claimant was not entitled to recover attorneys fees unless an exception to the American Rule authorized them. In the 31 years since the *Rich* decision, Congress has had ample opportunity to amend the Miller Act to provide for recovery of fees, and it has not done so. The surety met its obligation to FCX by paying the claim. It had no obligation also to pay the collection agency fee, and the fact that FCX bore the cost of collection does not mean that it was not paid for purposes of subrogation.

SAA respectfully requests that the Court deny defendant's Motion to Dismiss or in the Alternative for Summary Judgment and enter an Order that assures payment to Rogers, and reimbursement of the surety for its payments, up to the amount of the contract balance held by the Government.

Dated: December 14, 2005.

__/s/_*Edward G. Gallagher*__

Edward G. Gallagher
Wickwire Gavin, P.C.
8100 Boone Blvd., Suite 700
Vienna, VA 22182
Tel: (703) 790-8750
Fax: (703) 448-1801

Attorney for Amicus Curiae
The Surety Association of America

CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2005, a copy of the foregoing Reply of Amicus Curiae The Surety Association of America to Defendant's Response to Brief of Amicus Curiae in Opposition to Defendant's Motion to Dismiss or for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to counsel for all parties by the Court’s electronic filing system. Parties may access a copy of this filing via the Court’s electronic filing system.

/s/ *Edward G. Gallagher*

Edward G. Gallagher