No. 03-2033C
(Judge Firestone)

---

IN THE UNITED STATE COURT OF FEDERAL CLAIMS

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORIGA'S MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, INCORPORATING BRIEF IN SUPPORT

---

DeWitte Thompson
Attorney for Plaintiff

THOMPSON, SLAGLE & HANNAN, LLC
12000 Findley Road
Suite 250
Duluth, Georgia 30097
Telephone (770) 662-5999
Facsimile (770) 447-6063

June 12, 2006

---

# TABLE OF CONTENTS

Table of Authorities. ii.

Commercial Casualty Insurance Company of Georgia's Motion for Reconsideration and Motion for Summary Judgment, Incorporating Brief in Support. 1

Background Facts. 3

Argument and Citation to Authorities 4

A. Motion for Reconsideration 4

B. Motion for Summary Judgment 5

I. Standard of Review 5

II. The relationship between surety, principal and obligee 7

III. FAS executed an Indemnity Agreement, which assigned all rights to the contract balances on the Project to Commercial Casualty in connection with the issuance of the above-referenced Bonds 8

IV. Commercial Casualty as surety is entitled to the remaining contract balances on the Project by and through its equitable subrogation rights 9

A. The Navy Is A Mere Stakeholder Without Any Valid Interest In The Funds It Holds 10

B. The Navy's General Arguments Regarding the Supposed Weakening of The Doctrine of Subrogation Have Already Been Rejected By This Court 12

## TABLE OF AUTHORITIES

I. CASES


Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) .......... 5, 6

Balboa Insurance Company v. United States, 775 F.2d 1158, 1160 (Fed. Cir.1985) .......... 7, 10, 11

Carchia v. United States, 485 F.2d 622, 202 Ct.Cl. 723 (1973) .......... 7

Celotex Corp. v. Catret, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) .......... 6

Continental Casualty Co. v. Wendt, 205 F.3d 1258 (11th Cir. 2000) .......... 6

Insurance Co. of the West, supra, 243 F.3d at 1370 .......... 7

Insurance Company of the West v. United States, 243 F.3d 1367, 1370 .......... 7

Newark Insurance Co. v. United States, 169 F. Supp. 955, 957 (1959) .......... 11

North Denver Bank v. United States, 193 Ct.Cl. 225, 432 F.2d 466 (1970) .......... 2, 5

Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962) .......... 12, 13

Pritchard v. Southern Co. Serv., 92 F.3d 1130, 1132 (11th Cir. 1996) .......... 6

Rice v. State Farm Fire and Casualty Co., 208 Ga. App. 166, 430 S.E.2d 75 (1993) .......... 8

Transamerica Premier Ins. Co v. U.S., 32 Fed.Cl. 308, (1994) .......... 14

United States Fidelity & Guar. Co., 201 Ct. Cl. 1, 475 F.2d 1377 (1973) .......... 13


II. STATUTES AND REGULATIONS


Court of Federal Claims Rule 56

Rule 56 of the Federal Rules of Civil Procedure

Miller Act, 40 U.S.C.A. 270

**IN THE UNITED STATES COURT
OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE NO. 03-2033C (Judge Firestone) |
| UNITED STATES GOVERNMENT, DEPARTMENT OF THE NAVY, | ) | |
| Defendant. | ) | |

**COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA'S MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, INCORPORATING BRIEF IN SUPPORT**

COMES NOW, Commercial Casualty Insurance Company (hereinafter referred to as "Commercial Casualty") and submits this, its Motion for Reconsideration and Motion for Summary Judgment Against the United States Government, Department of Navy (hereinafter referred to as the "Navy" or "Defendant"), Incorporating Brief in Support.

