No. 03-2033C
(Judge Firestone)

UNITED STATES COURT OF FEDERAL CLAIMS

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Department of Justice
Tel: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Naval Facilities Engineering Command
Litigation Headquarters
702 Kennon St., S.E, Room 136
Washington, D.C. 20374
Tele: (202) 685-2136

August 18, 2006

TABLE OF CONTENTS

PAGE

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Commercial Casualty Does Not Have An Independent Right That Flows From Its Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. The General Agreement Of Indemnity Executed By FAS Does Not Provide A Cause Of Action By Commercial Casualty Against The United States . . . . . . . . . . . . 4

III. Commercial Casualty Has Not Established An Equitable Right To Indemnification From The Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Commercial Casualty's Claim Of Subrogation Is Contrary To The Principles of Suretyship and Contrary To Controlling Regulations . . . . . . . . . . . 7

B. Commercial Casualty Cannot Support Its Equitable Request Because It Failed To Pursue Its Rights Prior To Suing The Government . . . . . . . 8

# TABLE OF AUTHORITIES

CASES PAGE(S)

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . 3

American Surety Co. v. Sampsell,
327 U.S. 269 (1946) . . . . . . . . . . 9

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) . . . . . . . . . . 5

Church of Spiritual Technology v. United States,
26 Cl. Ct. 713 (1992), aff'd, 991 F.2d 812 (Fed. Cir. 1993) . . . . . . . . . . 9

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . . . 3

In re Bridge,
18 F.3d 195 (3d Cir. 1994) . . . . . . . . . . 6

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) . . . . . . . . . . 4

First Federal Sav. Bank v. United States,
118 F.3d 532 (7th Cir. 1997) . . . . . . . . . . 6

First Nat. City Bank v. United States,
212 Ct. Cl. 357, 548 F.2d 928 (1977) . . . . . . . . . . 5

Fouts v. Maryland Casualty Co.,
30 F.2d 357 (4th Cir. 1929) . . . . . . . . . . 6

Home Ins. Co. v. United States,
46 Fed. Cl. 160 (2000) . . . . . . . . . . 6

Insurance Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . 3, 4

In re Lewis,
398 F.3d 735 (6th Cir. 2005) . . . . . . . . . . 5

National Sur. Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . 3, 11

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Royal Indemnity Co. v. United States,
117 Ct. Cl. 736, 93 F. Supp. 891 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Travelers Indem. Co. v. United States,
16 Cl. Ct. 142 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States Fidelity & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States v. National Surety Co.,
254 U.S. 73 (1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES and REGULATIONS

41 U.S.C. § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FAR § 28.106-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MISCELLANEOUS

Richard A. Lord, Williston on Contracts (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2033C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT

Defendant, the United States, is currently holding a contract balance of $48,425, which was earned by and is otherwise owed to FAS Development Company, Inc. ("FAS"). By this proceeding, plaintiff, Commercial Casualty Insurance Company of Georgia ("Commercial Casualty"), seeks a judicial determination that it alone is entitled to the entire contract balance (and then some). Commercial Casualty's equitable claim should be denied. The equitable remedy that Commercial Casualty seeks from this Court is contrary to the controlling regulations, leaves the United States vulnerable to other potential claimants, does not give due regard to the legal and equitable rights of others, and should be denied.

On May 27, 2005, the United States filed a motion seeking, among other things, summary judgment on the grounds that Commercial Casualty inequitably refused to pay one of the subcontractors, Rogers Electric. The law with respect to this failure is clear. The surety may not seek indemnification from the United States if subcontractors remain unpaid. United States Fidelity & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377, 1381, 1385 (1973). As a result, Commercial Casualty is not entitled to be equitably subrogated to the rights of any party – subcontractors, the Government contractor, or the United States. Commercial Casualty opposed

our motion, arguing that it could not be required to pay a claim that was "legally deficient." Pl. Resp., filed June 24, 2005, p.15.

