**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**Case No. 03-2033C**
**(Judge Firestone)**

---

**COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA,**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

**Brief of Amicus Curiae The Surety Association of America**
**In Support of Plaintiff's Motion for Reconsideration**

---

Edward G. Gallagher
The Surety & Fidelity
Association of America
1101 Connecticut Ave., N.W., # 800
Washington, DC 20036
Tel: (202) 778-3622
Fax: (202) 463-0606

Attorney of Record for
The Surety & Fidelity
Association of America

In the Court's Order of May 26, denial of the Government's summary judgment motion was conditioned on plaintiff Commercial Casualty Insurance Company of Georgia ("Surety") filing proof that the claim of Lin R. Rogers Electric Contractors, Inc. ("Rogers") had been paid in full. In its Motion for Reconsideration, Surety asks for summary judgment conditioned on filing such proof. In *North Denver Bank v. United States*, 193 Ct. Cl. 225, 432 F.2d 466 (1970) the Court of Claims granted the surety such a conditional judgment as a way to solve the same dilemma the parties and the Court face in this case.

The Navy holds admitted contract funds of $48,425. Surety paid $25,644 to satisfy the claim of FCX Systems, and Rogers claims $11,565. Therefore, the contract balance is sufficient to cover the contract obligations that the contractor, F.A.S. Development Company, Inc. ("FAS"), left unpaid. There is no reason for this case to continue to occupy the Court and the parties.

Rogers has a superior equitable interest in $11,565 of the contract balance. Sovereign immunity prevents Rogers from suing the Navy, and the one year limitation provision of the Miller Act [1] prevents Rogers from suing on the payment bond. Rogers appears to have a right but no legal remedy.

There are at least four ways the Government could resolve this case. First, it could simply pay Rogers the $11,565. Rogers cannot force the Navy to make such a payment, but the Navy can choose to pay a subcontractor. That would then remove the bar to paying Surety the $25,644 it paid on FCX System's claim.

Second, the Government could choose to honor FAS's assignment to Surety. Although the Anti Assignment Acts do not permit such an assignment, the Acts are solely

[1] 40 U.S.C. §3131, et seq. The one year limitation on suits by payment bond claimants is at §3133(b)(4).

for the protection of the Government, and the Government can always choose to honor an assignment that does not comply with the Acts.

Third, the Government could recognize the assignment as an agreement between FAS and Surety within the meaning of FAR § 28.106-7(b). Once the contract work is physically complete but subcontractors are not paid, the FAR provisions says "The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties." There is no requirement that the agreement must take a particular form, and here FAS assigned the contract funds to Surety. The Government could recognize that as an agreement under §28.106-7(b).

The Government argues that the "hold harmless" agreement offered by Surety was not satisfactory, but the FAR section requires a hold harmless agreement only in connection with the decision to withhold final payment. Section 28.106-7(b) says, "However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment." In the instant case, the Navy decided long ago to withhold the final payment. Whether or not to withhold is a moot point. The issue here is releasing payment to the surety, and for that the FAR requires only an agreement or a court decision. Here, there is such an agreement in the form of the assignment.

Fourth, Surety and the Government could agree to a settlement under which the Navy would pay Surety $37,209 (the sum of payments to FCX and Rogers) upon proof that Rogers has been paid. That is, Surety and the government could settle the case by agreeing to part of what is sought in the motion for reconsideration. As a settlement, the

agreement would resolve this case without setting a precedent or requiring any further action by this Court.

Instead of a common sense solution, or even consenting to a conditional judgment in the amount of $37,209, the Government opposes Surety's Motion for Reconsideration. The first sentence of the Government's Opposition states, "Defendant, the United States, is currently holding a contract balance of $48,425, which was earned by and is otherwise owed to FAS Development Company, Inc. ("FAS")." That is simply incorrect. When FAS failed to pay its subcontractors, it lost its rights in the contract funds. The fact that FAS filed for bankruptcy does not change that fact. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) was a contest between the contractor's bankruptcy trustee and the payment bond surety. The Court said, "The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors" (371 U.S. 136, 83 S.Ct. 234). See also, *In re Modular Structures*, 27 F.3d 72 (3rd Cir. 1994) ("Modular's failure to pay its subcontractors was a breach of its contract such that it was not owed the funds held by the Salvation Army. As a consequence, those funds did not become a part of the estate in bankruptcy.") Even if the terminated bankruptcy case were somehow resurrected, it would make no difference because the bankruptcy trustee would have no claim to the contract funds held by the Navy.

