No. 03-2033C
(Judge Firestone)

---

IN THE UNITED STATE COURT OF FEDERAL CLAIMS

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

PLAINTIFF COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA'S REPLY REGARDING ITS MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, AND ITS RESPONSE TO DEFENDANT'S CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT

---

DeWitte Thompson
Alfred A. Malena, Jr.
Attorneys for Plaintiff

THOMPSON, SLAGLE & HANNAN, LLC
12000 Findley Road
Suite 250
Duluth, Georgia 30097
Telephone (770) 662-5999
Facsimile (770) 447-6063

October 27, 2006

---

## TABLE OF AUTHORITIES

I. CASES

Insurance Company of the West v. United States, 243 F.3d 1367 (2001)..............................7

Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962) .......................................6

Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994) .............................................7

United States Fidelity & Guar. Co., 201 Ct. Cl. 1, 475 F.2d 1377 (1973)..............................6

II. STATUTES AND REGULATIONS

Federal Acquisition Regulation § 28.106-7

Miller Act, 40 U.S.C.A. 270

**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

COMMERCIAL CASUALTY )
INSURANCE COMPANY OF GEORGIA, )
)
Plaintiff, )
) CIVIL ACTION
v. ) FILE NO. 03-2033C
) (Judge Firestone)
UNITED STATES GOVERNMENT, )
DEPARTMENT OF THE NAVY, )
)
Defendant. )
)

**PLAINTIFF COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA'S REPLY REGARDING ITS MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, AND ITS RESPONSE TO DEFENDANT'S CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Commercial Casualty Insurance Company of Georgia ("Commercial Casualty"), and files this its Reply Regarding its Motion for Reconsideration and Motion for Summary Judgment, and its Response to Defendant's Cross-Motion for Reconsideration and for Summary Judgment, and respectfully shows this Court as follows:

**STATEMENT OF FACTS**

F.A.S. Development Company, Inc., (hereinafter "FAS") a construction contractor, entered into a contract ("Contract") with the United States Department of the Navy ("United States", "Navy" or "Defendant") to perform a construction project known as "Naval Air Station, Atlanta, Marietta, Georgia, Replace 400 HZ Converter", contract number N62467-01-C-3215 ("Project"). See Def. App. 1-3. Commercial Casualty Complaint ¶ 4. Commercial Casualty, as Surety, issued contract payment and performance bonds in connection with the Project, identified

by Bond number PPB4618230 (the "Bonds"). True and accurate copies of the Bonds are attached to Commercial Casualty's Complaint as Exhibit "A," and are incorporated herein by reference.

All work on the Project has been completed by F.A.S. Development Company, Inc. ("FAS") under its Contract with the Navy. See Paragraph 4 of Defendant's Proposed Findings of Uncontroverted Fact. On January 10, 2002, Commercial Casualty notified the Navy of outstanding claims by "subcontractors and vendors on projects bonded by surety, making it imperative that the funds on the captioned job [Project] be properly directed and/or used in the process by the surety in obtaining equitable subrogation." See Def. App. 9.

The remaining Contract funds being held by the Navy on the Contract are $52,625.00. See Def. App. 10-11. (The United States claims it issued a deductive change order regarding liquidated damages, but that change order has never been provided to Commercial Casualty. If a valid deductive change order was issued, the contract amount would, of course, be reduced.) At the time that FAS completed its Contract with the Navy and fully performed its obligations under the Contract for the Project, the Navy had not paid out the full amount of the contract price on the Project. See Paragraph 7 of Defendant's Proposed Findings of Uncontroverted Fact.

Commercial Casualty has notified the Navy that it had received claims for payment from FAS's subcontractors on the Project. See Def. App. 24-25. In fact, Commercial Casualty has paid payment bond claims on behalf of its principal FAS on the above-referenced Bond. See Def. App. 33-34. FAS executed and delivered to Plaintiff a General Agreement of Indemnity ("Indemnity Agreement") prior to issuing the Bond to FAS. The Indemnity Agreement is

attached to Commercial Casualty's Complaint as Exhibit "B" and incorporated herein by reference.

Commercial Casualty has made demand on the Navy for the remaining Contract balance. See Def. App. 16-18. Commercial Casualty is an assignee of FAS's rights to payment pursuant to a provision of an Indemnity Agreement executed by FAS prior to issuance of the Bonds. A copy of the Indemnity Agreement is attached to Commercial Casualty's Complaint as Exhibit "B."

By letter dated October 25, 2002, a true and correct copy of which is attached to the Complaint as Exhibit C, and through numerous other communications, Commercial Casualty demanded payment of the remaining Contract funds and provided Navy a hold harmless agreement ("Hold Harmless Agreement," attached to Complaint as Exhibit "D").

