**IN THE UNITED STATES COURT
OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE NO. 03-2033C (Judge Firestone) |
| UNITED STATES GOVERNMENT, DEPARTMENT OF THE NAVY, | ) | |
| Defendant. | ) | |

AFFIDAVIT OF ALFRED A. MALENA, JR.

1.

This is the affidavit of Alfred A. Malena, Jr., partner with the law firm Thompson, Slagle & Hannan, LLC in Duluth, Georgia. My firm is counsel for Commercial Casualty Insurance Company of Georgia ("Commercial Casualty") in the above-styled matter. I have been involved in this case from its inception, and also been involved with other matters related to Commercial Casualty's principal in this matter, FAS Development Company, Inc. ("FAS"). I have personal knowledge of the facts and circumstances surrounding this matter, other litigation involving FAS and Commercial Casualty, and claims on bonds issued by Commercial Casualty on behalf of FAS.

2.

On March 28, 2002, my firm filed a lawsuit on behalf of Commercial Casualty against FAS and its owner, Vanessa Sutton (Fulton County Superior Court, State of Georgia, Civil Action No.: 2002CV51322). Ms. Sutton, both individually and on behalf of FAS, had executed

a General Agreement of Indemnity in partial consideration for bonds being issued by Commercial Casualty on behalf of FAS. The claims made in the lawsuit were based upon the rights of indemnity and other rights granted in the General Agreement of Indemnity.

3.

A true and correct copy of the Complaint filed in the indemnity matter is attached hereto as Exhibit "A". FAS and Ms. Sutton answered the Complaint, discovery was conducted, and Commercial Casualty filed a motion for summary judgment. Before the Court ruled on the summary judgment motion, FAS filed for bankruptcy. As counsel for FAS and Sutton had effectively disappeared by that time, my firm filed a Suggestion of Bankruptcy on July 10, 2003. The case has been stayed since that time. As the bankruptcies for FAS and Ms. Sutton were ultimately completed and each was a no asset proceeding, Commercial Casualty had no recourse for further collection against FAS or Sutton.

Alfred A. Malena, Jr.

Sworn to and subscribed
before me, this 27th
day of October, 2006.

Notary Public

My Commission Expires:
MY COMMISSION EXPIRES AUGUST 4TH, 2008

TRACY L. WEHUNT
NOTARY
PUBLIC
JACKSON COUNTY, GA

COPY

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

FILED IN OFFICE
APR 02 2002
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, )
Plaintiff, )
v. )
F.A.S. DEVELOPMENT COMPANY, INC. and VANESSA SUTTON, )
Defendants. )

CIVIL ACTION FILE
NO. 2002CV51322

**COMPLAINT FOR INDEMNIFICATION**

COMES NOW, Commercial Casualty Insurance Company of Georgia ("**CCIC**"), by and through its undersigned counsel, and files this its Complaint for Indemnification, and states the following:

**PARTIES, JURISDICTION AND VENUE**

1.

CCIC is a Georgia corporation, licensed to transact business in this state and is subject to the jurisdiction of this Court.

2.

Upon information and belief, CCIC states that Defendant F.A.S. Development Company, Inc. ("**FAS**") maintains a registered office in Fulton County, Georgia, and may be served via its registered agent, Randal Mangham, at 40 Marietta Street #1616, Atlanta, Georgia, 30303.

Blumberg No. 5208
EXHIBIT
A

3.

Upon information and belief, CCIC states that Defendant Vanessa Sutton ("**Sutton**") is a resident of Fulton County, Georgia, and may be served at 116 Ashby Street, N.W. Atlanta, GA, 30314.

4.

This Complaint is based on a General Agreement of Indemnity and losses suffered in connection with bonds CCIC issued for FAS.

5.

CCIC is subject to the jurisdiction of this Court. FAS is subject to the jurisdiction of this Court. Sutton is subject to the jurisdiction of this Court.

6.

Venue is proper in this jurisdiction.

**BACKGROUND**

7.

FAS and Sutton executed and delivered to CCIC a General Agreement of Indemnity (the "**Indemnity Agreement**") in favor of CCIC on or about October 16, 2000. A true and correct copy of the Indemnity Agreement is attached as Exhibit "A" and incorporated herein by reference.

8.

