IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMERCIAL CASUALTY INSURANCE COMPANY OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2033C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT

On May 26, 2006, this Court denied the Government's motion for summary judgment "on condition that the plaintiff file a receipt from Rogers Electrical Contractors, Inc. indicating that its claim has been fully paid within 60 days of the date of this decision." Opinion at 21. Subsequently, plaintiff moved for reconsideration of that decision and for summary judgment. The Government opposed plaintiff's motions and cross moved for summary judgment.

Because plaintiff's response to the Government's cross-motion, dated October 27, 2006, demonstrates that plaintiff has elected not to pay an outstanding claim of Rogers Electrical Contractors, Inc, one of the subcontractors intended to be protected by the payment bond that gives rise to this case, Commercial Casualty is not entitled to equitable subrogation and judgment should be entered for the United States. As we demonstrated in our moving brief, and in response to the Court's Order dated November 2, 2006, plaintiff is also not entitled to the equitable remedy of subrogation due to its failure to attempt to resolve these issues through the FAS bankruptcy proceeding.

## ARGUMENT

I. Plaintiff's Failure to Pay Outstanding Claims Is Fatal to Its Claim of Equitable Subrogation.

The circumstances of this case have not changed since this Court rendered its decision on May 26, 2006. Specifically, at that time, the Court found that plaintiff, Commercial Casualty, although asserting a claim of equitable subrogation under a Miller Act payment bond, 40 U.S.C. § 3131(b) (formerly 40 U.S.C. § 270a), had failed to pay the outstanding claim of a subcontractor, Rogers Electrical. Rather than dismiss the complaint outright, the Court afforded Commercial Casualty an opportunity to make the omitted payment. In its latest filing with this Court, Commercial Casualty has reiterated that it is unwilling to make that payment. Plaintiff Commercial Casualty's Reply, dated October 27, 2006, at 5 ("Consideration of and payment of claims, whatever their size, is a lengthy process that requires more time and difficulty than is necessary to resolve this dispute.").[1]

Commercial Casualty's failure to pay Rogers Electrical is fatal to its claim. This Court quoted controlling authority in its May 26, 2006 opinion. May 26, 2006 Opinion at 20-21. Specifically, in United States Fidelity & Guaranty Co., v. United States, 475 F.2d 1377 , 1381 (Ct. Cl. 1973) ("USF&G"), the Court of Claims rejected a surety's assertion of a claim for equitable subrogation under a payment bond, holding, "[u]ntil this surety undertakes to pay all of the outstanding claims owed by [the contractor], it will not be permitted to share in retainages still held by the Government." Moreover, as we explained in our cross-motion, Commercial

---

[1] "Commercial Casualty's Reply" refers to "Plaintiff Commercial Casualty Insurance Company of Georgia's Reply Regarding its Motion for Reconsideration and Motion for Summary Judgment, and its Response to Defendant's Cross-Motion for Reconsideration and for Summary Judgment," dated October 27, 2006.

Casualty's claim contravenes "a familiar rule of the law of subrogation under which a surety . . . does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." United States v. National Surety Co., 254 U.S. 73, 76 (1920); see also Richard A. Lord, 23 Williston on Contracts § 61:54 (4th ed.) ("The surety's right of subrogation does not ordinarily arise until the debt is paid in full. A partial payment of the debt, even though it may be of the full amount for which the surety is bound, will not entitle the surety to subrogation to the creditor's rights and securities"). Because Commercial Casualty has not paid in full FAS's obligations to its subcontractors, Commercial Casualty does not have a right of subrogation.

In its reply to our cross-motion, Commercial Casualty failed to address this Court's reference to USF&G or our reliance upon United States v. National Surety Co., 254 U.S. 73. Commercial Casualty also ignored our reliance upon American Surety Co. v. Sampsell, 327 U.S. 269 (1946), where a surety that issued a payment bond refused to pay laborers and suppliers whose claims were not timely filed. In affirming the decision to subordinate a surety's claim to the claims of the unpaid laborers and suppliers, the United States Supreme Court held that:

> The bond was intended to protect materialmen and laborers who worked on the job so that they would not have to bear the risk of [the contractor's] insolvency. But for his insolvency and bankruptcy these laborers and materialmen would have been able to recover from him the money due them, no matter what their rights against the surety might have been. Consequently, the surety should not, by claiming under subrogation or indemnity for money paid to some of the creditors for whose benefit the bond was intended, be allowed to reduce the share of the bankrupt's assets due to other creditors whom the bond also was intended to protect from insolvency. For this would tend to defeat the very purpose for which the bond was given and therefore cannot be permitted under the equitable principles governing distribution of a bankrupt's assets.