Commercial Casualty respectfully requests that this Court amend its Order dated May 26, 2006 regarding the action to be taken by Commercial Casualty. These motions do not address, and do not take issue with, the Court's reasoning or conclusions regarding the Navy's motions. The Court's order instructs Commercial Casualty to make payment to the out-of-time claimant, Rogers Electric. Commercial Casualty does not object to this action in principle, but as currently formulated the Court's Order, once such action by Commercial Casualty is taken, will leave this case unresolved. It is clear, both from the position taken by the Navy in its briefs and oral argument, as well as in conversations between counsel, that the Navy will not voluntarily pay

Commercial Casualty regardless of whether all claimants (proper or not) are changed. Indeed, the Navy apparently will not pay Commercial Casualty the remaining contract funds under any circumstances, even if ordered to by this Court, and plans to appeal any ruling. As a result, Commercial Casualty makes this dual motion in order to attempt to resolve all remaining issues in this case, and allow it to move on. The remedy sought by Commercial Casualty is that used by the court in North Denver Bank v. United States, 193 Ct.Cl. 225, 432 F.2d 466 (1970), discussed in oral argument in prior briefs. As the Order of this Court now reads, were Commercial Casualty to pay Rogers Electric, the government could and would still refuse to release the contract funds, and the case would remain unresolved. The purpose of Commercial Casualty's motions is to put the case in the position where the Court could impose a conditional order identical to that in the North Denver Bank case, where the payment by the surety of an unresolved claim resulted in judgment against the government, thereby resolving all remaining issues in the case.

Pursuant to Court of Federal Claims Rule 56, Commercial Casualty moves for summary judgment in its favor regarding all Counts of Plaintiff's Complaint on the grounds that matters of record show that there is no genuine issue as to any material fact and that Commercial Casualty is entitled to judgment as a matter of law. This Motion is supported by the attached Statement of Material Facts as to Which No Genuine Issue Remains to be Tried, Brief in Support of Commercial Casualty's Motion for Summary Judgment against Navy, and the entire record in this case. After review of the uncontested evidence in this matter, it is clear that there is no genuine issue as to any material fact, and that Commercial Casualty is entitled to judgment as a matter of law pursuant to Rule 56 of the United States Court of Federal Claims.

BACKGROUND FACTS

F.A.S. Development Company, Inc., (hereinafter "FAS") a construction contractor, entered into a contract ("Contract") with the Navy to perform a construction project known as "Naval Air Station, Atlanta, Marietta, Georgia, Replace 400 HZ Converter", contract number N62467-01-C-3215 ("Project"). Commercial Casualty, as Surety, issued contract payment and performance bonds in connection with the Project, identified by Bond number PPB4618230 (the "Bonds"). A true and accurate copy of the Bonds are attached to Commercial Casualty's Complaint as Exhibit "A," and are incorporated herein by reference.

All work on the Project has been completed and there is a sum of money being retained by the Navy. At the time that FAS completed its Contract with the Navy and fully performed its obligations for the Project, the Navy had not paid out the full amount of the contract price on the Project. The remaining contract balance for the Contract is at least $52,625.00.

As previously shown to this Court within Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, Commercial Casualty has paid numerous payment bond claims on behalf of principal FAS, and therefore, is equitably subrogated to the unpaid balance of the contract price remaining on the Project. Additionally Plaintiff is an assignee of FAS's rights to payment pursuant to a provision of a General Agreement of Indemnity "(Indemnity Agreement") executed by FAS prior to issuance of the Bonds. A copy of the Indemnity Agreement is attached to Commercial Casualty's Complaint as Exhibit "B" and incorporated herein by reference.

Accordingly Plaintiff is entitled to recover the remaining contract fund held by the Navy, which is at least $52,625.00. Despite Commercial Casualty's demand, the Defendant has failed and refused to remit the remaining contract balances for the Project. Refusal to remit the contract

balances to Commercial Casualty pursuant to the Indemnity Agreement constitutes a breach of Commercial Casualty's subrogation rights and Assignee rights under the Indemnity Agreement. As a consequence of this breach, Commercial Casualty seeks recovery of its losses, including reasonable attorneys' fees and costs.

The Navy moved to dismiss Commercial Casualty's complaint and moved for summary judgment, and oral argument was held in conjunction with argument regarding two other cases. The Court's outstanding Order denied the Navy's motion to dismiss, and denied the Navy's motion for summary judgment conditioned upon Commercial Casualty's paying an out-of-time claimant, Rogers Electric.

ARGUMENT AND CITATION OF AUTHORITY

A. Motion for Reconsideration

At oral argument, the Court and the parties discussed a number of ways in which the difficult factual and legal issues of this case could be resolved. One of the means discussed was a situation where Commercial Casualty as surety would pay, out of the contract funds held by the Navy, all claimants, including an out-of-time claimant named Rogers Electric. (The only other claimant, FCX Systems, was paid the full amount of its claim by Commercial Casualty.) This would be done in order to resolve the question of whether all claimants had been paid, under the assertions by the Navy that Commercial Casualty must do so in order to be subrogated to the remaining contract funds.