By an Opinion dated May 26, 2006, this Court denied our motion for summary judgment on the condition that Commercial Casualty pay the claim of Rogers Electric in full within 60 days. Commercial Casualty, by its motion for reconsideration and for summary judgment, requests that the Court enter a "conditional judgment" against the United States.[1]

The Court appears to have denied the Government's earlier motion upon the grounds that, if Rogers Electric is paid, then the Government's basis for its motion is moot. However, the Court did not address the nature of Commercial Casualty's conduct, and whether, under the totality of the circumstances, it is entitled to an equitable remedy. Had it done so, the facts in this case establish that Commercial Casualty has not and cannot demontrate that it is entitled to equitable subrogation in order to bring this action against the United States for indemnification. Accordingly, the United States respectfully requests that the Court reconsider its opinion and enter judgment in favor of the United States. In support of this cross-motion, we rely upon this brief and the appendix that was previously filed by the defendant on May 25, 2005.

I. <u>Commercial Casualty Does Not Have An Independent Right That Flows From Its Bond</u>

Commercial Casualty alleges that it has "an independent right which flows from" the

---

[1] Commercial Casualty asserts that it is compelled to file this motion because the Government has allegedly told plaintiff that it will not pay Commercial Casualty "under any circumstances," and that it intended to appeal "any ruling." Pl. Mot. at 2. This is not an accurate characterization of our position. As we have repeatedly advised plaintiff and this Court, the Department of Justice has not taken any position on whether we will appeal the final judgment of this Court. That decision can only be made by the Solicitor General, and that decision has not been made. We have, of course, expressed our respectful disagreement with the Court's opinion, finding that it possessed jurisdiction over claims presented by payment bond sureties, and have advised counsel for the plaintiff that, at the appropriate time, we will consider whether to request the Solicitor's General approval to pursue an appeal.

three-party relationship created by the issuance of the surety's bond. Pl. Br. at 7. According to Commercial Casualty, this "right" allows the surety "to pursue payment from [the United States] when the work has been performed but has not been paid for." Id. Commercial Casualty provides no authority for this proposition, and there is none.

Although it has been said that "[a] suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee [the United States]," Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir. 1985), the requirement that a contractor obtain payment and performance bonds "cannot be construed as an 'objective manifestation' that the government intended to undertake obligations to [the surety.]" Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir. 1990). Accordingly, the United States Court of Appeals for the Federal Circuit has squarely held that there is no privity of contract between the United States and the surety to a Government contract. Insurance Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001) (citing Ransom, 900 F.2d at 244-45 and Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1220-21 (Fed. Cir. 1998)). Nor can Commercial Casualty claim that it is a third-party beneficiary of the Government's contract with FAS. National Sur. Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts, but on principles of suretyship law").

Only two means have been identified through which such a surety can bring itself within the ambit of the Tucker Act. First, a surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor. See Travelers Indem. Co. v. United States, 16 Cl. Ct. 142, 153 (1988) (upon execution of a takeover agreement, the surety becomes a party in privity with the Government). Second, a surety may establish a right of equitable

subrogation to the Government contractor. See Insurance Co. of the West v. United States, 243 F.3d at 1375 (subrogee, after stepping into shoes of Government contractor, may rely upon Tucker Act to bring suit). In this case, Commercial Casualty did not execute a takeover agreement. Therefore, in order to establish a claim cognizable under the Tucker Act, Commercial Casualty must establish a right of equitable subrogation to FAS.

## II. The General Agreement Of Indemnity Executed By FAS Does Not Provide A Cause Of Action By Commercial Casualty Against The United States

In connection with its bonds, FAS executed a "General Agreement of Indemnity," which purportedly assigned to Commercial Casualty "[a]ny and all sums due for or which thereafter become due under any contract and all other sum or sums due or to become due on all other contracts, bonded or unbonded, in which any of the Undersigned have an interest." Complaint, Ex. B, p.2. Commercial Casualty alleges that this document "establish[es] its assignment rights against the [United States]." Pl. Mot. at 9.

There is no merit to this argument. Any assignment of FAS's rights to contracts funds to Commercial Casualty is invalid under the Anti-Assignment Act, 41 U.S.C. § 15. The Anti-Assignment Act provides in pertinent part: "No contract or order or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred." 41 U.S.C. § 15. Thus, the assignment of FAS's rights in a Government contract in violation of the statute is void as against the United States.[2] Fireman's Fund Insurance Co. v. England, 313 F.3d 1344, 1349-

[2] Commercial Casualty also references an assignment by FAS of its right to final payment from the contract at issue. Pl. Mot. at 9, citing Ex. E to its complaint. For the same reason, this assignment is also void as against the United States. See Def. App. 13 (letter from Navy advising that its request for an assignment to Commercial Casualty was not approved).