The Government's Opposition also suggests that Surety is to blame for not paying Rogers' untimely claim. Surety, however, did not write the Miller Act. Congress chose to provide a payment bond for the protection of persons furnishing labor or material on federal public works projects but also to require a claimant to sue within one

year of the last date it furnished labor or material for use on the bonded project. Presumably, Congress balanced the increased cost of a more expansive bond against the beneift to claimants who are not diligent in pursuing their claims. Congress, not Surety, decided that the Government should not pay for a bond that rewarded claimants who failed to sue within one year. It is not inequitable for Surety to assert the defense that Congress provided.

On the other hand, SFAA recognizes that Surety cannot use its subrogation rights to compete with a party within the class protected by the bond. *American Surety Co. v. Westinghouse Manufacturing Co.*, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935); *American Surety Co. of New York v. Sampsell*, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946). Therefore, before Surety is entitled to payment of the contract funds, Rogers has to be paid one way or another.

Surety's motion for reconsideration is consistent with this rule. Surety would become entitled to payment only after Rogers was paid. Under the Court's May 26 Order, however, Surety would not be assured of payment even if it paid Rogers. On the contrary, the Government has categorically stated that it will not release any contract funds to Surety. If Surety is to pay Rogers, whose claim is barred by the Miller Act limitation period, it needs assurance of reimbursement from the contract funds.

In *North Denver Bank v. United States*, 193 Ct.Cl. 225, 432 F.2d 466 (1970) the surety paid the penalty of its payment bond ($21,500) but that left unpaid subcontractor claims of $15,435.77. The Government was holding a contract balance of $34,080.50. The Court stated:

> However, the condition previously quoted was designed primarily to obtain the payment of the unpaid claims of persons who had furnished

> labor or materials to the contractor in connection with the performance of the Dome contract, rather than to establish a predicate for perhaps depriving Great American of its priority. Accordingly, it would seem appropriate to enter a judgment for Great American in the sum of $34,080.50, conditioned upon the filing with the clerk of the court, within 30 days after the judgment is entered, of receipts from all claimants listed in finding 41, showing payments in full by Great American of their respective claims against the contractor.

SFAA respectfully suggests that the only way, in the absence of cooperation by the Government, to assure payment of Rogers and resolution of this case is to grant Surety's motion for Reconsideration and Summary Judgment and enter judgment in the amount of $37,209 conditioned on Surety filing proof that Rogers has been paid. This would give Surety a reason to pay Rogers, and it would properly apply the contract funds to reimburse Surety for its payments to the two subcontractors.

SFAA recognizes that such a judgment would leave $11,216 in the Navy's hands. FAS assigned those funds to Surety, but SFAA does not believe that the Government can be compelled to honor the assignment. The Government could file an interpleader, but presumably will not. As inequitable as it seems, the Court may not be able to prevent the Navy from simply keeping that part of the contract balance that exceeds the unpaid debts that FAS owed to its subcontractors.

s/ *Edward G. Gallagher*

Edward G. Gallagher
The Surety & Fidelity
Association of America
1101 Connecticut Avenue, N.W., Suite 800
Washington, DC 20036
Tel: (202) 778-3622
Fax: (202) 463-0606

Attorney for amicus curiae The
Surety & Fidelity Association of America

CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2006, a copy of the foregoing Brief of Amicus Curiae in Support of Plaintiff's Motion for Reconsideration was filed electronically. I understand that notice of this filing will be sent to counsel for all parties by the Court's electronic filing system. Parties may access a copy of this filing via the Court's electronic filing system.

/s/ Edward G. Gallagher