Beyond the Indemnity Agreement referenced supra, FAS has also agreed to have the final payment from this Contract made to Commercial Casualty ("Assignment"). (See Assignment, attached to Complaint as Exhibit "E" and incorporated herein by reference.). Despite Commercial Casualty's providing the Hold Harmless Agreement and FAS's Assignment, the Navy has refused to make the final Contract payment to Commercial Casualty. See Paragraph 7 of Defendant's Proposed Findings of Uncontroverted Fact.

On March 28, 2002, Commercial Casualty filed a lawsuit in Fulton County Superior Court, in the state of Georgia, against FAS and Vanessa Sutton (the owner of FAS), for indemnity and on other claims arising out of losses on bonds issued by Commercial Casualty for FAS. See Affidavit of Alfred A. Malena, Jr., attached hereto as Exhibit A. This case was ultimately stayed when FAS and Sutton filed for bankruptcy. On March 5, 2004, FAS was

administratively dissolved by and through the United States Bankruptcy Court for the Northern District of Georgia, under Chapter 7 of the United States Bankruptcy Code, case no. 03-95373-jb. (See Attachment B to the instant Brief of the United States.)

## INTRODUCTION

The United States' opposition to Commercial Casualty's Motion for Reconsideration and Summary Judgment and its Cross-Motion for Reconsideration and for Summary Judgment is, unfortunately, simply more of the same argument that has been shown by it in this case to date. Most of Defendant's Brief in Support of its Cross-Motion for Reconsideration and for Summary Judgment ("Brief") is simply a re-hash of arguments that it has made previously, which were rejected by this Court. The few allegedly new issues or facts asserted by the United States are either misstated or simply wrong.

## I. THE UNITED STATES ARGUES AGAINST EVERY RIGHT OF SUBROGATION FOR A SURETY.

Initially, the United States attempts to revive and re-argue its assertions made previously in this case. These assertions have been fully briefed and argued at a lengthy hearing, and Commercial Casualty must refer to its Response to Motion to Dismiss Pursuant to Rule 12(b)(6), or In The Alternative, Motion for Summary Judgment, filed June 24, 2005 (Docket No. 33); Proposed Findings of Uncontroverted Fact (Docket No. 34); and Motion for Reconsideration regarding Published Opinion, and For Summary Judgment (Docket No. 46), as well as its other pleadings, regarding these issues. Ultimately, this Court rejected the arguments made by the United States.

The main basis of Commercial Casualty's Motion for Reconsideration was that the mechanism by which the Court set out for resolution of the dispute, namely requiring that Commercial Casualty pay the claimant in question, Rogers Electric, within a certain time frame or face summary judgment, was unworkable. The Motion for Reconsideration simply asked that the Court recognize the problems faced by Commercial Casualty, which is in liquidation proceedings being managed by the North Carolina Department of Insurance. Consideration of and payment of claims, whatever their size, is a lengthy process that requires more time and difficulty than is necessary to resolve this dispute. As shown in its Motion for Reconsideration and below, Commercial Casualty objected to being ordered to volunteer to pay Rogers Electric, when it is clear from all indications, including the tactics taken by the United States in this lawsuit, its various and conflicting arguments made in its Brief, as well as discussion with counsel, that the voluntary payment of Rogers Electric would not result in the resolution of this case.[1]

The Navy argues that Commercial Casualty may not claim rights directly from "its bond". Commercial Casualty has not made such an argument: equitable subrogation flows from the tripartite relationship between principal, surety, and the United Stats as obligee. That tripartite relationship is, in fact, the purpose of the Miller Act, 40 U.S.C.A. 270, which governs

---

[1] In response to the assertions contained in Footnote 1 on page 2 of the United States' brief, Commercial Casualty related what it was told by counsel, and intended to convey that it was told that a voluntary resolution of this matter, where Rogers Electric would be paid by consent of all parties, and contract funds used to either directly pay Rogers Electric or reimburse Commercial Casualty for doing so, would not be agreed to by the United States. As the United States would not agree to resolve the case voluntarily under the current circumstances, there is little reason to expect it to do so in the future. Commercial Casualty does not know, and cannot know, what position the Solicitor General will take regarding appeal of this case. It is apparent, however, what the likely position will be based upon the litigation strategy of the United States to date.

bonds issued for federal government projects. The right of equitable subrogation is innate to that tripartite relationship, but also exists outside of contract. As the Supreme Court of the United States has held, "[t]he right of subrogation is not founded on contract; it is a creature of equity, is enforced solely for purpose of accomplishing ends of substantial justice, and is independent of any contractual relations between parties." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). Pearlman went on to state that a "[s]urety paying debt of another is, by doctrine generally known as "subrogation," entitled to all rights of person paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962).