Pursuant to the Indemnity Agreement, FAS and Sutton agreed to indemnify CCIC and hold it harmless from and against all liabilities, losses, claims, demands, costs, damages, attorney's fees, and expenses of whatever kind or nature, which CCIC may

incur by reason or in consequence of its execution and delivery of any bond on behalf of FAS.

9.

Pursuant to paragraph 2 of the Indemnity Agreement, FAS and Sutton each individually agreed, *inter alia*, to:

> ". . . indemnify and hold harmless Surety [CCIC] from and against all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind and nature, together with interest therein at a maximum rate allowed by law, which Surety may sustain or incur by reason or in consequence of the execution and delivery by Surety of any bond on behalf of the Principal [FAS], whether or not the Surety shall have paid any amount on account thereof,...[.]"

10.

FAS and Sutton executed the Indemnity Agreement in consideration of and as in inducement for CCIC's issuance of bonds naming FAS as Principal in connection with certain construction projects.

11.

In legal and detrimental reliance upon FAS's and Sutton's execution of the Indemnity Agreement, CCIC executed Bond No. PPB461619-0 (the "**Fort Stewart Bond**"). The Fort Stewart Bond generally secured FAS's performance of the following construction obligation:

> Construction Contract No. DAKF10-00-0319 (the "**Contract**") with the United States of America (the "**Obligee**") for the construction of a picking station at Fort Stewart, Georgia (the "**Project**").

A true and accurate copy of the Fort Stewart Bond is attached hereto as Exhibit "B" and is incorporated herein by reference.

12.

Furthermore, in legal and detrimental reliance upon FAS's and Sutton's execution of the Indemnity Agreement, CCIC additionally executed (i) Bond No. 461757-0 which generally secured FAS's performance of its construction obligation pursuant to Contract No. GS-04P-00-RBD-0072 and (ii) Bond No. PPB4618230 which generally secured FAS's performance of its construction obligation pursuant to Contract NO. N62467-01-C-3215 (collectively, the "**Additional Bonds**"). A true and accurate copy of the Additional Bonds are attached hereto as Exhibit "C" and are incorporated herein by reference.

**BREACH OF INDEMNITY AGREEMENT**

13.

The allegations contained in paragraphs 1 through 12 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

14.

Claims have been asserted against the bonds listed above and, to date, CCIC has incurred losses on those bonds in the form of claims both asserted and paid.

15.

The losses and expenses incurred by CCIC in connection with the Bonds are within the scope of the indemnity provisions of the Indemnity Agreement.

16.

Pursuant to the terms of the Indemnity Agreement, FAS and Sutton are liable to CCIC, jointly and severally, for the said losses and related costs and expenses.

17.

CCIC has incurred and continues to incur attorney's fees and costs in connection with the prosecution of this claim.

18.

Pursuant to the terms of the Indemnity Agreement, FAS and Sutton are liable to CCIC, jointly and severally, for payment of these attorney's fees.

19.

Despite demand, FAS and Sutton have failed and refused to indemnify CCIC for the losses and expenses it has incurred.

20.

The failure of FAS and Sutton to render payment to CCIC pursuant to the GIA and to protect CCIC from liability and loss in connection with the issuance of the Bond constitutes a breach of contract for which CCIC may recover damages.

21.

CCIC has received and faces losses of at least $180,000.00.

22.

As a direct and proximate result of said breach, CCIC has incurred damages and liability.

**EXONERATION**

23.

The allegations contained in paragraphs 1 through 22 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

24.

CCIC is secondarily liable for all pending claims from unpaid suppliers and subcontractors against the Bond wherein FAS is the principal.

25.

CCIC has received notice of pending claims against the Bond and has set up a reserve.

26.

Under the equitable doctrine of exoneration, CCIC is entitled, without first paying out its own funds, to require FAS and Sutton to discharge the primary obligations under such aforementioned bond.

27

If FAS and Sutton are not required to satisfy claims already made, CCIC will be forced to incur further expenses.

28.

CCIC prays for the Court to grant relief Quia Timet, and any and all other equitable relief that it believes just and proper. Further, CCIC respectfully requests that:

1. FAS and Sutton be ordered to allow CCIC's representative to inspect all financial and business records to determine the status of FAS's business and finances, including those held by third parties and to order Sutton to be deposed by CCIC's counsel immediately on the same subjects;
2. That FAS and Sutton be ordered to post funds equal in amount to payments to be received from the owner on the Project;

3. That FAS and Sutton be ordered to post collateral pursuant to the Indemnity Agreement in the amount detailed in its forthcoming motion; and

4. That FAS and Sutton be ordered not to sell, transfer or dispose of any assets that may be used to satisfy their indemnification obligation.