327 U.S. at 273-74. Based upon the Supreme Court's reasoning, Commercial Casualty's failure to pay the Rogers Electrical claim, regardless of the circumstances surrounding the timeliness of that claim, removes the asserted equitable basis from Commercial Casualty's claim for recovery.

II. Plaintiff Is Otherwise Not Entitled to Equitable Subrogation.

As we explained in our cross-motion, subrogation is a "creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Argonaut Ins. Co. v. United States, 434 F.2d 1362, 1367 (Ct. Cl. 1970). In this case, Commercial Casualty has sought judgment from this Court in the amount of "at least $52,625" (Commercial Casualty Insurance Company of Georgia's Motion for Reconsideration and Motion for Summary Judgment, at 3), notwithstanding that it has expressed no disagreement with this Court's finding that Commercial Casualty has made only $25,644 in payments under its bond. Opinion dated May 26, 2006 at 5.[2]

Moreover, as we explained in our cross-motion, with knowledge that the contractor, FAS Development Company, Inc., had filed for bankruptcy, Commercial Casualty did not bring this matter to the attention of the Chapter 7 Trustee. To explain its conduct, Commercial Casualty asserts that it "had no ability . . . to pursue its claims through the bankruptcy" purportedly because the case was a no asset proceeding. Commercial Casualty Reply at 10-11. Thus, it is undisputed that Commercial Casualty failed to identify for the Trustee both its claim and its

---

[2] This Court also found that there remains $48,425, not $52,625 in contract funds following issuance of a contract modification in August 2002. Commercial Casualty's asssertion that it has not been provided a copy of that modification is in error. Commercial Casualty Reply at 2. In fact, the modification is in the record before this Court. Defendant's Appendix to the Motion to Dismiss dated May 27, 2005, at 19-22. Commercial Casualty itself relied upon that appendix in its reply. Commercial Casualty Reply at 2.

belief that contract funds were due FAS. As we explained in our cross-motion, had Commercial Casualty properly advised the Trustee of the existence of funds due, those funds would have been assets of the bankrupt estate. Moreover, as one creditor among other creditors, Commercial Casualty's claim to those funds would have been subordinated in bankruptcy to the claims of unpaid subcontractors. In choosing the course that it did, Commercial Casualty avoided having the contract funds distributed through the bankruptcy. In these circumstances, Commercial Casualty is not deserving of equitable relief.[3]

On November 2, 2006, this Court ordered that we provide "any legal authorities supporting the government's contention that the plaintiff should be precluded from pursuing an equitable subrogation claim because it did not first attempt to obtain reimbursement from FAS Development Company, Inc." In our cross-motion, we demonstrated that Commercial Casualty should have availed itself of its right to seek reimbursement from the contractor, FAS Development, because, had it done so, the contract funds at issue could have been delivered to a Chapter 7 Bankruptcy Trustee for distribution to FAS's creditors, including a subcontractor that Commercial Casualty admits it has refused to pay. Instead of pursuing its rights against FAS, Commericial Casualty proceeded against the United States and demanded $52,625 (when it only

---

[3] Rather than focus upon its own conduct, Commercial Casualty's core argument in opposition to our cross motion appears to be its assertion that the Government is a "stakeholder" of the funds at issue. That assertion does not establish Commercial Casualty's legal or equitable right to recovery. The issue for the United States is that it should not be required to incur risk as between Commercial Casualty and FAS or any successor in interest to FAS. This concern would have been avoided had Commercial Casualty, who was already a creditor in the FAS bankruptcy on another claim, brought this claim to the attention of the Trustee.

paid $25,644).[4]