Unfortunately, the scenario ordered by the Court does not address the issue of what the Navy will do with the contract funds once Rogers Electric is paid. The Navy has made it perfectly clear, in its briefs, at oral argument, and through conversation between counsel, that it will not make payment of the remaining contract funds to Commercial Casualty, whether or not Rogers Electric is

paid. The Navy, and the remainder of the federal government through the Justice Department, is taking the position that a performing payment bond surety has no subrogation rights, when it does not perform under the performance bond. This Court expressly rejected this contention in its Order, at great length and in convincing detail.

Commercial Casualty makes this dual motion in order to ensure that it does not voluntarily pay an out-of-time claimant, and then have the Navy refuse to pay the remaining contract funds (in any amount), and continue this litigation. Instead, Commercial Casualty respectfully requests that this Court amend its Order to conform with the North Denver Bank case, where the court entered a conditional judgment against the government, holder of the contract funds, in favor of the surety, once all claimants at issue were paid. In that case, the court addressed the issue of remaining unpaid claimants, and the issue of the remaining contract funds, in one neat package. Without a similar order here, this case will remain unresolved, and the issues facing the Court will be the same as those already briefed and argued.

B. Motion for Summary Judgment

I. Standard of Review

In order to prevail on Summary Judgment under Court of Federal Claims Rule 56, the movant must demonstrate that there is no genuine issue of material fact and also that the moving party is entitled to judgment as a matter of law. Court of Federal Claims Rule 56. The rule provides that there be no genuine issue of material fact existing, as opposed to no alleged factual dispute at all. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). Materiality is determined by the underlying substantive law. Id. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might properly affect the outcome of the suit under the governing law will preclude the entry of summary judgment." Id.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Continental Casualty Co. v. Wendt, 205 F.3d 1258 (11th Cir. 2000). The movant may successfully satisfy this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catret, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party, however, is not required to negate the nonmovant's claim outright. Id. at 323, 106 S.Ct. at 2552.

Once the moving party makes a properly supported motion, the nonmovant must also use evidence beyond the pleadings to support its contention that a material fact is still at issue. Continental Casualty Co., 205 F.3d at 1261 (citation omitted). The nonmovant must use affidavits, depositions, and answers to interrogatories in support of its position. Id. Rule 56(c) requires the court to enter summary judgment against a nonmovant when he bears the burden of proof on a particular fact, and he fails to provide sufficient proof to establish that an essential element of that party's case exists. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. If a complete failure of proof on an essential element of the nonmovant's case exists, then it stands to reason that all other facts are immaterial. Id. at 322-23, 106 S.Ct. at 2552.

In reviewing the motion for summary judgment, the Court must view the facts and evidence in a light that most favors the nonmovant. Pritchard v. Southern Co. Serv., 92 F.3d 1130, 1132 (11th Cir. 1996). The court's duty is to determine whether there is sufficient evidence in favor of the nonmovant that would allow the finder of fact to render a verdict for the non-moving party. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510 (citation omitted).

II. The relationship between surety, principal and obligee

Through the Miller Act, 40 U.S.C.A. 270, Congress has created a tripartite relationship wherein every construction contract involving the Federal Government (exceeding a small minimum dollar value) requires the issuance of performance and payment bonds by a surety. This court has ruled "[a] surety bond creates a three-party relationship in which the surety becomes liable for the debt or duty of the principal to the third party obligee." See Insurance Co. of the West, supra, 243 F.3d at 1370; Balboa Insurance Company v. United States, 775 F.2d 1158, 1160 (Fed.Cir.1985). This court stated in Balboa that: "[d]ecisions of our predecessor court and the Supreme Court make clear that a surety is *not* in the same position as that of a contractor or materialman … a suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee". See Balboa, 775 F.2d at 1160. "Both the obligor-principal (the prime contractor) and the surety are liable to the obligee (here, the Government), and no suretyship *exists* in the absence of any of the three parties. In contrast to a subcontractor, which has no obligations running directly to or from the Government… (and therefore possesses no enforceable rights against the United States), a surety, as bondholder, is as much a party to the Government contract as the contractor. If the surety fails to perform, the Government can sue it on the bonds. Id., *E.g.* Carchia v. United States, 485 F.2d 622, 202 Ct.Cl. 723 (1973). See also Insurance Company of the West v. United States, 243 F.3d 1367, 1370. Commercial Casualty does have an independent right which flows from the tripartite relationship that allows it, as surety, to pursue payment from the bond obligee, here the Navy, when the work has been performed but has not been paid for.