50 (Fed. Cir. 2002); Royal Indemnity Co. v. United States, 117 Ct. Cl. 736, 93 F. Supp. 891, 894 (1950). Commercial Casualty has no enforceable right against the United States based upon an assignment from FAS.

III. Commercial Casualty Has Not Established An Equitable Right To Indemnification From The Government

As a well-respected treatise explains:

> Subrogation is an equitable remedy that arises under the following basic circumstances:
> 1. the obligor (in this context, the principal debtor) owes a debt or duty of some kind to the creditor;
> 2. the subrogee (here, the surety), pursuant to his or her own obligation to the creditor, pays that debt or discharges that duty; and
> 3. these circumstances make it inequitable that the subrogee should bear the loss while the obligor is unjustly enriched.

Richard A. Lord, 23 Williston on Contracts § 61:51 (4th ed.).

Thus, "subrogation applies where a party not acting voluntarily, but under some compulsion pays a debt or discharges an obligation for which another is primarily liable and which in equity and good conscience ought to be discharged by the latter." First Nat. City Bank v. United States, 212 Ct. Cl. 357, 548 F.2d 928, 936 (1977). "The purpose of subrogation is to reallocate the cost of performance from the secondary obligor to the principal obligor." Restatement (Third) of Suretyship and Guaranty, § 27, comment b. Moreover, subrogation is a "creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Argonaut Ins. Co. v. United States, 193 Ct.Cl. 483, 434 F.2d 1362, 1367 (1970). See also In re Lewis, 398 F.3d 735, 747 (6th Cir. 2005) (citations omitted) ("Equitable subrogation is a flexible, elastic doctrine of equity, and its application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence.

Subrogation is granted, if at all, with due regard to the rights of others; and it will be refused where it is inequitable to grant it"); First Federal Sav. Bank v. United States, 118 F.3d 532, 534 (7th Cir. 1997) ("a court must decide whether to invoke the doctrine [of equitable subrogation] based on the circumstances of the particular case"); In re Bridge, 18 F.3d 195, 201 (3d Cir. 1994) (citation omitted) ("the principle of subrogation is one of equity merely, and it will accordingly be applied only in the exercise of equitable discretion, and always with a due regard to the legal and equitable rights of others").

One ramification of this equitable remedy is that the principal obligor has an implied obligation to reimburse the surety, even if no express contract of indemnity has been executed. Home Ins. Co. v. United States, 46 Fed. Cl. 160, 163 (2000) ("the surety, after meeting its obligations under its bonds, is entitled to reimbursement from the contractor for costs incurred in satisfying those obligations"); Fouts v. Maryland Casualty Co., 30 F.2d 357, 358 (4th Cir. 1929) (citation omitted) ("'There is always an implied obligation, in the absence of an agreement to the contrary, that the principal will indemnify his surety against loss resulting from the suretyship, and an express agreement therefor adds nothing to the surety's rights'"). Thus, while Commercial Casualty had a right to pursue FAS for reimbursement, there is no evidence that it did so, and the evidence in the record is to the contrary.

Rather, Commercial Casualty has determined that its interests will be better served by seeking indemnification solely from the United States. The Court should consider all the circumstances surrounding Commercial Casualty's conduct in this matter, and determine whether it is equitable that the Government provide such indemnification to Commercial Casualty.

A. Commercial Casualty's Claim Of Subrogation Is Contrary To The Principles of Suretyship and Contrary To Controlling Regulations

Most significantly, Commercial Casualty's claim that it is equitably subrogated to FAS contravenes "a familiar rule of the law of subrogation under which a surety . . . does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." United States v. National Surety Co., 254 U.S. 73, 76 (1920); see also Richard A. Lord, 23 Williston on Contracts § 61:54 (4th ed.) ("The surety's right of subrogation does not ordinarily arise until the debt is paid in full. A partial payment of the debt, even though it may be of the full amount for which the surety is bound, will not entitle the surety to subrogation to the creditor's rights and securities"). Because Commercial Casualty has not paid in full FAS's obligations to its subcontractors, Commercial Casualty does not have a right of subrogation to stand in FAS's shoes and to sue the United States.

The result that Commercial Casualty seeks in this case – a resolution of entitlement to the contract funds – is precisely what is contemplated by the Federal Acquisition Regulations ("FAR"). Commercial Casualty, however, refuses to comply with the requirements of the FAR.