In fact, a "surety, by asserting the right of subrogation, could protect itself by resort to the same securities and same remedies which had been available to the United States for its protection against the contractor." United States Fidelity & Guar. Co., 201 Ct. Cl. 1, 475 F.2d 1377 (1973). Pearlman, when deciding on payment of certain retained contract funds, went on to state that "the Government has a right to use the retained fund to pay laborers and materialmen. Laborers and materialmen on a government project have a right to be paid out of the fund. A contractor, had he completed his job and paid his laborers and materialmen, would become entitled to the fund. A surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, (1962). Thus, by subrogation the surety obtained superior rights to the retained funds.

This very court has held that a "surety to government contract can establish right of subrogation in either of two ways: by completing contract pursuant to its obligation under performance bond, or by paying off materialmen's claims brought under payment bond."

Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). In the case at bar, it has clearly been established that Commercial Casualty has paid materialmen's claims brought under the Bond. Transamerica went on to state that a "Surety to government contract that has paid out materialmen's claims can come directly against government as holder of retained contract funds." Transamerica Premier Ins. Co. v. U.S., 32 Fed.Cl. 308, (1994). As Commercial Casualty has paid out materialmen's claims, it can come directly against the Navy as a holder of the retained funds.

Ultimately, the Navy vastly misreads and oversimplifies the reasoning of Insurance Company of the West v. United States, 243 F.3d 1367 (2001). Once again, the Navy is a mere stakeholder in this case, and has no direct claim upon the funds. Insurance Company of the West involved a factual scenario where the government had wrongfully paid funds to the contractor after a stop payment notice from the surety. As a result, that case can be easily distinguished from this case, where the Navy is simply holding earned but not paid contract funds. In fact, the only real application of equitable subrogation in this case would be in weighing whether the surety or other claimants had superior rights to the funds. This case simply does not directly involve the issues of sovereign immunity discussed in detail in Insurance Company of the West.

## II. COMMERCIAL CASUALTY HAS NEVER, AND DOES NOT, OBJECT TO PAYMENT OF ROGERS ELECTRIC OUT OF THE CONTRACT FUNDS BEING HELD BY THE UNITED STATES.

The United States admits it is holding contract funds for payment of the entire contract at issue in this case. The United States admits that FAS completely performed its work, and has never been paid for that work. The United States admits that FCX Systems, Inc., one of FAS's subcontractors, did work and was paid by Commercial Casualty. There is no question that

Rogers Electric did some work on the project. Rogers Electric, however, has never filed suit against FAS or Commercial Casualty on its claim. While the United States will not admit it, the Miller Act, 40 U.S.C.A. 270, requires that claimants bring suit on any Miller Act bond within one year of the date of last work. As Rogers Electric has never filed suit against Commercial Casualty, it has not complied with the Miller Act.

Commercial Casualty has never argued that Rogers Electric should not be paid out of the contract funds being held by the Government. Commercial Casualty's position has been, throughout this matter, that it cannot volunteer to pay Rogers Electric, and hope to be repaid by the United States. The United States has made it perfectly clear that regardless of whether Rogers Electric was paid, that it does not intend to voluntarily pay the contract funds, in any amount, to Commercial Casualty. Potential resolutions of this case involving partial payments, joint checks, partial settlements and other potential resolutions have been discussed by the parties and the Court. Today, three years after filing suit and four years after the work was completed by FAS and accepted by the Navy, the United States has not paid one penny to anyone. The United States' repeated argument that Commercial Casualty's denial of the claim by Rogers Electric is somehow unfair conduct or bad faith is patently wrong, and gains no strength no matter how many times it is repeated.

## III. THE ARGUMENTS BY THE UNITED STATES REGARDING THE FEDERAL ACQUISITION REGULATIONS ("FAR") AND ASSIGNMENT MISCONSTRUE BOTH THE FACTS AND COMMERCIAL CASUALTY'S POSITION.

The United States repeats the same mischaracterizations of Commercial Casualty's arguments regarding assignments and the Federal Acquisition Regulations ("FAR"). Commercial Casualty cited the assignments contained in the General Agreement of Indemnity

between Commercial Casualty and FAS, as well as the explicit assignment regarding the contract funds in this matter, in order to show its compliance with FAR § 28.106-7 withholding contract payments. The United States accurately quotes that section, which states:

> (b) If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and the surety or upon a judicial determination of the rights of the parties.