5. All other immediate remedies the Court may believe just and proper.

WHEREFORE, Plaintiff, CCIC, respectfully requests that judgment be entered against the Defendants, jointly and severally, as follows:

1. For recovery of a principal amount of at least $180,000.00;

2. For recovery of pre-judgment interest at the rate of one-and-one-half percent (1 ½%) per month until date of judgment;

3. For recovery of post-judgment interest at the rate provided by law;

4. For recovery of all costs associated with this action, including reasonable attorney's fees; and

5. For an award of any and all other relief this Court believes CCIC may be entitled.

This 28TH day of MARCH, 2002.

Respectfully submitted,

THOMPSON & SLAGLE, P.C.

DeWitte Thompson
Georgia Bar No. 707688
Alfred A. Malena, Jr.
Georgia Bar No. 467085

THOMPSON & SLAGLE, P.C.
3295 River Exchange Drive
Suite 300
Norcross, Georgia 30092
(770) 662-5999
(770) 447-6063 (FAX)

# COMMERCIAL CASUALTY

INSURANCE COMPANY OF GEORGIA

## GENERAL AGREEMENT OF INDEMNITY

**THIS AGREEMENT** of Indemnity, made and entered into this 16th day of OCTOBER, 19 2000, is executed by the Undersigned for the purpose of indemnifying COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA (formerly known as Commercial Casualty Insurance Company), herein referred to as "Surety," in connection with any Bonds written on behalf of F.A.S. Development Company, Inc. 2193 A Cascade Road, Atlanta GA 30311 herein referred to as "Principal," and Vanessa Sutton herein referred to as "Indemnitors." The Principal and Indemnitors are sometimes referred to hereafter collectively as "Undersigned."

1. **DEFINITIONS** - The following definitions apply in this Agreement:

**BOND** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal or extension of said obligation.
**PRINCIPAL** - The person(s) or entity(ies) set forth above or any of them or any combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.
**SURETY** - COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, its reinsurers, and any other person(s) or entity(ies) which the Surety may procure to act as a Surety or as a Co-Surety of any Bond, or any other person or entity who executes a Bond at the request of the Surety.
**CONTRACT** - Any agreement of the Principal, including that which is bonded by the Surety.
**OBLIGATION** - Any executed Agreement, undertaking, statutory, or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond.

2. **INDEMNIFICATION** - In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of the Principal, the Undersigned agree to pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of the Principal and shall indemnify and hold harmless Surety from and against all liability, loss, claims, demand, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest therein at a maximum rate allowed by law, which Surety may sustain or incur by reason or in consequence of the execution and delivery by Surety of any bond on behalf of the Principal, whether or not the Surety shall have paid any amount on account thereof, including, without limitation, the following:

A. Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to the Principal's nonperformance of an obligation or any other matter covered by a Bond.
B. Liability incurred or expenses paid in connection with claims, suits or judgments relating to an obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.
C. Liability incurred or expenses paid in procuring, or attempting to procure, a release of liability under or exoneration of a Bond.
D. Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an obligation or a Bond.
E. Liability incurred or demands, claims, damages, costs or expenses caused by the failure of the Principal or Indemnitor(s) to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and expenses of Surety in connection with the enforcement of any of the Principal's or Indemnitors' covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereinunder.

The liability of the Undersigned shall extend to and include all amounts paid by Surety in good faith under the belief that:

1. The Principal was in default as described in this Agreement.
2. Surety was or might be liable thereunder.
3. Such payments were necessary or advisable to protect any of the Surety's rights as to avoid or lessen Surety's liability or alleged liability.

In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees, including in-house attorneys' fees, costs and expenses hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and attorneys' fees, including in-house attorneys' fees, costs and expenses incurred in suit.

3. **RESERVE-DEPOSIT** - If for any reason Surety shall deem it necessary to set-up or to increase a reserve to cover any possible liability or loss for which the Undersigned will be obligated to indemnify Surety under the terms of this Agreement, the Undersigned will deposit with Surety, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to Surety for such liability or loss. Surety shall have the right to use the deposit, or any part thereof, in payment or

Indemnitors' Initials and Date VZA 10-16-2000

EXHIBIT
A

settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify Surety, under the terms of this Agreement. Surety shall have no obligation to invest, or to provide a return on, the deposit. The Undersigned shall be entitled to the return of any unused portion of the deposit upon termination of the liability of Surety on the Bonds and the performance by the Undersigned of all obligations to Surety under the terms of this Agreement. Surety's demand shall be sufficient if sent by registered or certified mail to the Undersigned at the addresses stated herein or at the addresses of the Undersigned last known to Surety, regardless of whether demand is actually received by the Undersigned.

Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other remedy at law or in equity that Surety may have. Surety shall have the right to retain such collateral until Surety has received satisfactory evidence of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred or from claims, demands, damages, costs, loss, expense and attorneys' fees.

**4. LOANS** - Surety may from time to time make or guarantee advances or loans to or for the account of Principal to be used in the performance of obligations of Principal under the contract covered by a Bond without the necessity of seeing to the application of the proceeds thereof; and the Undersigned shall be obligated to indemnify Surety in accordance with the terms of this Agreement for the amount of all such advances and loans, notwithstanding that the proceeds or any part thereof have not been so used by Principal.

**5. TRUST FUNDS** - The Principal hereby agrees and expressly declares that all funds due or to become due under any contract covered by a Bond are Trust Funds, whether in the possession of Principal or another, for the benefit and payment of any person to whom the Principal incurs obligations in the performance of such contract, for which Surety would be liable under the bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the Trust Funds, Principal shall, upon demand of Surety and in implementation of the Trust or Trusts hereby created, open an account or accounts with a bank which account or accounts shall be designated as a Trust account or accounts for the deposit of such Trust Funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such accounts shall be by check or similar instrument signed by the Principal and countersigned by a representative of Surety. Said Trust or Trusts shall terminate on the payment by Principal of all the contractual obligations for the payment of which the Trust or Trusts are hereby created or upon the expiration of twenty years from the date hereof, whichever shall first occur.

**6. ASSIGNMENT** - As security for the performance of all the provisions of this Agreement, the Undersigned hereby assign, transfer, pledge and convey to Surety, but subject to the Trust herein created, all rights in connection with any contract, including but not limited to:

A. All subcontracts let in connection therewith in such subcontractors' Surety Bonds.
B. All machinery, plant equipment, or tools which shall be upon the site or sites of the work or elsewhere for the purpose of any contract, including all material ordered for any contract.
C. Any and all sums due for or which thereafter become due under any contract and all other sum or sums due or to become due on all other contracts, bonded or unbonded, in which any of the Undersigned have an interest.
D. Any and all rights arising out of insurance policies, notes and accounts receivable, and choses in action.
E. Any and all undisbursed loan funds, deposits or interest reserve accounts to which Principal or Indemnitor(s) may be entitled, and any and all collateral for and undertakings given by the Undersigned in connection with any obligation.

**7. DEFAULT** - The Principal and Indemnitor shall be in default hereunder upon the occurrence of any of the following:

A. The breach of this Agreement by Principal or any Indemnitor.
B. Any default in the performance of an obligation.
C. Any obligee declares Principal to be in default.
D. The Principal fails to pay for any labor or materials when such payment is due.
E. The Principal diverts any contract funds from one contract to another, prior to the complete discharge of Surety.
F. The Principal, or any of the Undersigned, breaches any provision of this Agreement.
G. Insolvency, assignment for the benefit of creditors, or voluntary or involuntary filing of any insolvency or bankruptcy proceedings by or against Principal or any Indemnitor.
H. The Principal (if an individual) dies, is adjudged mentally incompetent, is convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with the usual methods.
I. The failure of Principal or Indemnitor to promptly furnish accurate, complete and up-to-date financial statements upon request of Surety, or the furnishing of a financial statement by Principal or Indemnitor which contains any material misstatements or misrepresentation.
J. Any material adverse change in the financial condition of the Principal or any Indemnitor.
K. The filing of any suit or commencement of any action or proceeding by a creditor or obligee of an obligation against Principal or any Indemnitor.
L. Any suspension, revocation or other material adverse change in the status of any license of Principal with any applicable licensing board or agency to perform or discharge the obligation.