The authority upon which we rely for our position includes cases cited in our cross-motion, Home Ins. Co. v. United States, 46 Fed. Cl. 160 ("the surety, after meeting its obligations under its bonds, is entitled to reimbursement from the contractor for costs incurred in satisfying those obligations") and Fouts v. Maryland Casualty Co., 30 F.2d 357, 358 (4th Cir. 1929) (citation omitted) ("'There is always an implied obligation, in the absence of an agreement to the contrary, that the principal will indemnify his surety against loss resulting from the suretyship, and an express agreement therefor adds nothing to the surety's rights'") as well as cases that discuss the equitable nature of subrogation, such as Argonaut Ins. Co. v. United States, 434 F.2d 1362. See also Memphis & L.R.R. Co. V. Dow 120 U.S. 287, 301-02 (1887).

Our argument is also consistent with general statements regarding the law of subrogation. 83 C.J.S. Subrogation § 14 (May 2006)("Subrogation is an equitable doctrine and will be used only to further an equitable result. It will be denied where it would lead to an uncontemplated and inequitable result or where it would work an injustice to the rights of others.") (Footnotes omitted.); 73 Am. Jur. 2d Subrogation § 14 ("As in other cases of equitable relief, the court in administering subrogation will weigh and balance the equities of the parties, as the right of subrogation is not absolute but rather, depends upon the equities and attending facts of each case. . . . courts will ask whether the party seeking subrogation could pursue such claims under another theory such as contribution and whether there is another remedy at law which is as efficient as the equitable remedy of subrogation.") (Footnotes omitted.) In direct response to the

---

[4] In no event should Commercial Casualty seek to recover more than its actual injury. Home Ins. v. United States, 46 Fed. Cl. 160, 163 (2000).

Court's inquiry, our research has not identified a case directly on point in which a surety was denied recovery solely because it did not first seek reimbursement from the contractor to whom it issued its bond.

Finally, Commercial Casualty's arguments regarding FAR Section 28.106-7 and the assignment of claims contained in its agreement with FAS are not well-taken. FAR Section 28.106-7 concerns the withholding of contract payments from the contractor. The contract funds were withheld here.[5] As for the FAS's assignment, any assignment of contract funds by FAS to Commercial Casualty is invalid under the Anti-Assignment Act, 41 U.S.C. § 15. Fireman's Fund Insurance Co. v. England, 313 F.3d 1344, 1349-50 (Fed. Cir. 2002).[6]

CONCLUSION

Based upon Commercial Casualty's failure to pay all unpaid subcontractors, and based upon other considerations in equity, as explained in our cross-motion and in this brief, we

---

[5] Although contract funds of $48,425 were withheld from FAS pending the demand made by Commercial Casualty, those appropriated funds are no longer available. Consequently, in the event that judgment were entered and payment sought in this case, payment would be made through the Judgment Fund, subject to reimbursement from the Navy's current operating budget. The administrative burden of this process could have been avoided had Commercial Casualty brought this matter to the attention of FAS's bankruptcy Trustee at the appropriate time.

[6] As we explained in our cross-motion, to date, the Department of Justice has not taken any position upon whether it would file an appeal from any judgment, were one entered against it in this case. We do advise the Court, however, that the Government has filed an appeal in Travelers Indemnity v. United States, No. 2006-5143 (Fed. Cir.) (Opening brief due November 27, 2006), which seeks review of a decision of this Court upon a surety's claim of equitable subrogation under a payment bond. Travelers Indemnity v. United States, 72 Fed. Cl. 56 (2006). A decision in the Government's favor in the Travelers appeal would likely be dispositive of this action. For that reason, were the Court inclined to deny our present cross-motion and award judgment to plaintiff, we would request that the Court stay proceedings pending a determination of Travelers in the court of appeals.

respectfully request that this Court grant our cross-motion for summary judgment and dismiss the complaint in this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Kirk T. Manhardt
KIRK T. MANHARDT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Department of Justice
Tel: (202) 353-0541
Fax: (202) 305-7643

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Naval Facilities Engineering Command
Litigation Headquarters
702 Kennon St., S.E, Room 136
Washington, D.C. 20374
Tele: (202) 685-2136

November 15, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on November 15, 2006, a copy of foregoing "Defendant's Reply In Support Of Cross-Motion For Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kirk T. Manhardt
Kirk T. Manhardt