III. FAS executed an Indemnity Agreement, which assigned all rights to the contract balances on the Project to Commercial Casualty in connection with the issuance of the above-referenced Bonds.

As more fully set forth in Commercial Casualty's Statement of Material Facts as to Which no Genuine Issue Remains to be Tried, FAS executed and delivered to Commercial Casualty an Indemnity Agreement. In addition to a surety's common-law rights against its principal, it is a common practice for a commercial surety to obtain a written contract of indemnity by which the surety obtains additional protection against financial loss in connection with all of the bonds the surety issues for a particular principal. The terms of a particular indemnity agreement proscribe the extent of such rights. Courts have consistently enforced written indemnity agreements as they are written, according to the "four corners" of the document itself. "When the terms of the contract are clear . . . and capable of but one reasonable interpretation, a court will look to the contract alone to find the intent of the parties." Rice v. State Farm Fire and Casualty Co., 208 Ga. App. 166, 430 S.E.2d 75 (1993).

Within the Indemnity Agreement, all rights to payment due FAS under the Contract for the Project were assigned to Commercial Casualty if and when FAS defaulted its obligations for the Project. FAS did in fact default under its obligations for the Project by failing to pay its subcontractors and/or suppliers on the Project and therefore, Commercial Casualty's rights to assignment of all contract balances due FAS became effective.

The Indemnity Agreement at issue in this case, by its terms, protects Commercial Casualty and gives it the rights to payment due FAS under the Contract for the Project. Commercial Casualty's claim in this case is based on contract. A reading of the above case law shows that courts have shown a strong inclination toward enforcing written indemnity agreements as they are written,

as long as the expressed intent of the parties is reasonably clear. In the present case Commercial Casualty relies on a written indemnity contract to establish its assignment rights against the Defendant. Therefore, a proper analysis of Commercial Casualty's assignment rights must include the Indemnity Agreement. Beyond the Indemnity Agreement, FAS has also agreed to have the final payment from this Contract made to Commercial Casualty ("Assignment"). (See Assignment, attached to Complaint as Exhibit E and incorporated herein by reference.) As Commercial Casualty and FAS are jointly and severally liable under the Bonds, there is no reason why this Agreement should not be enforceable.

The Defendant is obligated to remit to Commercial Casualty all remaining contract balances, not only by way of Plaintiff's assignment rights under the Indemnity Agreement but also through the concept of equitable subrogation. As such, Commercial Casualty's rights against the Defendant accrued when Commercial Casualty had no other choice but to file this action, and those rights will not end until Defendant remits the remaining contract balances on the Project to Commercial Casualty.

Accordingly, Commercial Casualty is entitled to Summary Judgment against the Defendant in the amount of the remaining contract balances in connection with the above-referenced Project per the Indemnity Agreement executed by Commercial Casualty and FAS.

IV. Commercial Casualty as surety is entitled to the remaining contract balances on the Project by and through its equitable subrogation rights.

In addition to the above, Commercial Casualty is further entitled to the remaining contract balances on the Project by and through its equitable subrogation rights. Plaintiff has paid numerous payment bond claims on behalf of its principal FAS, and therefore, is equitably subrogated to the

remaining contract balances on the Project. Further, due to Plaintiff's payments of bond claims on behalf of FAS, Plaintiff is entitled to any and all amounts claimed by FAS for equitable adjustment.