FAR section 28.106-7, Withholding contract payments, provides in relevant part:

> (b) If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties.

This provision requires that, after completion of the contract work, the surety provide to the Government (1) an agreement to hold the Government harmless from any liability resulting

from withholding the final payment, and (2) either (a) an agreement between the contractor and surety or (b) a judicial determination of the rights of the parties. The letter relied upon by Commercial Casualty dated October 25, 2002 (Complaint, Exs. C and D), does not satisfy either requirement. Commercial Casualty did not provide the Government either an agreement between the contractor and surety or a judicial determination of the rights of the parties. Moreover, its proposed "hold harmless agreement" did not purport to hold the Government harmless from **any** liability. Rather, it would have limited Commercial Casualty's liability to the "amount actually paid" by the United States to Commercial Casualty.

B. Commercial Casualty Cannot Support Its Equitable Request Because It Failed To Pursue Its Rights Prior To Suing The Government

Commercial Casualty makes the unsupported assertion that it "attempted to resolve its rights concerning FAS through an indemnity lawsuit, which was stayed by a bankruptcy filing, and ultimately the discharge and dissolution of FAS in bankruptcy." Pl. Mot. at 11, n.1.

First, Commercial Casualty offers no evidence of any lawsuit against FAS. FAS submitted its final invoice to the Government on September 10, 2002, seeking payment of $48,425. There is no evidence that Commercial Casualty thereafter had any communication with FAS concerning a right of reimbursement. The petition for bankruptcy filed by FAS on May 19, 2003, identifies suits to which it had been a party within one year of the filing, but it does not list any suit brought by Commercial Casualty. Ex. A.[3] Second, Commercial Casualty does not explain why, in the bankruptcy proceeding, it did not seek relief from the stay, as other creditors

[3] Ex. A is a document filed in the bankruptcy proceeding of FAS, of which the Court can take judicial notice. The Court may take judicial notice of proceedings in other courts which have a direct relationship to the matters at issue and where neither party disputes the documents' authenticity. See Church of Spiritual Technology v. United States, 26 Cl. Ct. 713, 726 & n.26 (1992), aff'd, 991 F.2d 812 (Fed. Cir. 1993).

did. See Ex. B (docket sheet, In re FAS Development Co., Bankruptcy Petition No. 03-95373). Third, and most significantly, although Commercial Casualty was listed as an unsecured creditor with respect to an unrelated bond,[4] Commercial Casualty fails to explain why it did not assert a claim with respect to the bond at issue or why it did not advise the bankrupt's trustee that the contract funds may be a part of the estate.

The answer to this query is clear. Commercial Casualty could not have established priority to the contract balance. According to Commercial Casualty, as of September 16, 2002, it had received two claims from FAS subcontractors: (1) FCX Systems and (2) Rogers Electric. Def. App. 24. The claim by FCX was for $25,644, which Commercial Casualty paid on July 31, 2003. Def. App. 31-34. Rogers Electrics' claim for $11,565 has never been paid, and Commercial Casualty has steadfastly refused to make payment, allegedly because the claim was "untimely." Def. App. 26, 35-39; see also Pl. Br. at 1, 2, 4 (stating that the claim is "out-of-time" and not "proper").

Because Commercial Casualty has refused to pay Rogers Electrics, it could not have established priority to the contract balance. In American Surety Co. v. Sampsell, 327 U.S. 269 (1946), a contractor failed to pay all of its suppliers and laborers. The surety that issued a payment bond paid those laborers and suppliers who filed their claims within the required statutory period, but it refused to pay three laborers and suppliers whose claims were not timely filed. In the bankruptcy proceeding to resolve the estate of the bankrupt contractor, the bankruptcy court subordinated the surety's claim of subrogation to the claims of the three unpaid

---

[4] Compare Ex. C, attached to this motion, p.5 of 28 (identifying bond number as 461757.0, with a claim of $83,000) with Plaintiff's Proposed Findings of Uncontroverted Fact, ¶ 2 (identifying payment bond number as 4618230).

laborers and suppliers. In affirming this decision, the United States Supreme Court held that:

> The bond was intended to protect materialmen and laborers who worked on the job so that they would not have to bear the risk of [the contractor's] insolvency. But for his insolvency and bankruptcy these laborers and materialmen would have been able to recover from him the money due them, no matter what their rights against the surety might have been. Consequently, the surety should not, by claiming under subrogation or indemnity for money paid to some of the creditors for whose benefit the bond was intended, be allowed to reduce the share of the bankrupt's assets due to other creditors whom the bond also was intended to protect from insolvency. For this would tend to defeat the very purpose for which the bond was given and therefore cannot be permitted under the equitable principles governing distribution of a bankrupt's assets.