The key considerations are, as stated by the United States, that the surety provide the Government 1) a hold harmless agreement and 2) an agreement between the contractor and the surety or judicial determination of the rights of the parties. Initially, while it is difficult to believe that this issue is still in question with the United States, Commercial Casualty did provide the Navy multiple versions of the hold harmless agreement, which the Navy refused to accept. (See Exhibit D to Commercial Casualty's Complaint, which was the first of several Hold Harmless Agreements presented to the Navy in this matter.) The Navy, however, would not specify what disagreement it had regarding the language in the agreement, and would provide no alternative language. Further, Commercial Casualty referred to the assignments to show the "agreement between the contractor and surety" (See October 25, 2002 letter from FAS to Commercial Casualty regarding assignment of contract funds on the Project, Exhibit E to Commercial Casualty's Complaint), required by the FAR, regarding the release of these contract funds. While the assignment contained in the General Agreement of Indemnity is of course, general, the October 25, 2002 letter by FAS to Commercial Casualty is most certainly an agreement between the parties regarding the release of the contract funds.

## IV. THERE IS NO QUESTION THAT COMMERCIAL CASUALTY FULLY PURSUED ALL REMEDIES PRIOR TO INSTITUTING THIS ACTION.

In its Brief, the United States asserts that Commercial Casualty somehow did not exhaust all avenues for reimbursement prior to instituting this action. Initially, Commercial Casualty must state that it does not agree with the United States' assertion that there is some sort of equivalent requirement of "exhaustion of administrative remedies" before an action can be brought by a surety, against a the United States as project owner, for contract funds earned by principal. Regardless, the United States' assertion that Commercial Casualty never attempted to pursue reimbursement from FAS is flatly wrong.

The United States was fully aware that Commercial Casualty had filed suit against FAS and its owner, Vanessa Sutton, for indemnity. The United States was fully aware of that lawsuit, as it had been both discussed with counsel numerous times over the years and mentioned in prior pleadings in this case. In any event, Commercial Casualty will refer to the Affidavit of Alfred A. Malena, Jr., attached hereto as Exhibit "A", which describes that lawsuit and contains documents related to it, including the Complaint and Suggestion of Bankruptcy stay for FAS and Vanessa Sutton.

The indemnity lawsuit was halted when FAS and Vanessa Sutton filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. The United States takes belated interest in the bankruptcy, attaching various documents to its Brief as exhibits. What it fails to mention is that each bankruptcy was a no asset proceeding, meaning there was no ability for a claimant to file a proof of claim in the matter. (See Exhibit B to the instant Brief of the United States, page 1, which is the first page of the Pacer Docket Sheet for the bankruptcy.)

While Commercial Casualty monitored the bankruptcy closely, there was no ability for Commercial Casualty to pursue its claims through the bankruptcy. While the United States feels it is necessary to cast aspersions about what was done and when, the fact remains that the United States continues to hold contract funds to pay for an entire completed contract, and continues to refuse to pay anyone for it. Finally, while the Government asserts that it is "vulnerable to other potential claimants" if it were to pay Commercial Casualty, that position fails to recognize that the Government has fought the only proper claimant, FAS's surety Commercial Casualty, tooth and nail. The United States can name no other potential claimants with any cognizable claim.

## CONCLUSION

Despite its assertions, the current Brief by the United States fails to raise any new issues and makes several misstatements of fact. Commercial Casualty did comply with the FAR, by offering multiple versions of a hold harmless agreement, and by obtaining the agreement of FAS to release of the contract funds (in addition to seeking a judicial determination through its indemnity lawsuit). Commercial Casualty did in fact seek reimbursement from FAS, by filing suit against FAS and Vanessa Sutton, a suit that was only ended by the bankruptcy of both Defendants. As a result, the cross-motion for reconsideration and for summary judgment by the United States should be denied, and the motion for reconsideration and for summary judgment by Commercial Casualty should be granted.

This 27th day of October, 2006.

Respectfully submitted,

THOMPSON, SLAGLE & HANNAN, LLC

s/Alfred A. Malena, Jr.
Georgia Bar No. 467085
DeWitte Thompson
Georgia Bar No. 707688
amalena@tshlawyers.com

Attorneys for Plaintiff

12000 Findley Road
Suite 250
Duluth, Georgia 30097
(770) 662-5999
(770) 447-6063 Facsimile

CERTIFICATE OF SERVICE

This is to certify that I have this day filed the within and foregoing **PLAINTIFF COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA'S REPLY REGARDING ITS MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT, AND ITS RESPONSE TO DEFENDANT'S CROSS-MOTION FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT** electronically and by U.S. Mail with adequate postage affixed to ensure delivery, to the following:

Kirk T. Manhardt
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classified Unit, 8th Floor
1100 L St., NW
Washington, DC 20530

Respectfully submitted,

THOMPSON, SLAGLE & HANNAN, LLC

s/Alfred A. Malena, Jr.
Georgia Bar No. 467085
DeWitte Thompson
Georgia Bar No. 707688
amalena@tshlawyers.com

Attorneys for Plaintiff

12000 Findley Road
Suite 250
Duluth, Georgia 30097
(770) 662-5999
(770) 447-6063 Facsimile

Dated: October 27, 2006