**8. REMEDIES UPON DEFAULT** - In the event of any default as described in section 7 above, Surety in its sole and absolute discretion is hereby authorized by Indemnitor:

A. To consent to any change in or alteration of the obligation or in any and all plans and specifications relating thereto.
B. To take over any contract and arrange for its completion.
C. To take possession of Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any contract.
D. To take possession of Principal's office equipment, books and records as are necessary for completion of any contract.
E. To loan such funds or guarantee a loan for such funds either prior to or after default, as Surety shall deem necessary for the completion of any contract and for the discharge of Surety in connection with any contract. The repayment of such loan shall be the responsibility of the Undersigned.
F. To file an immediate suit to enforce the provisions of this Agreement.
G. To take possession of the work to be performed pursuant to all or any part of the obligation, and at the expense

Indemnitors' Initials and Date UJJ 10-16-2001

of Principal and Indemnitor, to complete the performance required by the obligation or to cause the same to be completed or to consent to the completion thereof, and to take any other action which Surety may deem appropriate in connection therewith.

**9. POWER OF ATTORNEY** - The Undersigned hereby irrevocably nominate, constitute, appoint and designate Surety or its designee as their attorney-in-fact with the power, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, document or papers, including but not limited to, those related to the commencement of proceedings referred to in section 6, the endorsement of checks or other instruments payable to any of the Undersigned deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the within assignment for the full protection intended to be given to Surety under all other provisions of this Agreement. The Undersigned hereby ratify and affirm all acts and actions taken and done by Surety or its designee as attorney-in-fact.

**10. WAIVER OF NOTICE** - Principal and Indemnitor hereby waive and agree that Surety need not give to Principal or to any Indemnitor notice of any act, fact or information coming to the notice or knowledge of Surety concerning or affecting the rights or liabilities under any bond or any rights and liabilities thereunder. However, if the Undersigned become aware of any demand notice or proceeding which may result in liability to the Surety under any bond, the Undersigned shall notify the surety immediately of the same in writing.

**11. WAIVERS** - The Principal and Indemnitor hereby waive and agree not to assert:

A. Any defense that this Agreement was executed subsequent to the date of any Bond, it being expressly understood and agreed that the Undersigned hereby admits and covenants that the Bond was executed by Surety pursuant to the request of the Indemnitor and in reliance on the promise on the Indemnitor to execute and perform this Agreement.

B. Any right to claim that any property, including homesteads, is exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession in any action brought by Surety under this Agreement.

C. Any right to require Surety to proceed against Principal or Indemnitor or any other person, firm or entity or to proceed against or exhaust any security held by Surety at any time or to pursue any other remedy in Surety's power.

D. The defense of the statue of limitations in any action hereunder for the collection of any claim or the performance of any obligation indemnified hereby.

E. Any defense based upon an election of remedies by Surety, which election may destroy or otherwise impair subrogation rights of Principal or any Indemnitor or the right of Indemnitor to proceed against the Principal or to realize upon any security.

**12. PROTECTION OF OTHER SURETIES** - If Surety procures the execution of any Bond by other sureties or executes the Bond with co-sureties, then all the terms and conditions shall inure to the benefit of such other sureties and co-sureties who shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder.

This Agreement applies to all bonds executed or procured by Surety for Principal in its own name, or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms.

**13. CONSENT TO CHANGES** - Surety is authorized, without notice to or knowledge of the Undersigned, to assent to any change whatsoever in any Bond and any contract covered by a Bond, including, but not limited to, any change in the time for completion of the contract and for payment or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or larger or smaller penalties, and the Undersigned shall remain bound under the terms of this Agreement even though any such assent by Surety does or may substantially increase the liability of the Undersigned.

**14. SUBORDINATION OF INDEMNITORS** - The Indemnitor(s) shall have no rights of indemnity against Principal or his property until Principal's obligations to the Surety under this Agreement have been fully satisfied.

**15. NATURE OF RIGHTS** - All rights and remedies of Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of Surety to pursue any remedy against any one or more of the Undersigned shall not release or waive any right against any other of the Undersigned. The Surety is not required to exhaust its remedies or rights against Principal or to await receipt of any dividends from the legal representatives of Principal before asserting its rights under this Agreement against the Indemnitors. The rights, powers and remedies given to Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all rights, powers and remedies which Surety may have or require against the Undersigned or others whether by the terms of any other Agreement, by operation of law or otherwise.