A. The Navy Is A Mere Stakeholder Without Any Valid Interest In The Funds It Holds.

The Navy has argued that it has a direct interest in the contract funds it holds. Those funds were fully earned by contractor FAS, as the Navy admits that the contract was fully performed. In "Defendant's Proposed Findings of Uncontroverted Fact" filed contemporaneously with its Motion to Dismiss pursuant to Rule 12(b)(6) or, in the alternative, Motion for Summary Judgment, the Navy states: "FAS completed its work upon the contract on or about July 24, 2002. Defendant's Appendix 20; Complaint ¶ 7". Commercial Casualty fully agrees that the contract work was completed. In the instant case, the Navy has never paid the contract funds at all. Instead, it has reaped the benefit of the work performed by FAS, but it has not paid for that work. As a result, the Navy is merely a stakeholder, in possession of funds that by any measure of equity it must pay to some other party.

There can be no question that the Navy is considered a mere stakeholder under the applicable case law. While Balboa partially involved funds in controversy that the Government paid the contractor instead of the surety, it also involved funds that were held by the Government after the surety's stop payment demand. The Balboa court stated: "[w]e agree with the conclusion of the Court of Claims that, upon notification of the surety of the unsatisfied claims of the materialmen, the Government became a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of the default." Balboa, 775 F.2d at 1162. That is exactly the situation faced by the Navy here: Commercial Casualty demanded the payments be held, and the Navy holds those contract funds to this day. Balboa goes on to state: "Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims

by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution to the question[1], the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle." Balboa, 775 F.2d at 1162, quoting Newark Insurance Co. v. United States, 169 F. Supp. 955, 957 (1959). The Balboa court concludes "…[w]e are satisfied that the United States becomes a stakeholder with a duty of acting with reasoned discretion when a Miller Act Surety alleges that the contractor has breached the contract by defaulting under the bonds." Id. In the instant case, the Navy at least had the good sense not to pay FAS. It chooses to exercise its "reasoned discretion", however, by attempting to keep funds which should only fairly be paid to others.

The Navy has continually argued that, based on a variety of irrelevant factors, the party that should be paid is not the surety, Commercial Casualty. However, nowhere in this case, does the Navy suggest what it will do with the funds it holds but no longer "owns". The Navy cannot pay FAS, as it is a corporate entity that has been dissolved in bankruptcy. The Navy does not state that it will voluntarily pay FCX or Rogers Electric, the two subcontractor claimants that it states were not fully paid. (Given the Government's insulation from subcontractors under the appropriate statutes and case law, such payment is highly unlikely.) The Government will not pay Commercial Casualty for the amount it admits Commercial Casualty paid FCX.[2] Instead, without acknowledging the

---

[1] Commercial Casualty did attempt to resolve its rights concerning FAS through an indemnity lawsuit, which was stayed by a bankruptcy filing, and ultimately the discharge and dissolution of FAS in bankruptcy.

[2] The Navy's statement of facts reads: "On July 31, 2003, Commercial Casualty sent a payment to Hatmaker and Associates, a debt collection agency hired by FCX Systems, in the amount of

inevitable result of its arguments, the Navy would continue to hold the funds indefinitely, or have them revert back to it at some point. If that were to occur, the Navy would effectively have received the benefit of the contract work without ever having paid for it. Such a result is the least equitable outcome possible in this situation. In fact, the Court has already ruled in its Order that the Navy's arguments do not prevail, and that Commercial Casualty is entitled to the contract funds for which it is subrogated.

B. The Navy's General Arguments Regarding The Supposed Weakening Of The Doctrine Of Subrogation Have Already Been Rejected by this Court.

Throughout this case the Navy has attempted to show that Commercial Casualty may not claim a right to equitable subrogation. In its Order, this Court, through a detailed analysis, rejected the Navy's contentions. As the Supreme Court of the United States has held, "[t]he right of subrogation is not founded on contract; it is a creature of equity, is enforced solely for purpose of accomplishing ends of substantial justice, and is independent of any contractual relations between parties." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). It stands to reason that equity would require the Navy to release contract funds that it has no reason to withhold. In the case at bar there are no competing claims to the remaining contract funds. Based upon information and belief no claims have been brought against the Navy for the remaining Contract funds but for the within action taken by Commercial Casualty. The Navy is the holder of the funds but has no interest in them; the Project has been completed by FAS. However, Commercial Casualty does have an

---

$25,644.00 for the labor and materials that FCX Systems provided upon the contract. Defendants Appendix 33-34. … The payment made by Commercial Casualty to FCX Systems was made pursuant to the payment bond issued by Commercial Casualty. Complaint ¶ 8.

interest in the funds. Commercial Casualty has losses that remain outstanding on this Project and other projects for which it issued bonds to FAS. The Navy has no loss on this project for which it seeks entitlement to the remaining contract funds. The Project has been completed by FAS. Furthermore, FAS cannot be paid these funds because it has been dissolved through bankruptcy proceedings. As such, with no competing claims to the remaining Contract funds, the Navy is holding the funds for no justifiable reason and equity should require the Navy to release the remaining funds to Commercial Casualty. Pearlman went on to state that a "[s]urety paying debt of another is, by doctrine generally known as "subrogation," entitled to all rights of person paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962).