327 U.S. at 273-74. Thus, had Commercial Casualty sought priority to the contract funds in the bankruptcy proceeding, its claim would have been subordinated to the claim of Rogers Electric.

It is also important to note that, in this proceeding, Commercial Casualty seeks to recover the remaining contract balance, which, it claims, is "at least $52,625.00." Pl. Mot. at 3. In making this assertion, Commercial Casualty apparently refuses to acknowledge the modification to the contract that assessed liquidated damages against FAS in the amount of $4,2000, thus reducing the contract balance to $48,425. See Def. Proposed Findings of Uncontroverted Fact, ¶ 7, filed May 27, 2005, and Pl. Response thereto, ¶ 7, filed June 24, 2005.

More importantly, the subcontractor claims that have been asserted total $37,209. Commercial Casualty offers no rationale for its claimed entitlement to a sum in excess of this amount, and there is none. See National Surety Corp. v. United States, 118 F.3d 1542, 1548 (Fed. Cir. 1997) (subrogated surety is not automatically entitled to recover full amount of retainage; recovery must be measured by actual damages).

Thus, if Commercial Casualty had, in the bankruptcy proceeding, asserted a claim against this fund, the result likely would have been that Commercial Casualty was entitled to reimbursement for the $25,644, which it paid to FCX, that Rogers was entitled to the $11,565, which it was owed, and the balance of $11,216 (48,425 - (25,644 + 11,565)) would have been available to all of the other unsecured creditors of FAS, including Commercial Casualty.[5]

However, instead of pursuing its claim for reimbursement in (1) either a direct proceeding against FAS, or (2) the bankruptcy proceeding, Commercial Casualty falsely asserts that "it must look to the remaining contract funds for subrogation of the claims it has paid and the losses it has incurred," and it chooses to seek summary judgment against the United States in an amount of "at least $52,625." Pl. Mot. at 3, 14. Since Commercial Casualty has paid only $25,644 pursuant to its payment bond obligations, it is asking the Court for a windfall recovery of $26,981.

Further, that Commercial Casualty has not made any attempt to obtain reimbursement from FAS, the one who is primarily liable for the debt, is unconscionable and should preclude Commercial Casualty from pursuing an equitable claim against the United States. FAS completed its work upon the contract in July 2002. Def. App. 11, 20 (the contract completion dated was June 14, 2002, and the Government assessed liquidated damages for 30 calendar days). FAS filed a petition for bankruptcy in May 2003, and, without seeking to bring the contract funds to the attention of the trustee, Commercial Casualty brought suit against the

---

[5] "If the principal obligor becomes bankrupt, the surety must prove its claim for reimbursement. Reimbursement may be had pro tanto where only part of the debt has been paid, but where the principal has become insolvent the courts generally will not permit this right to be asserted to the detriment of an unpaid creditor who is covered by the bond." Richard A. Lord, 23 Williston on Contracts § 61:59.

United States in September 2003. Before the United States was able to proceed, however, Commercial Casualty sought a series of continuances while it – Commercial Casualty – went through a liquidation proceeding. By the time its fourth motion for a continuance expired in January 31, 2005, the bankruptcy estate was closed and the trustee was discharged. See Ex. D (Order closing estate). As a result, the creditors who could have benefitted from the availability of the contract funds at issue no longer have any forum in which to seek recovery.

Absent Commercial Casualty's compliance with the requirements of the FAR, and given Commercial Casualty's complete failure to mitigate its damages by seeking reimbursement from FAS, the party primarily liable for the debt, it would be inequitable to grant subrogation to ommercial Casualty and to leave the Government vulnerable to other potential claimants. The Court should grant judgment to the United States and dismiss Commercial Casualty's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Department of Justice
Tel: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Naval Facilities Engineering Command
Litigation Headquarters
702 Kennon St., S.E, Room 136
Washington, D.C. 20374
Tele: (202) 685-2136

August 18, 2006