The Undersigned shall continue to remain bound under this Agreement even though Surety may, from time to time and with or without notice to or knowledge of the Undersigned, have heretofore accepted or released, or shall hereafter accept or release, other Agreements of Indemnity or collateral in connection with the execution of the Bonds from the Undersigned or from others. If any of the persons named herein as Principal and Indemnitors fail to execute this Agreement or if the execution hereof by any of the Undersigned shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other of the Undersigned. Failure of Principal to sign any Bonds shall not relieve the Undersigned of liability under this Agreement. Separate suits may be brought on this Agreement against any or all of the Undersigned and the bringing of a suit or the recovery of judgment by any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

**16. TERMINATION** - This Agreement is a continuing obligation of the Undersigned unless terminated by written notice to Surety as hereinafter provided, and such termination by a particular Undersigned shall in no way affect the obligation of any other Undersigned who has not given such notice. The liability of the Undersigned hereunder as to the future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known about Principal, even though such facts materially increase the risk beyond that which the Undersigned might intend to assume. Whether Surety may have reason to believe such facts are

Indemnitors' Initials and Date VJL 10-16-2001

unknown to the Undersigned, or whether Surety may have reasonable opportunity to communicate such facts to the Undersigned, the Undersigned hereby waives notice of such facts. In order to terminate liabilities to future Bonds of Principal, an Undersigned must:

A. Give to Surety written notice of such termination by certified mail, return receipt requested, addressed to Surety at Surety's address; and

B. State in such notice the effective date of termination, which date shall not be less than 30 days following receipt of such notice by Surety, of the termination of such Undersigned's liability for future Bond.

After the effective date of such termination by giving notice, the Undersigned shall nonetheless be liable hereunder for:

A. Bonds executed or authorized prior to such effective date of termination, and any renewals, substitutions and extensions thereof; and

B. Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such effective date of termination, and any renewals, substitutions and extensions thereof; and

C. Any maintenance or guarantee Bond executed incidental to any other Bond executed prior to such date of termination, and any renewals, substitutions and extensions thereof.

**17. GENERAL PROVISIONS -**

A. The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against Principal.

B. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof.

C. The Undersigned warrant that each of them is specifically and beneficially interested in obtaining each Bond and agree to pay the initial, renewal, and additional premiums thereon, including premiums based on overrun and contract price according to the company's current rate manual recognizing that the initial premium is fully earned upon execution of said Bond.

D. Surety shall have the right, at its option and its sole discretion, to issue or cancel or decline the execution of any Bond, or renewal thereof, including a final Bond when it has furnished a bid bond.

E. Surety may consent to any changes or alterations in a contract or Bond, without affecting the liability hereunder of the Undersigned, including but not limited to riders extending the time of completion, or increases or decreases in the penal sum of the Bond, and the Undersigned hereby agree to pay any additional premium resulting from said changes or alterations, without giving notice thereof to the indemnitors.

F. Surety shall have every right, defense, or remedy which a personal surety without compensation would have, including the right of exoneration.

G. The Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

H The Surety may, at its option, file or record this Agreement or any other document executed by any or all of the Undersigned in connection with the application, issuance or execution of any Bond or Bonds, or renewal thereof, coming within the scope of this instrument as: a security agreement or as part of a financing statement or, as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction of agency. The filing or recording of such document shall be solely at the option of the Surety. The failure to so file shall not release or discharge any of the obligations of the Undersigned under this Agreement.

I The Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

J. This Agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed to in writing.

K. In the event that any of the Undersigned shall fail to execute this instrument or become insolvent, or in the event any of the Undersigned who execute this Agreement shall be bound for any reason, the other Undersigned shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

L. Surety may maintain repeated actions on this instrument as breaches of it occur, without any former action operating as a bar to any subsequent action.

M. Wherever used in this Agreement the plural shall include the singular, the singular shall include the plural, and the neuter shall include both genders as the circumstances require.

N. The liability of the Undersigned hereunder shall not be affected by:
(a) The failure of Principal to sign any Bond.
(b) Any claim that other indemnity or security was to have been obtained.
(c) The release of any indemnity.
(d) The return or exchange of any collateral that may have been obtained.

O. The Undersigned and their successors, executors and administrators agree to hold all money and all proceeds of a contract, however received, as a trust for the benefit of Surety and use such money or other proceeds for the purpose of performing the Contract and discharging the obligations of the Bond, and for no other purpose until the Bond is completely exonerated.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date although nothing herein shall limit the right of Surety to claim under any prior assignment. With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond. The assignment with respect to each Bond shall take effect as of the date indicated, but only in the event of Default referred to in section 7.