In fact, a "surety, by asserting the right of subrogation, could protect itself by resort to the same securities and same remedies which had been available to the United States for its protection against the contractor." United States Fidelity & Guar. Co., 201 Ct. Cl. 1, 475 F.2d 1377 (1973). Pearlman, when deciding on payment of certain retained contract funds, went on to state that "the Government has a right to use the retained fund to pay laborers and materialmen. Laborers and materialmen on a government project have a right to be paid out of the fund. A contractor, had he completed his job and paid his laborers and materialmen, would become entitled to the fund. A surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). Thus, by subrogation the surety obtained superior rights to the retained funds.

This very court has held that a "surety to government contract can establish right of subrogation in either of two ways: by completing contract pursuant to its obligation under performance bond, or by paying off materialmen's claims brought under payment bond."

Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). In the case at bar, it has clearly been established that Commercial Casualty has paid materialmen’s claims brought under the Bond. Transamerica went on to state that a “Surety to government contract that has paid out materialmen's claims can come directly against government as holder of retained contract funds.” Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). As Commercial Casualty has paid out materialmen’s claims, it can come directly against the Navy as a holder of the retained funds.

Commercial Casualty is not a subcontractor and is not attempting to enforce a lien on the Navy. Commercial Casualty is simply attempting to collect against the holder of the retained funds of the contract at bar. An action that is clearly allowed under the Transamerica holding. Payment and performance bonds are issued to give a subcontractor and/or materialmen recourse for not being paid for work performed or materials supplied to a particular project. Therefore, it stands to reason that subcontractors and materialmen should not be able to proceed against the government for collection of their claims. However, the surety that issues the payment and performance bonds has no recourse against itself when it pays claims made on a payment bond that it has issued; it must look to the remaining contract funds for subrogation of the claims it has paid and the losses that it has incurred. This is precisely the action being taken by Commercial Casualty.

Accordingly, Commercial Casualty is entitled to Summary Judgment against the Defendant in the amount of the remaining contract balances in connection with the above-referenced Project for subrogation of the claims it has paid and the losses it has incurred.

WHEREFORE, Commercial Casualty respectfully requests that this Court grant its Motion for Reconsideration, and there being no genuine issue as to any material fact, grant summary judgment in favor of Commercial Casualty and against the Navy pursuant to Federal Rule of Civil

Procedure 56. Such an action by this Court will address all remaining issues in this case and provide a resolution to all parties.

This 12th day of June, 2006.

Respectfully submitted,

THOMPSON, SLAGLE & HANNAN, LLC

s/DeWitte Thompson
DeWitte Thompson
Georgia Bar No. 707688

12000 Findley Road
Suite 250
Duluth, Georgia 30097

(770) 662-5999
(770) 447-6063 Facsimile
dthompson@thompsonandslagle.com

Attorney for Plaintiff

Dated: June 12, 2006

**CERTIFICATE OF SERVICE**

This is to certify that I have this day filed the within and foregoing COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA'S MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, INCORPORATING BRIEF IN SUPPORT electronically and by U.S. Mail with adequate postage affixed to ensure delivery, to the following:

Kelly B. Blank
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classified Unit, 8th Floor
1100 L St., NW
Washington, DC 20530

This 12th day of June, 2006.

THOMPSON, SLAGLE & HANNAN, LLC

s/DeWitte Thompson
DeWitte Thompson
Georgia Bar No. 707688

12000 Findley Road
Suite 250
Duluth, Georgia 30097

(770) 662-5999
(770) 447-6063 Facsimile
dthompson@thompsonandslagle.com

Attorney for Plaintiff

Dated: June 12, 2006