Indemnitor's Initials and Date U28 10-16-2000

IN WITNESS WHEREOF, Principals and each Indemnitor, intending to be legally bound hereby, have executed this Agreement effective as of the execution date first above-written.

F.A.S. Development Company, Inc. (affix corporate seal)
Principal(s) Name

By Vanessa D. Sutton Title President
VanessA Sutton

By ______ Title ______

By ______ Title ______

By ______ Title ______

**INDEMNITOR(S)**

| | |
|---|---|
| Signature: Vanessa D. Sutton | Signature |
| Name Typed: Vanessa Sutton | Name Typed |
| Residence Address: 116 Ashby Street Atlanta GA 30314 | Residence Address |
| Res. Phone # SS# 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 | Res. Phone # SS# |
| Signature | Signature |
| Name Typed | Name Typed |
| Residence Address | Residence Address |
| Res. Phone # SS# | Res. Phone # SS# |
| Signature | Signature |
| Name Typed | Name Typed |
| Residence Address | Residence Address |
| Res. Phone # SS# | Res. Phone # SS# |

**INDIVIDUAL ACKNOWLEDGMENTS**

STATE OF Georgia
COUNTY OF Fulton

On this 16th day of OCTOBER ~~19~~2000, before me personally appeared Vanessa Sutton personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to in this instrument, and acknowledged to me that s he executed the same.

Sworn to and subscribed before me this ___ day of ______, 19___.
Notary Public, Fulton County, Georgia
My Commission Expires March 30, 2003

Notary Public My Commission Expires:

STATE OF ______
COUNTY OF ______

On this ______ day of ______, 19______, before me personally appeared ______ personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to in this instrument, and acknowledged to me that ___he___ executed the same.

Sworn to and subscribed before me this _____ day of ______, 19___.

Notary Public My Commission Expires:

Indemnitors' Initials and Date VDS 10-16-2000

## PARTNERSHIP ACKNOWLEDGEMENT

STATE OF ____________________
COUNTY OF ____________________

On this ______ day of ____________________, 19_____, before me personally comes ____________________ a member of the co-partnership of ____________________ to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said co-partnership.

____________________
(Signature and title of official taking acknowledgement)
(Notary)

## CORPORATE ACKNOWLEDGEMENT

STATE OF Georgia
COUNTY OF Fulton

On this 16th day of Oct 2000, before me personally comes Vanessa Sutton

to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Atlanta and that he/she is the President of the F.A.S. Development Company, Inc., the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that is was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

Notary Public, Fulton County, Georgia
My Commission Expires March 30, 2003

[signature]
(Signature and title of official taking acknowledgement)
(Notary)

## CORPORATE RESOLUTION AND CERTIFICATION

**WHEREAS**, the ____________________ and ____________________ of this Corporation have executed a certain Indemnity Agreement in favor of COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, dated ____________________, 19____, protecting it in connection with its assuming suretyship as more fully described therein, said Indemnity Agreement having been read at this meeting and fully considered and approved by the directors present; and

**WHEREAS**, the said Indemnity Agreement has been accepted by COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, upon the warranty of said officers that this Corporation has such an interest in said suretyship as to empower it to make said Indemnity Agreement.

**NOW THEREFORE, BE IT RESOLVED** that the acts of the said officers in executing the said Indemnity Agreement on behalf of this Corporation be, and they are hereby, unanimously ratified and confirmed as the acts of this Corporation.

**BE IT FURTHER RESOLVED** by the aforesaid warranty that this Corporation has such an interest in said suretyship as to empower it to make said Indemnity Agreement, and it is hereby, ratified and confirmed as a warranty of this Corporation.

**BE IT FURTHER RESOLVED** that said officers are empowered on behalf of the corporation to do such acts and execute such other documents as may be necessary to protect COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, and induce it to assume said suretyship, including but not limited to the execution of a Collateral Agreement and the assignment of such collateral to COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, as COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA may require, and such acts are hereby unanimously ratified and confirmed as the acts of this Corporation.

I hereby certify that I am ____________________ of ____________________ and that the above resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the ______ day of ____________________, 19____, in the office of said Corporation, at which meeting a quorum of the Directors were present.

**IN WITNESS WHEREOF**, I have hereunto set my hand and the corporate seal of the Corporation, this ______ day of ____________________, 19____.

(AFFIX CORPORATE SEAL) Frank H. Andrews
Secretary

Indemnitors' Initials and Date FA 10-16-2000